**Nos. 24-5407, 24-5459**

---

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

---

LYNWOOD PICKENS,

Plaintiff-Appellant/Cross-Appellee,

v.

HAMILTON-RYKER IT SOLUTIONS, LLC,

Defendant-Appellee/Cross-Appellant,

---

Appeal from the United States District Court
for the Middle District of Tennessee
Nashville Division

---

### BRIEF OF APPELLANT/CROSS-APPELLEE (FIRST BRIEF)

---

**Richard J. (Rex) Burch**
Texas State Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Tel: (713) 877-8788
rburch@brucknerburch.com

**David M. Mathews**
Texas State Bar No. 24058211
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 352-1100
dmathews@mybackwages.com

**Melody L. Fowler-Green**
**YEZBAK LAW OFFICES PLLC**
2021 Richard Jones Rd, Ste 310-A
Nashville, Tennessee 37215
Tel: (615) 250-2000
mel@yezbaklaw.com

**ATTORNEYS FOR PLAINTIFF-APPELLANT**

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number:  24-5407 24-5459 　　　　Case Name:  Lynwood Pickens v. Hamilton-Ryker IT

Name of counsel:  Richard J Burch

Pursuant to 6th Cir. R. 26.1,  Appellant(s)/ Cross Appellees Lynwood Pickens, et. al.
　　　　　　　　　　　　　　　*Name of Party*

makes the following disclosure:

1. Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

> No.

2. Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

> No.

---

CERTIFICATE OF SERVICE

I certify that on _____ May 13, 2024 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Richard J (Rex) Burch
11 Greenway Plaza, Ste. 3025
Houston, Texas 77046

---

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

**6th Cir. R. 26.1**
## DISCLOSURE OF CORPORATE AFFILIATIONS
## AND FINANCIAL INTEREST

(a)  **Parties Required to Make Disclosure**.  With the exception of the United States government or agencies thereof or a state government or agencies or political subdivisions thereof, all parties and amici curiae to a civil or bankruptcy case, agency review proceeding, or original proceedings, and all corporate defendants in a criminal case shall file a corporate affiliate/financial interest disclosure statement.  A negative report is required except in the case of individual criminal defendants.

(b)  **Financial Interest to Be Disclosed**.

(1)  Whenever a corporation that is a party to an appeal, or which appears as amicus curiae, is a subsidiary or affiliate of any publicly owned corporation not named in the appeal, counsel for the corporation that is a party or amicus shall advise the clerk in the manner provided by subdivision (c) of this rule of the identity of the parent corporation or affiliate and the relationship between it and the corporation that is a party or amicus to the appeal.  A corporation shall be considered an affiliate of a publicly owned corporation for purposes of this rule if it controls, is controlled by, or is under common control with a publicly owned corporation.

(2)  Whenever, by reason of insurance, a franchise agreement, or indemnity agreement, a publicly owned corporation or its affiliate, not a party to the appeal, nor an amicus, has a substantial financial interest in the outcome of litigation, counsel for the party or amicus whose interest is aligned with that of the publicly owned corporation or its affiliate shall advise the clerk in the manner provided by subdivision (c) of this rule of the identity of the publicly owned corporation and the nature of its or its affiliate's substantial financial interest in the outcome of the litigation.

(c)  **Form and Time of Disclosure**.  The disclosure statement shall be made on a form provided by the clerk and filed with the brief of a party or amicus or upon filing a motion, response, petition, or answer in this Court, whichever first occurs.

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ................................................................................ i

TABLE OF AUTHORITIES ...................................................................... iii

STATEMENT IN SUPPORT OF ORAL ARGUMENT ............................ 1

JURISDICTIONAL STATEMENT ............................................................ 2

STATEMENT OF ISSUES ......................................................................... 3

STATEMENT OF THE CASE .................................................................... 3

A.  Factual Background. ............................................................................ 3

B.  Procedural History. ............................................................................. 5

C.  Rulings Presented for Review ........................................................... 7

SUMMARY OF THE ARGUMENT ......................................................... 7

ARGUMENT ............................................................................................. 10

A.  HR-IT is precluded from arguing its pay plan passes the salary basis test. ....... 10

B.  *Helix* and *Gentry* confirm HR-IT's 8-hour "salary" plus additional hourly pay scheme fails the salary basis test ................................ 16

    1.  Standard of Review. ...................................................................... 16

    2.  Because HR-IT uses a "minimum guarantee plus extras" plan, § 604(b) applies—not § 602(a). ..................................... 18

        a.  The proper analysis requires considering the pay plan as a whole—not just the portion that bolsters an employer's decision not to pay overtime. ........................................ 19

        b.  The District Court erred in applying § 602(a). ............. 21

        c.  *Gentry* is in line with *Helix* as well as pre-*Helix* decisions from other circuits. ........................................ 27

3.     HR-IT fails the salary basis test under § 604(b)........................................ 30

CONCLUSION ........................................................................................................ 33

CERTIFICATE OF COMPLIANCE WITH FED. R. APP. 32(A) ............................ 34

CERTIFICATE OF SERVICE ................................................................................. 34

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS.............. 35

# TABLE OF AUTHORITIES

Cases

*Anani v. CVS RX Servs., Inc.,*
　730 F.3d 146 (2d Cir. 2013) ................................................................. 27

*Brock v. Claridge Hotel & Casino,*
　846 F.2d 180 (3rd Cir. 1988) .................................................. 7, 26, 28, 31

*Calderone v. United States,*
　799 F.2d 254 (6th Cir. 1986) ................................................................. 17

*Cayton v. Metropolitan Government Of Nashville & Davidson County,*
　No. 3:20-CV-00859, 2022 WL 183437 (M.D. Tenn. Jan. 19, 2022) .......................... 31

*Clark v. A&L Homecare and Training Center, LLC,*
　68 F.4th 1003 (6th Cir. 2023) ................................................................. 6

*Coates v. Dassault Falcon Jet Corp.,*
　961 F.3d 1039 (8th Cir. 2020) .............................................................. 27, 28

*Cobbins v. Tenn. Dep't of Transp.,*
　566 F.3d 582 (6th Cir.2009) ................................................................. 11

*Detroit Police Officers Ass'n v. Young,*
　824 F.2d 512 (6th Cir.1987) ................................................................. 11

*EMW Women's Surgical Ctr., P.S.C. v. Beshear,*
　920 F.3d 421 (6th Cir. 2019) ................................................................. 17

*FCA US, LLC v. Spitzer Autoworld Akron, LLC,*
　887 F.3d 278 (6th Cir. 2018) .............................................................. 12, 13

*Gentry v. Hamilton-Ryker IT Sols., L.L.C.,*
　102 F.4th 712 (5th Cir. 2024) ..........................................................passim

*Gentry v. Hamilton-Ryker IT Sols., LLC,*
　No. 3:19-CV-00320, 2022 WL 658768 (S.D. Tex. Mar. 4, 2022) .......................... 12

*Gentry v. Hamilton-Ryker IT Sols., LLC,*
　No. 3:19-CV-00320, 2022 WL 889276 (S.D. Tex. Mar. 25, 2022) .......................... 12

*Gentry v. Hamilton-Ryker IT Solutions*,
No. 22-40219, 2023 WL 4704115 (5th Cir. Jul. 24, 2023) ...............................5, 6, 28

*Gilbo v. Agment, LLC*,
831 F. App'x 772 (6th Cir. 2020)...........................................................................17, 18

*Hart Steel Co. v. Railroad Supply Co.*,
244 U.S. 294 (1917)................................................................................................. 15

*Harvis v. Roadway Express, Inc.*,
973 F.2d 490 (6th Cir.1992)..................................................................................... 10

*Helix Energy Sols. Grp., Inc. v. Hewitt*,
598 U.S. 39 (2023)...........................................................................................passim

*Herbert v. FMC Technologies, Inc.*,
No. 22-20562, 2023 WL 4105427 (5th Cir. Jun. 21, 2023) ....................................6, 28

*Hewitt v. Helix Energy Sols. Grp.,Inc.*,
15 F.4th 289, 294 (5th Cir. 2021) ............................................................................7, 31

*Jackson v. Renfrow*,
No. 1:13-CV-00116-TBR, 2014 WL 1514320 (W.D. Ky. Apr. 16, 2014)...........11, 16

*Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*,
26 F.3d 375 (3d Cir. 1994) ....................................................................................... 13

*Lesher v. Lavrich*,
784 F.2d 193 (6th Cir. 1986)..................................................................................... 13

*May v. Oldfield*,
698 F.Supp. 124 (E.D.Ky.1988) ............................................................................... 16

*Miles v. S. Cent. Human Res. Agency*,
946 F.3d 883 (6th Cir. 2020)..................................................................................... 16

*Nat'l Ass'n of Home Builders v. Defenders of Wildlife*,
551 U.S. 644 (2007).................................................................................................. 20

*Ohio State Univ. v. Redbubble, Inc.*,
989 F.3d 435 (6th Cir. 2021).................................................................................16, 17

*Parklane Hosiery Co. v. Shore,*
    439 U.S. 322 (1979) ........................................................................... 10, 16

*Patrick v. S. Cent. Bell Tel. Co.,*
    641 F.2d 1192 (6th Cir. 1980) ............................................................ 10, 15

*Russell v. SunAmerica Sec., Inc.,*
    962 F.2d 1169 (5th Cir. 1992) ................................................................... 11

*Taft Broad. Co. v. United States,*
    929 F.2d 240 (6th Cir. 1991) ..................................................................... 17

*Taylor v. Sturgell,*
    553 U.S. 880 (2008) .................................................................................. 10

*Thomas v. Speedway SuperAmerica, LLC,*
    506 F.3d 496 (6th Cir. 2007) ..................................................................... 17

*Uniloc USA, Inc. v. Motorola Mobility LLC,*
    52 F.4th 1340 (Fed. Cir. 2022) ............................................................. 13, 15

*United States S.E.C. v. Sierra Brokerage Servs., Inc.,*
    712 F.3d 321 (6th Cir. 2013) ..................................................................... 17

*United States v. 5 Unlabeled Boxes,*
    572 F.3d 169 (3rd Cir. 2009) .......................................................... 13, 14, 15

*Westwood Chem. Co. v. Kulick,*
    656 F.2d 1224 (6th Cir. 1981) ................................................................... 15

*Wilson v. Schlumberger Tech. Corp.,*
    80 F.4th 1170 (10th Cir. 2023) ............................................................. 29, 30

Statutes

28 U.S.C. § 1291 ................................................................................................ 2

28 U.S.C. § 1331 ................................................................................................ 2

29 U.S.C. § 216(b) .............................................................................................. 2

Rules

FED. R. CIV. P. 56(a) ................................................................... 16, 17

Fed. R. Civ. P. 58 ............................................................................. 2

Regulations

29 C.F.R. § 541.602(a) ........................................................ 1, 3, 22, 25

29 C.F.R. § 541.602(a)(1) ................................................................ 18

29 C.F.R. § 541.604 ............................................................... 7, 20, 23

29 C.F.R. § 541.604(a) ..............................................................passim

29 C.F.R. § 541.604(b) ..............................................................passim

Other Authorities

14 Fed. Reg. 7730 (Dec. 28, 1949) ................................................. 29

18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure*, § 4433 (2d ed. 2002) ................................................ 14, 15

69 Fed. Reg. ..............................................................................passim

Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed. Reg. 22122 (Apr. 23, 2004) ............................................... 31

Opinion Letter, FLSA2018-25, 2018 WL 5921453 ........................................... 32

Opinion Letter, FLSA2018-15, 2018 WL 5921453 (Nov. 8, 2018) ...................... 8, 30, 31

*Restatement (Second) of Judgments* § 13 ........................................ 15

Secretary of Labor's Brief as Amicus Curiae in *Gentry v. Hamilton-Ryker IT Sols. L.L.C.*, 2023 WL 4303314, at *21 (5th Cir. June 20, 2023) ........................ 21

## <u>STATEMENT IN SUPPORT OF ORAL ARGUMENT</u>

Pickens requests oral argument because this appeal involves important issues of national significance. The primary question is whether Hamilton-Ryker IT Solutions, LLC (HR-IT) paid Pickens on a "salary basis." The Supreme Court addressed the salary basis test in *Helix Energy Sols. Grp., Inc. v. Hewitt,* 598 U.S. 39 (2023).

Following *Helix,* both the Fifth Circuit Court of Appeals and the Department of Labor found HR-IT's pay plan violates the salary basis test. *Gentry v. Hamilton-Ryker IT Sols., L.L.C.,* 102 F.4th 712, 717 (5th Cir. 2024) (finding HR-IT violated the salary basis test and noting the "Secretary of Labor filed a brief as *amicus curiae*" agreeing HR-IT violated the salary basis test). "*Helix* and [29 C.F.R. §§] 602(a), 604(a), and 604(b) require courts to take a hard look at whether a purported 'salary' truly compensates employees for a week's worth of work or, instead, provides an artificial distinction between a salary and additional compensation." *Id.* at 725. This ensures "compensation system[s] function[] much like a true salary—a steady stream of pay, which the employer cannot much vary and the employee may thus rely on week after week." *Helix,* 598 U.S. at 46-47 (citing 69 Fed. Reg. 22184).

Respectfully, the District Court failed to consider whether HR-IT's 8-hour "'salary' truly compensates employees for a week's worth of work or, instead, provides an artificial distinction between a salary and additional compensation." *Compare Gentry*, 102 F.4th at 725 *with* MSJ Memorandum Order, RE 117, Page ID # 2853-62. Instead, it granted summary judgment in favor of HR-IT simply because HR-IT called eight

hours of pay a "salary." MSJ Memorandum Order, RE 117, Page ID # 2854, 58. Further, the Fifth Circuit's decision raises issues of issue preclusion that merit close consideration.

Oral argument would be helpful and significantly aid the decisional process especially given the District Court's divergence from the Supreme Court's guidance.

## JURISDICTIONAL STATEMENT

The District Court had subject matter jurisdiction because Pickens alleges HR-IT violated the Fair Labor Standards Act (FLSA), a federal statute. Complaint, RE 1, Page ID # 1 ¶ 4 (citing 28 U.S.C. § 1331; 29 U.S.C. § 216(b)).

This Court has jurisdiction under 28 U.S.C. § 1291 because Pickens appeals from a final order or judgment. The District Court dismissed the case with prejudice on March 28, 2024. Order, RE 118, Page ID # 2863. The lower court explicitly noted its order "constituted a final judgment under Fed. R. Civ. P. 58" and directed the Clerk "to close the file." *Id.* On April 24, 2024, Pickens appealed. Pickens' Notice of Appeal, RE 120, Page ID # 2865-66.

## STATEMENT OF ISSUES

1.      Given that the Fifth Circuit already found HR-IT's pay plan violates the FLSA, is HR-IT precluded from re-litigating that issue here?

2.      Did the District Court err in finding HR-IT satisfied the salary basis test under 29 C.F.R. § 602(a) where its "guaranteed weekly salary" covered just eight hours of work (*less* than an average day) and only paid for the remaining hours in a week (including hours 9-40) if Pickens actually worked those hours?

3.      Did the District Court err by refusing to find HR-IT failed the salary basis test under 29 C.F.R. § 541.604(b) despite the fact the ratio of Pickens's "usual earnings" to his "salary" was more than 4 times the regulatory limit in 29 C.F.R. § 541.604(b)?

## STATEMENT OF THE CASE

### A.      Factual Background.

Pickens worked for HR-IT as a Piping Inspector from February 26, 2018 to May 31, 2019. Interrogatory No. 1, RE 100-6, Page ID # 2112. HR-IT says it paid Pickens a "guaranteed weekly salary" of $800. Offer Letter, RE 100-9, Page ID # 2257. But that so-called "salary" wasn't a true salary because it didn't "truly compensate[] [Pickens] for a week's worth of work[.]" *Gentry,* 102 F.4th at 725. It only compensated him for 8 hours of work. Offer Letter, RE 100-9, Page ID # 2257.

Pickens always worked far more than 8 hours a week. Paystubs, RE 100-7, Page ID # 2123-88. He worked 40 or more hours in at least 92.4% (61 of 65) of the weeks he worked for HR-IT. *Id.* at Page ID # 2127, 2152, 2161, 2176, 2188. He *never* worked

3

fewer than 28 hours in a week. *Id.* at Page ID # 2161. Pickens was paid $2,800 for that week (the week ending November 25, 2018), or $100 for every hour worked. *Id.*

HR-IT's pay plan is designed to ensure workers are paid the same hourly rate for every hour worked. For Pickens, that meant $100 per hour. Offer Letter, RE 100-9, Page ID # 2257. HR-IT called $800 of Pickens's pay a "guaranteed weekly salary." *Id.* When he worked more than 8 hours in a week (which was every week, Paystubs, RE 100-7, Page ID # 2123-88), he was "also … paid an additional hourly rate of $100.00 for all hours worked in excess of 8 hours in a workweek." Offer Letter, RE 100-9, Page ID # 2257. That means, if he worked 10 hours, he would be paid $1,000; 15 hours would earn him $1,500; 25 hours would be $2,500; and so on and so on. *Id.* In other words, Pickens's weekly pay varied directly with the number of hours he worked.



*Id.* at Page ID # 2123-88. And the $800 HR-IT called a "salary" was nothing more than "an artificial distinction." *Gentry,* 102 F.4th at 725.

Pickens worked an average of 51.59 hours a week. Paystubs, RE 100-7, Page ID # 2123-88. His average gross hourly earnings totaled $5,159.09. *Id.* So the ratio between his actual earnings and his $800 "salary" is approximately **6.45-to-1**.

## B.    Procedural History.

Pickens filed this suit because "[HR-IT] did not pay [him] time and a half for hours worked over 40." HR-IT's Response to Pickens's Statement of Facts, RE 104, Page ID # 2645. HR-IT paid Pickens the same hourly rate ($100/hour) "for all hours worked … including those hours worked over 40 in a particular workweek." Offer Letter, RE 100-9, Page ID # 2257. HR-IT answered. Answer, RE 19, Page ID # 46.

HR-IT agreed to conditional certification and notice. Joint Stipulation, RE 27, Page ID # 107-11; Joint Stipulation, RE 29, Page ID # 115-24. Fourteen individuals opted in to the lawsuit. Notices of Consent to Join, RE 7, Page ID # XX; RE 38, Page ID # 152-60; RE 40, Page ID # 164-66; RE 41, Page ID # 167-69; RE 42, Page ID # 170-72; RE 43, Page ID # 173-75; RE 46, Page ID # 181-83.

After discovery, the Parties filed cross motions for summary judgment. HR-IT's MSJ, RE 95, Page ID # 1566-68; Pickens's MSJ, RE 98, Page ID # 2008-09. The District Court granted HR-IT's motion and denied Pickens's motion finding the $800 "salary" HR-IT paid Pickens "satisfies the definition of "salary basis" in Section 602(a)." MSJ Memorandum Order, RE 117, Page ID # 2858, 2862. In so finding, the District Court didn't address the first Fifth Circuit opinion in *Gentry* because it had been withdrawn. *Id.* at Page ID # 2861n.7 (citing *Gentry v. Hamilton-Ryker IT Solutions*, No.

22-40219, 2023 WL 4704115 (5th Cir. Jul. 24, 2023)). Instead, it noted the "Fifth Circuit's … decision in *Herbert v. FMC Technologies, Inc.*, No. 22-20562, 2023 WL 4105427 (5th Cir. Jun. 21, 2023)," which the District Court believed supported its decision. *Id.*[1]

The District Court also held Pickens was the "only plaintiff" in the case. MSJ Memorandum Order, RE 117, Page ID # 2855 n.2. It said even though "the parties stipulated to conditional certification and court approved notice to potential plaintiffs," the opt-in plaintiffs were not yet parties. *Id.* (quoting *Clark v. A&L Homecare and Training Center, LLC,* 68 F.4th 1003, 1009 (6th Cir. 2023)), the lower court held opt-ins only "become parties to an FLSA suit (as opposed to mere recipients of notice)" "after … the district court determines—not conditionally, but conclusively—that each of them is in fact 'similarly situated' to the original plaintiffs." MSJ Memorandum Order, RE 117, Page ID # 2855 n.2. As it had "not made any final determination as to the opt-in plaintiffs[,]" it held the "only plaintiff is Lynwood Pickens." *Id.* Then the District Court dismissed Pickens's case with prejudice. Order, RE 118, Page ID # 2863.[2]

Pickens appealed on April 24, 2024. Pickens' Notice of Appeal, RE 120, Page ID # 2865-66. HR-IT filed a notice of cross-appeal on May 8, 2024. HR-IT's Notice of Cross Appeal, RE 125, Page ID # 2912-14.

---

[1] In *Gentry*, the Fifth Circuit explained why this interpretation of *Hebert* is incorrect. *Gentry*, 102 F.4th at 725, n. 70.

[2] The workers who had filed consents in *Pickens* refiled their claims in Texas two weeks before Pickens appealed to this Court. *Compare Merritt v. Hamilton-Ryker It Sols., Inc.*, No. 3:24-cv-00107, Doc. 1 (S.D. Tex. April 12, 2024) with Pickens' Notice of Appeal, RE 120, Page ID # 2865-66 (filed April 24, 2024).

**C.    Rulings Presented for Review.**

Pickens seeks review of the liability determination in the memorandum order. MSJ Memorandum Order, RE 117, Page ID # 2853-62.

<u>**SUMMARY OF THE ARGUMENT**</u>

For decades, it has been clear "an employee is not paid on a 'salary basis' if the employee's usual weekly income calculated on an hourly basis far exceeds the 'salary' guarantee the employer provided[.]" *Hewitt v. Helix Energy Sols. Grp., Inc.*, 15 F.4th 289, 294 (5th Cir. 2021) (*Hewitt*), *aff'd,* 143 S. Ct. 677 (2023) (cleaned up, citing *Brock v. Claridge Hotel & Casino*, 846 F.2d 180, 185 (3rd Cir. 1988)). Therefore, when an employer elects to pay a base "guaranteed" salary plus additional compensation tied to the number of hours the employee works, it must comply with 29 C.F.R. § 541.604. Otherwise, "employees could routinely receive weekly pay of $1,500 or more and yet be guaranteed only the minimum required $455 (thus effectively allowing the employer to dock the employee for partial day absences)." *Id.* (quoting 69 FR 22,121, 22,184 (Apr. 23, 2004) (available at https://www.federalregister.gov/d/04-9016/p-470).

But that's exactly the stunt HR-IT wants to pull. Rather than guarantee its workers their actual weekly salary, HR-IT only guaranteed them just 8 hours' worth of pay. Everything else (including payment for hours 9 through 40 in a 40-hour workweek) was contingent on the number of hours they worked. The Supreme Court just

7

explained—again[3]—why that doesn't work: "Suppose (to approximate the compensation scheme here) such a worker is paid [$100 per hour], and usually works [52 hours] a week, for a total of [$5,200]. Now suppose he is ill and works just [8 hours] in a week, for a total of [$800]. Is that lesser amount (as [HR-IT] argues) a predetermined, 'full salary for [the] week'—or is it just [8 hours'] pay out of the usual [52]? Has the amount been paid 'without regard to the number of [hours]' he worked—or precisely with regard to that number? If ordinary language bears ordinary meaning, the answer to those questions is: the latter. A[n] [hourly]-rate worker's weekly pay is always a function of how many [hours] he has labored. It can be calculated only by counting those [hours] once the week is over—not, as § 602(a) requires, by ignoring that number and paying a predetermined amount." *Helix*, 598 U.S. at 51.

Respectfully, the District Court ignored the Supreme Court's guidance. It simply said "Pickens … received a weekly salary without regard to the number of hours or days worked." MSJ Memorandum Order, RE 117, Page ID # 2858. It relied on the fact that HR-IT says it paid Pickens "paid a guaranteed weekly amount, which HR-IT calls a 'salary,' plus additional compensation calculated on an hourly basis for hours worked

---

[3] When the Department of Labor (DOL) under President George W. Bush rolled out the applicable regulations, it confirmed that if an employee "whose actual compensation is determined on a shift or hourly basis usually earns $1,200 per week, the amount guaranteed must be roughly equivalent to $1,200; the employer **could not** guarantee such an employee only [$455 a week,] the minimum salary required by the regulation." 69 FR at 22,184 (available at https://www.federalregister.gov/d/04-9016/p-471). And under President Trump, the DOL again confirmed HR-IT's would violate the law. *See* DOL Opinion Letter FLSA2018-15, 2018 WL 5921453 (Nov. 8, 2018).

over eight hours in a workweek. The weekly salary was equal to eight hours pay at their hourly rate." *Id.* at Page ID # 2854 (cites omitted).

Had the District Court taken a "hard look at whether [that 8-hour] 'salary' truly compensate[d] [Pickens] for a week's worth of work or [was merely] an artificial distinction between a salary and additional compensation," *Gentry,* 102 F.4th at 725, it would have seen HR-IT's 8-hour "salary" is a sham because Pickens "normal workweek" was nothing like 8 hours. In the 66 weeks he worked for HR-IT, Pickens never worked fewer than 28 hours. Paystubs, RE 100-7, Page ID # 2161. He averaged nearly 52 hours per week, making his usual weekly earnings almost $5,200. *Id.* at Page ID # 2123-88.

"[O]ne might say that an employee is paid on 'a salary basis,' within the regulation's meaning, when he gets what ordinary people think of as a salary." *Helix*, 598 U.S. at 54 n.5. With due respect to the lower court, no one thinks a "salary" is what they earn in their first 8 hours of work. HR-IT calls 8 hours of Pickens' pay a "salary because it "wishes neither to pay employees a true salary nor to pay them overtime." *Id.* at 60. But it can't avoid the FLSA's overtime requirements by doing that. *Id.*

The District Court erred in finding HR-IT satisfied the salary basis test under § 602(a). As the Fifth Circuit and the United States Department of Labor have explained, HR-IT must pass § 604(b)'s reasonable relationship test for Pickens to be exempt. *See id.* at 56; *Gentry,* 102 F.4th at 722-23 (agreeing with the Department of Labor that HR-IT's argument that it needn't comply with § 604(b) was "nonsensical"). But

9

the ratio between Pickens's actual earnings and his $800 "salary" is nearly **6.45-to-1**. *See* Paystubs, RE 100-7, Page ID # 2123-88.[4] This is "far beyond what is considered reasonable." *Gentry*, 102 F.4th at 724.

Because HR-IT failed the salary basis test, this Court should reverse the grant of summary judgment in HR-IT's favor and render summary judgment in Pickens's favor and remand for an award of damages.

## <u>ARGUMENT</u>

### A.    HR-IT is precluded from arguing its pay plan passes the salary basis test.

"Offensive use of collateral estoppel permits a plaintiff to foreclose the defendant from litigating an issue that the defendant has previously litigated unsuccessfully in an action with another party." *Patrick v. S. Cent. Bell Tel. Co.,* 641 F.2d 1192, 1199 n.3 (6th Cir. 1980). "[O]ffensive use of collateral estoppel was discussed extensively by the United States Supreme Court in *Parklane Hosiery Co. v. Shore,* 439 U.S. 322 (1979)." *Id.* at 1199. "In *Parklane Hosiery Co.*, the Supreme Court set down guidelines for the application of offensive collateral estoppel and granted to trial courts broad discretion in determining when it should be applied." *Id.*

"Collateral estoppel is designed to protect parties from multiple lawsuits and potentially inconsistent decisions, as well as to conserve judicial resources." *Harvis v. Roadway Express, Inc.,* 973 F.2d 490, 495 (6th Cir.1992); *Taylor v. Sturgell*, 553 U.S. 880,

---

[4] Even in his *shortest* workweek, Pickens's actual compensation dwarfed his alleged "salary" by a ratio of 3.5-to-1. Paystubs, RE 100-7, Page ID # 2161.

892 (2008) (collateral estoppel fosters "reliance of judicial action by minimizing the possibility of inconsistent decisions"). Thus, issue preclusion can be applied on appeal, even *sua sponte. See Russell v. SunAmerica Sec., Inc.*, 962 F.2d 1169, 1172 (5th Cir. 1992) (applying res judicata on appeal without a request from any party). "Offensive collateral estoppel may be applied to bar litigation of an issue only when four basic criteria are met: (1) the precise issue must have been raised and actually litigated in the prior proceedings; (2) the determination of the issue must have been necessary to the outcome of the prior proceedings; (3) the prior proceedings must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding." *Jackson v. Renfrow,* No. 1:13-CV-00116-TBR, 2014 WL 1514320, at *2 (W.D. Ky. Apr. 16, 2014) (citing *Cobbins v. Tenn. Dep't of Transp.,* 566 F.3d 582, 589–90 (6th Cir.2009) & *Detroit Police Officers Ass'n v. Young,* 824 F.2d 512, 515 (6th Cir.1987)).

All 4 criteria are readily apparent in this case. **<u>Criteria No. 1:</u>** The precise issue is whether HR-IT's "8-hour salary" pay plan satisfies the salary basis test, the same issue decided in *Gentry*. HR-IT is the employer in both cases, and both cases involve the same pay plan. *Compare Gentry,* 102 F.4th at 716 (Employees "were paid on a two-tiered system. First, a 'Guaranteed Weekly Salary equal to 8 hours of pay.' The 'weekly salary' only compensated [them] for, at most, one eight-hour workday. Then, for any hour they worked beyond their eighth hour, Plaintiffs were paid at their hourly rates, including any hours worked over 40.") *with* MSJ Memorandum Order, RE 117, Page ID # 2854.

11

That issue was "actually litigated" in *Gentry*. *Gentry,* 102 F.4th at 716.

**Criteria No. 2:** The determination of the issue (whether HR-IT's pay plan passed the salary basis test) was necessary to the outcome of *Gentry*. Not only was "salary basis" necessary, as the Fifth Circuit put it, "whether Gentry and Taylor were paid on a 'salary basis,'" was the "essential issue" to determine whether they "were exempt from the FLSA's time-and-a-half requirement." *Gentry,* 102 F.4th at 716.

**Criteria No. 3:** *Gentry* resulted in a final judgment on the merits. On March 4, 2022, Magistrate Andrew M. Edison entered his Memorandum and Recommendation granting and denying in part both Gentry and HR-IT's motions for summary judgment. *Gentry v. Hamilton-Ryker IT Sols., LLC,* No. 3:19-CV-00320, 2022 WL 658768, at *1 (S.D. Tex. Mar. 4, 2022). On March 25, 2022, District Judge Jeffrey V. Brown entered his Order Adopting the Memorandum and Recommendation. *Gentry v. Hamilton-Ryker IT Sols., LLC,* No. 3:19-CV-00320, 2022 WL 889276, at *1 (S.D. Tex. Mar. 25, 2022). And on May 24, 2024, the Fifth Circuit affirmed "the district court's judgment that Plaintiffs were not paid on a salary basis under either § 602(a) or § 604(b)[.]" *Gentry,* 102 F.4th at 726. The judgment in *Gentry* is final.

It is of no moment that the Fifth Circuit vacated and remanded that part of the district court's order relating to liquidated damages. *See Gentry,* 102 F.4th at 716. "[P]artial reversal of a judgment generally does not vacate or void the entire judgment." *FCA US, LLC v. Spitzer Autoworld Akron, LLC,* 887 F.3d 278, 289 (6th Cir. 2018). "[I]t is well established that '[i]f an appeal is taken from only part of the judgment, the

remaining part is *res judicata*, and the vacation of the portion appealed from and remand of the case for further proceedings does not revive the trial court jurisdiction of the unappealed portion of the judgment.'" *Id.* (quoting *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 396 n.24 (3d Cir. 1994)).

Nor does it matter that Pickens didn't raise collateral estoppel with the District Court. This Court's "prior decisions suggest that under [certain] circumstances, [it] should not find … res judicata [or, in this case, collateral estoppel] to have been waived by the failure of [a party] to raise it in the district court." *Lesher v. Lavrich,* 784 F.2d 193, 195–96 (6th Cir. 1986). This is one such circumstance, since the *Gentry* appeal wasn't final until after the District Court's order. That's because "there are strong policy reasons supporting a finding of no forfeiture of collateral estoppel when the argument was first raised after the appeal process of the preclusive case was concluded[.]" *Uniloc USA, Inc. v. Motorola Mobility LLC,* 52 F.4th 1340, 1349 (Fed. Cir. 2022).

"The Third Circuit in *5 Unlabeled Boxes* (a decision with which [the Federal Circuit] agree[s]) concluded that the failure to raise collateral estoppel before the appeal process in the preclusive case has concluded should not necessarily be a work of forfeiture." *Id.* at 1348 (citing *United States v. 5 Unlabeled Boxes*, 572 F.3d 169 (3rd Cir. 2009)). "*5 Unlabeled Boxes* involved two parallel proceedings involving the same facts between the same parties (the United States and Hi-Tech Pharmaceuticals, Inc.), one in the Northern District of Georgia and one in the Western District of Pennsylvania." *Id.* (citing *5 Unlabeled Boxes*, 572 F.3d at 173).

13

"The Georgia district court was the first to reach a decision and ruled in favor of the United States on August 15, 2007." *Id.* "On September 13, 2007, Hi-Tech filed a notice of appeal to the Eleventh Circuit." *Id.* "The United States did not notify the Pennsylvania district court of the Georgia district court's decision." *Id.* "On October 15, 2007, the Pennsylvania district court also ruled in favor of the United States, and Hi-Tech promptly appealed." *Id.* "On October 7, 2008, the Eleventh Circuit affirmed the decision of the Georgia District Court." *Id.* "One week later, the United States raised the defense of issue preclusion in the Third Circuit case for the first time." *Id.*

"Despite Hi-Tech's argument that the government 'waived [forfeited] the res judicata defense by not asserting it until [a] late hour,' the Third Circuit found that collateral estoppel applied." *Id.* (quoting *5 Unlabeled Boxes*, 572 F.3d at 175-76). "Although the court noted that 'the pendency of an appeal does not affect the potential for res judicata flowing from an otherwise-valid judgment,' the court found no forfeiture by the delay of raising the issue until the resolution of the appeal because of the problems that can be created 'if a first judgment, relied on in a second proceeding, is reversed on appeal.'" *Id.* (quoting citing *5 Unlabeled Boxes*, 572 F.3d at 175); *see also* 18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure*, § 4433 (2d ed. 2002)).

"As recognized in *5 Unlabeled Boxes*, the rule that a decision is final for the purposes of preclusion while that decision is pending appeal creates '[s]ubstantial difficulties.'" *Id.* (quoting Wright & Miller § 4433, at 79). "The major problem is that a

second judgment based upon the preclusive effects of the first judgment should not stand if the first judgment is reversed." *Id.* (quoting Wright & Miller § 4433, at 79); *see also Restatement (Second) of Judgments* § 13, cmt. f. "If preclusion is raised while the preclusive judgment is pending appeal, it is possible the final outcome will be "the grotesque result of perpetuating a judgment that rests on nothing more than a subsequently reversed judgment." *Id.* at 1348-49 (quoting Wright & Miller § 4433, at 83). Based on these "strong policy reasons" and the Third and Federal Circuits, this Court should "conclude that forfeiture is not appropriate here." *Id.* at 1349.[5]

**Criteria No. 4:** There can be no doubt the party against whom estoppel is sought (HR-IT) had a full and fair opportunity to litigate the issue in *Gentry*.

While the 4 criteria clearly weigh in favor of collateral estoppel, "a trial judge should not allow the use of offensive collateral estoppel when the application of offensive estoppel would be unfair to a defendant." *Patrick,* 641 F.2d at 1199 (cleaned up). "Factors counseling caution in applying the doctrine include: (1) where certain procedures were not available to a party in the prior action; (2) if a party litigated the prior action in an inconvenient forum; (3) whether the current plaintiff could have been joined in the prior action; (4) whether the party against whom estoppel is being asserted

---

[5] *See also Westwood Chem. Co. v. Kulick,* 656 F.2d 1224, 1228 (6th Cir. 1981) (citing *Hart Steel Co. v. Railroad Supply Co.,* 244 U.S. 294 (1917), where a "defendant's motion for affirmance to the Seventh Circuit based on res judicata was found to be timely and proper where same action had been pending in both the Sixth and Seventh Circuits and the Sixth Circuit was first to render a final judgment against plaintiff").

lacked the incentive to litigate in the prior action; (5) if the party against whom collateral estoppel is sought had a full and fair opportunity to litigate the prior action; and (6) if there exists any reasons for unfairness in applying collateral estoppel." *Jackson*, 2014 WL 1514320, at *3 (citing *May v. Oldfield,* 698 F.Supp. 124, 126 (E.D.Ky.1988) & *Parklane,* 439 U.S. at 331–32). None of these factors are present here.

HR-IT already had the opportunity to prove its "8-hour salary" pay plan satisfies the salary basis test and it failed. *Gentry,* 102 F.4th at 726 ("We AFFIRM the district court's judgment that Plaintiffs were not paid on a salary basis under either § 602(a) or § 604(b) and are not exempt from the FLSA's protection."). This Court should reverse the District Court's order because HR-IT is collaterally estopped from arguing it paid Pickens on a salary basis.

## B.  *Helix* and *Gentry* confirm HR-IT's 8-hour "salary" plus additional hourly pay scheme fails the salary basis test.

### 1.  Standard of Review.

The District Court decided this case on cross motions for summary judgment. MSJ Memorandum Order, RE 117, Page ID # 2853. This Court "review[s] a district court's grant of summary judgment de novo." *Ohio State Univ. v. Redbubble, Inc.,* 989 F.3d 435, 441 (6th Cir. 2021) ((citing *Miles v. S. Cent. Human Res. Agency*, 946 F.3d 883, 887 (6th Cir. 2020)). "Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting FED. R. CIV. P. 56(a)).

16

"This standard of review remains the same for reviewing cross-motions for summary judgment." *Id.* at 441-42 (citing *United States S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013)). "When both parties move for summary judgment below, this Circuit does not assume that 'the parties consent to resolution of the case on the existing record or that the district court is free to treat the case as if it was submitted for final resolution on a stipulated record.'" *Id.* at 442 (quoting *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)). "In short, a case involving cross-motions for summary judgment requires 'evaluat[ing] each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" *Id.* (quoting *EMW Women's Surgical Ctr., P.S.C. v. Beshear*, 920 F.3d 421, 425 (6th Cir. 2019)).

Both Pickens and HR-IT moved for summary judgment on liability. However, "FLSA overtime exemptions are affirmative defenses on which the employer has the burden of proof." *See Thomas v. Speedway SuperAmerica, LLC,* 506 F.3d 496, 501 (6th Cir. 2007) (cleaned up). And as a "moving party has the burden—[such as] the defendant on an affirmative defense—" HR-IT showing "must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *Gilbo v. Agment, LLC*, 831 F. App'x 772, 774 (6th Cir. 2020) (same). With respect to Pickens's motion for summary judgment, HR-IT was the non-movant but nonetheless maintained the burden of proof.

17

### 2. Because HR-IT uses a "minimum guarantee plus extras" plan, § 604(b) applies—not § 602(a).

The lower court thought HR-IT's 8-hour salary qualified as a "weekly salary" meeting the requirements of § 602(a). MSJ Memorandum Order, RE 117, Page ID # 2858. Thus, even though Pickens normal pay for a week's work was nearly $5,200, HR-IT's pay plan didn't have to satisfy § 604(b) since it guaranteed him $800 each week (or 8 hours' pay). MSJ Memorandum Order, RE 117, Page ID # 2858. Respectfully, that's incorrect under the facts and Supreme Court precedent.

With respect to the facts, the District Court ignores that HR-IT explicitly calculated the underlying "salary" not by reference to a week, but rather based on 8 hours. HR-IT 30(b)(6) Depo., RE 100-2, Page ID # 2049 (admitting the "salary" was "calculated based on eight hours"). HR-IT admitted this was not designed to reflect their full salary for the week, but rather to pass the minimum salary *level* test. *Id.* & at Page ID # 2051 ("It is all based on ensuring we meet the minimum guarantee salary basis of $685 - - or $684 a week. We utilize eight hours to ensure we're above that guarantee[.]"). It also ignores that *most* 80% of Pickens's pay for even a 40 hour workweek was directly dependent on "the number of … hours worked." 29 C.F.R. § 541.602(a)(1); Pickens Offer Letter, RE 100-9, Page ID # 2256 ("You will also be paid … $100 for all hours worked in excess of 8 hours in a workweek").[6] Thus, HR-IT paid

---

[6] Because HR-IT based its "minimum weekly guarantee" on just 8 hours, a single day, the issue before this Court is functionally the same as that posed in *Helix*, whether a

Pickens by the hour for work within the "normal, non-overtime workweek," as well as overtime hours.

With respect to the law, the lower court misapplied the text of the regulations and *Helix*. The Supreme Court explained § 602(a) cannot be read in a manner that would "subvert § 604(b)'s strict conditions on when [hourly] pay counts as a 'salary.'" *Helix*, 598 U.S. at 56. Instead, "§ 602(a) and … § 604(b) … must be read to complement each other." *Id.* at 67. "HR-IT's interpretation impermissibly … offers a runaround to [§ 604](b)'s reasonable relationship test." *Gentry*, 102 F.4th at 723. The lower court erred by permitting HR-IT to "cart § 604(b) off the stage[.]" *Id.* (cleaned up, quoting *Helix*, 598 U.S. at 56). Pickens "did not get a salary … because his weekly take-home pay could be as little as $[800] or as much as $[8,300[7]], depending on how many [hours] he worked." *Helix*, 598 U.S. at 54, n. 5. That's "not" a "salary." *Id.* "*Helix* and [the regulations] require courts to take a hard look at whether a purported 'salary' truly compensates employees for a week's worth of work or, instead, provides an artificial distinction between a salary and additional compensation." *Gentry*, 102 F.4th at 725.

> a.  **The proper analysis requires considering the pay plan as a whole—not just the portion that bolsters an employer's decision not to pay overtime.**

---

day rate over the salary threshold could serve as a salary. The answer is no. *Helix,* 598 U.S. at 54.

[7] Paystub, RE 100-7, Page ID # 2164.

The District Court found that because HR-IT paid a "minimum weekly guarantee" that was above the salary *level* test, it necessarily paid on a salary *basis*. MSJ Memorandum Order, RE 117, Page ID # 2858. It focused its analysis solely on HR-IT's "guarantee," leaving HR-IT free to condition any other portion of Pickens's weekly pay directly on the number of hours he worked. But that would render § 604 mere surplusage. *See Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 668-69 (2007) (invoking the canon against surplusage in interpretation of regulation).

Just because an employer purports to pay some wages labeled "salary" or "minimum weekly guarantee" does not mean that the employer has paid a salary, nor does it obviate the need for the reasonable relationship test under § 604(b). In fact, a "minimum weekly required amount" is the first prong under § 604(b). 29 C.F.R. § 604(b). The second prong requires the "guaranteed amount" to bear a reasonable relationship to the "usual earnings at the assigned hourly, daily or shift rate." *Id.*

Here is the proper analysis: Did the employer pay the employee an amount equal to the required minimum salary *level* on a salary *basis*? If no, the employee fails the salary basis test under both § 602(a) and § 604(b). 29 C.F.R. § 541.602 & § 541.604. If yes, a court *must* then ask: Did the employer pay any additional sums above and beyond the guaranteed amount. If no, the employer has complied with § 602 "independently" of § 604. If yes, a court *must* ask: Did the employer pay additional sums on an hourly, daily or shift basis for work *within* the normal workweek **or** for work within the "normal workweek"? *Gentry*, 102 F.4th at 722 (quoting § 604(b)).

If the employer paid additional sums for work "**beyond** the normal workweek," then the employer complied with § 604(a). 29 C.F.R. § 541.604(a) (emphasis added). But if the employer paid for work within the "normal workweek," a court *must* apply the reasonable relationship test, comparing the minimum guarantee with usual earnings for the "normal scheduled workweek." *Gentry*, 102 F.4th at 722-23. The analysis the District Court applied—finding § 602(a) met whenever an amount over $684 is guaranteed—renders § 604(b)'s full test surplusage. As the Supreme Court, the Fifth Circuit, and the United States Department of Labor have noted, this improperly "cart[s] § 604(b) off the stage." *Helix*, 598 U.S. at 56; *Gentry*, 102 F.4th at 723; Secretary of Labor's Brief as Amicus Curiae in *Gentry v. Hamilton-Ryker IT Sols. L.L.C.*, 2023 WL 4303314, at *21 (5th Cir. June 20, 2023) ("Hamilton-Ryker's reading of 541.602(a) and 541.604(a), and its assertion that it complies with those regulations and therefore need not comply with 541.604(b), is not only contrary to the plain text of those regulations, but cannot be correct, because this would effectively nullify 541.604(b).").

### b.    The District Court erred in applying § 602(a).

The District Court ignored the fact that HR-IT's so-called "weekly salary" was calculated to cover just 8 hours of work and all of Pickens's remaining pay for his normal workweek was conditioned on the number of hours he worked. To justify overlooking this key fact, the District Court ignored critical language in § 604(a).

The District Court's reasoned Pickens's $800 "salary" passed the salary basis test because § 602(a) only requires his salary to be "part of the [his] compensation." MSJ

Memorandum Order, RE 117, Page ID # 2857 (quoting 29 C.F.R. § 602(a)). According to the District Court, § 604(a) reenforces § 602(a)'s "part of" language by allowing employers to provide exempt employees with "additional compensation without losing the exemption or violating the salary basis requirement, if the employment arrangement also includes a guarantee of at least the minimum weekly-required amount paid on a salary basis. … Such additional compensation may be paid on any basis (e.g., flat sum, bonus payment, straight-time hourly amount, time and one-half or any other basis), and may include paid time off." *Id.* (quoting 29 C.F.R. § 541.604(a)).

But the District Court removed this sentence from § 604(a) with its ellipsis: "Similarly, the exemption is not lost if an exempt employee who is guaranteed at least $684 each week paid on a salary basis also receives additional compensation based on hours worked for work beyond the normal workweek." 29 C.F.R. § 541.604(a). "A straight-forward reading of the text [—disregarded by the District Court—] makes clear that § 604(a) does not envision hourly pay for work within the normal workweek." *Gentry*, 102 F.4th at 722. Where, as here, the additional compensation kicks in during the normal workweek, the employee is not exempt unless the employer complies with § 604(b). *Id.* at 723. Otherwise, HR-IT could condition 80% (or more) of its "exempt" employee's usual weekly pay on the number of hours worked as long as HR-IT "also" guarantees an amount meeting the salary level test. But that logic would deny impact to § 604(b) (which *Helix* explicitly says we cannot "subvert" or cart "off the stage") and the actual body text of *Helix*. *Helix*, 598 U.S. at 56; *Gentry*, 102 F.4th at 721.

22

The *Helix* opinion states "§ 602(a) and § 604(b) are independent routes for satisfying the HCE rule's salary-basis component." *Id.* at 50 n.3. "So [of course] a pay scheme meeting § 602(a) and the HCE rule's other requirements does not also have to meet § 604(b) to make a worker exempt" since if one path applies, the other does not. *Id.* Again, § 602(a) and § 604(b) are "non-overlapping paths," with § 602(a) applying when the employer pays a traditional "salary" and § 604(b) applying when the employer pays a "minimum guarantee plus extras." *Id.* at 56. *Helix* confirms § 602(a)'s path is "limited to weekly-rate employees" (i.e., those paid a "weekly-rate-only") with § 604 "taking over" when the employees are paid based on a "minimum guarantee plus extras" pay plan. *Id.* at 56-57; 29 C.F.R. § 541.604. Because HR-IT paid Pickens using a "minimum guarantee plus extras" plan, it must comply with § 604. *Id.* at 56-57.

Driving home the point, Justice Kagan (in *Helix*) explained "Helix could come into compliance with the salary-basis requirement … in either of two ways. It could **add** to Hewitt's per-day rate a weekly guarantee **that satisfies § 604(b)'s conditions**. Or it could convert Hewitt's compensation to a **straight week salary** for time he spends on the rig [which would comply with § 602(a) **independently** of § 604 because it is paying a salary and **nothing more**]." *Id.* at 60. "Helix protest[ed] that either option would make it pay for days Hewitt has not worked. […] But that is just to say that Helix wishes *neither* to pay employees a true salary *nor* to pay them overtime. And **the whole point of the salary-basis requirement is to take that third option off the table**, even though doing so may well increase costs." *Id.* (emphasis added).

23

If there was a "third option," any employee meeting the duties test who "gets a paycheck no more frequently than every week; and receives at least $455 per week (about $24,000 per year) [would be] excluded from the FLSA's overtime protections." *Id.* at 61. For example, "nurses working on a per-day or per-shift basis are likely to meet the general rule's duties test; and their employers **would assure them $455 per week in a heartbeat if doing so eliminated the need to pay overtime.** And nurses … are just one of the many examples of workers paid less than $100,000 a year who would, if [HR-IT] prevailed, lose their entitlement to overtime compensation. That … is difficult, if not impossible, to reconcile with the FLSA's design." *Id.* (emphasis added).

Thus, the Supreme Court confirmed employers can't avoid their obligation to pay overtime by "guaranteeing" an amount above the salary threshold if a large chunk of the "weekly take home pay" is dependent on the number of hours they work. *Id.* & at 54, n.5. HR-IT can't escape the FLSA's requirements by guaranteeing a relative pittance of a "salary" to hourly workers like Pickens—it must either pay a "true salary" (guarantee the "full salary for the week") or comply with § 604(b). *Id.* at 47.

The Fifth Circuit gets it—as HR-IT knows.[8] *See Gentry,* 102 F.4th 712. "In [its] view, *Helix* and sections 602(a), 604(a), and 604(b) require courts to take a hard look at whether a purported 'salary' truly compensates employees for a week's worth of work or, instead, provides an artificial distinction between a salary and additional

---

[8] *Gentry* involved the same pay plan HR-IT used to pay Pickens. *See Gentry,* 102 F.4th at 716.

compensation." *Id.* at 725. That ensures "a compensation system function[s] much like a true salary—a steady stream of pay, which the employer cannot much vary and the employee may thus rely on week after week." *Helix,* 598 U.S. at 46-47.

"*Helix* held that § 602(a) (aided by § 604(a)) applies to employees paid on a weekly basis while § 604(b) applies to employees paid on a more frequent basis, such as by the hour or day." *Gentry,* 102 F.4th at 720 (citing *Helix,* 598 U.S. at 50 n.3). "In doing so, *Helix* established that the 'basis' of an employee's purported salary determines which regulatory test governs a particular compensation scheme." *Id.* A true "weekly rate compensates employees for **all** work performed that week." *Id.* at 725 (emphasis added). When the normal workweek is carved up into a "salary" portion and so-called "additional pay" based on hours, days, or shifts worked, § 604(b) controls. *Id.*

Said differently, "[§] 602(a) requires that salaried employees be paid on a 'weekly basis.'" *Gentry,* 102 F.4th at 725 (citing 29 C.F.R. § 602(a)). "In *Helix*, the Supreme Court defined the phrase 'basis' as 'the unit of time used to calculate pay.'" *Id.* (quoting *Helix,* 598 U.S. at 53). "Accordingly, employees are paid on a 'weekly basis' only when their 'predetermined sum' is *calculated*, not merely provided, by the week. Put simply, payment on a 'weekly basis' requires that an employee be paid a 'weekly rate.' And just as employees paid an hourly rate are paid for all work performed that hour, a weekly rate compensates employees for all work performed that week." *Id.* (citing *Helix,* 598 U.S. at 52-53).

Pickens's "guaranteed weekly salary was valued at his individual hourly rate times eight hours." *Gentry,* 102 F.4th at 725 (cleaned up); HR-IT 30(b)(6) Depo., RE 100-2, Page ID # 2049 (admitting the "salary" was "calculated based on eight hours"). "The 'unit or method for calculating pay' was by the hour, meaning that [Pickens's] 'salary' was paid on an hourly basis and not by the week as § 602(a) requires." *Id.* at 721 HR-IT 30(b)(6) Depo., RE 100-2, Page ID # 2049 & 2051. "Nor can HR-IT reasonably argue that eight hours of pay constitutes a 'weekly rate.'" *Id.* "[Pickens's] 'guaranteed weekly salary' typically accounted for less than [16%] of [his] total paychecks." *Id.* "Because the 'guaranteed weekly salary' failed to provide a weekly rate, it was not a true salary but was illusory." *Id.* (citing *Brock,* 846 F.2d at 187; 69 Fed. Reg. 22122, 22177 (Apr. 23, 2004)).

"[Pickens's] actual earnings could only be ascertained by determining the number of hours worked that week." *Id.* "Just as "[a] daily-rate worker's weekly pay is always a function of how many days he has labored," [Pickens's] paychecks were a function of the hours worked." *Id.* "Phrased differently, [his] pay could 'be calculated only by counting those [hours] once the week is over—not, as § 602(a) requires, by ignoring that number and paying a predetermined amount.'" *Id.* (quoting *Helix,* 598 U.S. at 51).

For these reasons, the Court should "conclude that § 602(a) does not govern this appeal because HR-IT did not compensate [Pickens] on a 'weekly basis.'" *Id.* at 722. The District Court thus erred in applying § 602(a).

### c.  *Gentry* is in line with *Helix* as well as pre-*Helix* decisions from other circuits.

As discussed above, *Gentry* applies the Supreme Court's guidance to the exact HR-IT pay plan at issue here. Not only that, the Fifth Circuit's "interpretation of sections 602(a), 604(a), and 604(b) is consistent with three pre-*Helix* decisions from the Second, Third, and Eighth Circuits." *Gentry,* 102 F.4th at 724.

"To start, both the Second and Eighth Circuits have upheld compensatory schemes wherein employees were assured an annual salary, whose weekly or biweekly pay was a portion of that salary based on the expected hours worked per week, and who received additional compensation for hours worked beyond the agreed-upon workweek." *Id.* (citing *Anani v. CVS RX Servs., Inc.,* 730 F.3d 146, 147 (2d Cir. 2013); *Coates v. Dassault Falcon Jet Corp.,* 961 F.3d 1039, 1044 (8th Cir. 2020)). In *Anani,* the "plaintiff-employee received an annual base salary **predicated on a forty-four hour workweek** plus hourly compensation for hours worked in excess of agreed-upon forty-four hour week." *Id.* (emphasis added). And *Coates* involved "employees [who] received [and] annual salary and [their] weekly pay was their annual salary divided by expected hours worked per year." *Id.* So *Anani* and *Coates* "upheld compensation schemes that are markedly distinct from HR-IT's" because HR-IT "provided a guaranteed weekly rate equivalent to one eight-hour workday and "additional compensation" for work performed *during* the workweek." *Id.* "Furthermore, [the *Anani* and *Coates*] employees

were paid a true weekly rate based upon their agreed-upon work schedule with their employer. As such, [those] practices are consistent with [*Gentry*].” *Id.*

"In *Brock v. Claridge Hotel & Casino*, the Third Circuit considered and rejected a pay scheme analogous to [HR-IT's].” *Gentry,* 102 F.4th at 724. "In *Brock*, all employees with supervisory capacity were guaranteed a weekly salary of $250 and were paid by the hour once they reached the $250 minimum, which was typically within a few hours of work.” *Id.* (citing *Brock*, 846 F.2d at 182-83). "Finding that the guaranteed salary bore 'no relation' to the supervisors' typical week and the 'additional' hourly compensation was dissimilar to the regulatory examples, the Third Circuit concluded the supervisors were not paid on a salary basis.” *Id.* at 724-25 (citing *Brock*, 846 F.2d at 185). "The Department of Regulations has cited [*Brock*] several times when explaining the salary basis test.” *Id.* at 725 (citing 69 Fed. Reg. 22122, 22177, 22183 (Apr. 23, 2004)).

In fairness, the second *Gentry* opinion (*Gentry,* 102 F.4th 712) had not issued when the District Court entered its order. *Compare* MSJ Memorandum Order, RE 117, Page ID # 2853 (dated March 28, 2024) *with Gentry,* 102 F.4th 712 (filed May 24, 2024). And the District Court disregarded the first opinion in *Gentry*, 2023 WL 4704115, because that opinion had been withdrawn pending a rehearing. MSJ Memorandum Order, RE 117, Page ID # 2861 n.7.

On top of that, the District Court believed the unpublished decision *Hebert*, 2023 WL 4105427, supported its decision. *Id.* We now know that it doesn't. The Fifth Circuit says "*Hebert* is fully consistent with [its decision in *Gentry*] as the [*Hebert*] record indicated

that Hebert's biweekly salary was a function of this annual salary and roughly equated the hours worked during his normal workweek." *Gentry,* 102 F.4th at 725 n.70. In other words, Hebert's salary was like the *Anani* and *Coates* salaries, which compensated the employee for all hours worked during their normal workweek. And both decisions (*Hebert* and *Gentry*) are "consistent with [the] conclusion that a salary must provide a weekly rate." *Id.* "Hebert's premium payments constituted true, additional compensation under § 541.604(a) because they were in addition to this weekly rate." *Id.* Pickens's 8-hour "salary" and additional payments was HR-IT's attempt to "artificially divide pay into a 'salary' and additional compensation in order to avoid paying employees a true salary." *Id.* at 719 n.22 (citing 14 Fed. Reg. 7730 (Dec. 28, 1949)). That isn't allowed. *Id.* In fact, that's why the reasonable relationship test—§ 604(b)—exists. *Id.* (citing 69 Fed. Reg. 22122, 22184 (Apr. 23, 2004)).

The District Court is also wrong about *Wilson v. Schlumberger Tech. Corp.*, 80 F.4th 1170 (10th Cir. 2023). *See* MSJ Memorandum Order, RE 117, Page ID # 2860-62. Pickens agrees with the Fifth Circuit that "*Schlumberger* overlooked the 'antecedent' question in *Helix*: whether the salary, regardless of the frequency with which it was distributed, provided a true weekly rate." *Gentry,* 102 F.4th at 725 (citing *Helix*, 598 U.S. at 50 n.3). However, the factual differences also make the District Court's reliance on *Schlumberger* problematic. Indeed, even the "Tenth Circuit acknowledged [HR-IT's pay plan] is factually dissimilar." *Id.* (citing *Schlumberger*, 80 F.4th at 1179 n.4). "In *Schlumberger*, the Tenth Circuit found that a measurement-while-drilling operator was

29

paid on a salary basis when he was guaranteed a fixed, biweekly salary in addition to extra compensation for time spent on a drilling rig." *Id.* (citing *Schlumberger*, 80 F.4th at 1173). "The court held that the employee was paid on a salary basis because he received the "same salary every week" which was "not based upon his hours, days, or shifts of work." *Id.* (citing *Schlumberger*, 80 F.4th at 1177). The Tenth Circuit even said "[g]iven the stark contrast in fact patterns our respective courts are concerned with, we are hard-pressed to say that the logic of *Gentry* bears on this case." *Schlumberger*, 80 F.4th at 1179 n.4.

Thus, the Courts of Appeal agree the two pay plans (HR-IT's and Schlumberger's) are so dissimilar that "logic" doesn't transfer. *Schlumberger*, 80 F.4th at 1179 n.4; *Gentry,* 102 F.4th at 725. Yet that's exactly what the District Court did here. MSJ Memorandum Order, RE 117, Page ID # 2860-62. This Court should correct that error and find (as did the Fifth Circuit) HR-IT must satisfy § 604(b)'s reasonable relationship test.

### 3.    HR-IT fails the salary basis test under § 604(b).

To qualify as a *bona fide* "salary," the "guaranteed amount" must be "reasonably related" to compensation "actually earned." 29 C.F.R. § 541.604(b). That is, the "weekly salary guarantee" must be "roughly equivalent to the employee's usual earnings at the assigned hourly … rate for the employee's normal scheduled workweek." *Id.* A "1.5-to-1 ratio of actual earnings to guaranteed weekly salary is a 'reasonable relationship' under the regulations." DOL Opinion Letter FLSA 2018-25, 2018 WL 5921453, at *2 (citing

29 C.F.R. § 541.604(b)); *Hewitt*, 15 F.4th at 300 (Ho, J., concurring); *Cayton v. Metropolitan Government Of Nashville & Davidson County,* No. 3:20-CV-00859, 2022 WL 183437, at *3 (M.D. Tenn. Jan. 19, 2022); *see also* Dep't of Labor, Wage & Hour Div., *Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees*, 69 Fed. Reg. 22122, 22184 (Apr. 23, 2004). Administrations of all political persuasions have confirmed for decades that a "salary" amounting to a fraction of a normal week's pay isn't enough. *See* DOL Opinion Letter FLSA 2018-25, 2018 WL 5921453, at *2 (employees who usually work 53 hours a week aren't paid on a "salary basis" if their alleged "weekly guarantee" is only 30 hours of pay); DOL Opinion Letter FLSA 437 (May 7, 1993) (employees who typically work 42 hours a week aren't paid on a "salary basis" if the alleged "guarantee" is just 20 hours of pay).

In issuing the 2004 regulations, the DOL explained why incorporating the reasonable relationship test—the DOL's "long-standing interpretation of the existing salary basis regulation"—was necessary. *See* 69 Fed. Reg. 22122-01 (discussing 29 C.F.R. § 541.604(b)). Without it, "employees could routinely receive weekly pay of $1,500 or more and yet be guaranteed only the minimum required $455 (thus effectively allowing the employer to dock the employee for partial day absences)." 69 Fed. Reg. at 22184. "Such a pay system would be inconsistent with the salary basis concept and the salary guarantee would be nothing more than an illusion." *Id.*; *Brock*, 846 F.2d at 185; *Hewitt*, 15 F.4th at 294. Requiring that the salary "guarantee" bear a reasonable relationship to the amount actually earned "create[s] a compensation system functioning much like a

true salary—a steady stream of pay, which the employer cannot much vary and the employee may thus rely on week after week." *Helix,* 598 U.S. at 47 (explaining § 604(b)'s conditions ensure hourly pay is "consistent with the salary basis concept").

HR-IT flunks § 604(b)'s reasonable relationship test in spectacular fashion. That's hardly surprising since HR-IT ignored the reasonable relationship test in designing and implementing its minimum salary plus hourly pay scheme and says it never analyzed whether it satisfied the reasonable relationship test. Pickens's Statement of Fact, RE 100, Page ID # 2038 ¶ 12; Interrogatory No. 2, RE 100-6, Page ID 2113-14. Pickens "usual earnings"—based on the hours he worked—dwarfed the alleged "weekly base salary" (something HR-IT knew long ago). 29 C.F.R. § 541.604(b); Pickens's Statement of Fact, RE 100, Page ID # 2037 ¶ 10; Declaration of Omid Afhami, RE 100-3, Page ID # 2072 ¶ 9; Reasonable Relationship Table, RE 100-4, Page ID # 2075-2105; Reasonable Relationship Summary, RE 100-5, Page ID # 2106-07.

Recall that "usual earnings that are nearly 1.8-times--close to double--the guaranteed weekly salary materially exceed the permissible ratios … and are not roughly equivalent to that salary under § 541.604(b)." DOL Opinion Letter FLSA2018-25, 2018 WL 5921453, at *2. During the 65 weeks Pickens worked, his ratio exceeded the permissible level every single time. Reasonable Relationship Table, RE 100-4, Page ID # 2087-89. And it wasn't even close. Pickens's average ratio was **6.47 times** his 8-hour "salary." *Id.* In short, this is an easy one: HR-IT fails the reasonable relationship test and, hence, the salary basis test.

The Court should reverse the District Court's order and render summary judgment that Pickens was not exempt because HR-IT fails the salary basis test.

## CONCLUSION

"[O]ne might say that an employee is paid on 'a salary basis,' within the regulation's meaning, when he gets what ordinary people think of as a salary." *Helix*, 598 U.S. at 54 n.5. Do "ordinary people" think a salary should only cover their first 8 hours of work in a week? Of course not. HR-IT's "8-hour salary" exists for one reason only: because "[HR-IT] wishes neither to pay employees a true salary nor to pay them overtime." *Id.* at 60. But "the whole point of the salary-basis requirement is to take that third option off the table[.]" *Id.* The District Court erred by offering HR-IT that third option. Pickens respectfully requests the Court adopt the determinations of the Fifth Circuit Court of Appeals and the Department of Labor, reverse the grant of summary judgment in HR-IT's favor, and render summary judgment in Pickens's favor.

<div style="margin-left:40%">

Respectfully submitted,

JOSEPHSON DUNLAP LLP

By: */s/ David M. Mathews*
    David M. Mathews
    TX Bar No. 24058211
    11 Greenway Plaza, Suite 3050
    Houston, Texas 77046
    Phone: (713) 352-1100
    Fax: (713) 352-3300
    dmathews@mybackwages.com

</div>

Richard J. (Rex) Burch
TX Bar No. 24001807
Federal ID No. 21615
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone:        (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

Melody L. Fowler-Green
Yezbak Law Offices PLLC
2021 Richard Jones Road, Suite 310-A
Nashville, Tennessee 37215
mel@yezbaklaw.com

**ATTORNEYS FOR PLAINTIFF-
APPELLANT/CROSS-APPELLEE**

## CERTIFICATE OF COMPLIANCE WITH FED. R. APP. 32(A)

This First Brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because the brief contains 8,933 words. This First Brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this brief is prepared in a proportionally spaced typeface using Microsoft Word in 14-point, Garamond font, a Roman typeface.

*/s/ David M. Mathews*
**David M. Mathews**

## CERTIFICATE OF SERVICE

I hereby certify that on July 25, 2024, I electronically filed the foregoing document using the ECF system which will send notification of such filing to all counsel of record.

*/s/ David M. Mathews*
**David M. Mathews**

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

| RE No. | Date | Description | Page ID # |
|--------|------|-------------|-----------|
| 1 | 02/18/2020 | Complaint | 1-9 |
| 7 | 02/21/2020 | Notice of Consent to Join (Merritt) | 20-23 |
| 19 | 03/23/2020 | Answer | 46-67 |
| 27 | 04/20/2020 | Joint Stipulation | 107-111 |
| 29 | 04/24/2020 | Joint Stipulation | 115-124 |
| 38 | 05/29/2020 | Notice of Consent to Join (Cunningham, Easley, Gibson, Jackson, Kodali, Nyman, and Stahl) | 152-160 |
| 39 | 06/03/2020 | Notice of Consent to Join (Moss) | 161-163 |
| 40 | 06/10/2020 | Notice of Consent to Join (Swanks) | 164-166 |
| 41 | 06/10/2020 | Notice of Consent to Join (Knight) | 167-169 |
| 42 | 06/22/2020 | Notice of Consent to Join (Wilson) | 170-172 |
| 43 | 06/29/2020 | Notice of Consent to Join (Sanchez) | 173-175 |
| 46 | 07/17/2020 | Notice of Consent to Join (Tabler) | 181-183 |
| 95 | 04/28/2023 | HR-IT's Motion for Summary Judgment | 1566-1568 |
| 98 | 04/28/2023 | Pickens's Motion for Summary Judgment | 2008-2009 |
| 100 | 04/28/2023 | Pickens's Statements of Fact | 2035-2040 |
| 100-3 | 04/28/2023 | Declaration of Omid Afhami | 2071-2074 |
| 100-4 | 04/28/2023 | Reasonable Relationship Table | 2075-2105 |
| 100-5 | 04/28/2023 | Reasonable Relationship Summary | 2106-2107 |
| 100-6 | 04/28/2023 | HR-IT's Discovery Responses | 2108-2121 |
| 100-7 | 04/28/2023 | Paystubs | 2122-2188 |
| 100-9 | 04/28/2023 | Offer Letter | 2256-2257 |
| 104 | 05/26/2023 | HR-IT's Response to Pickens's Statement of Facts | 2645-2676 |
| 117 | 03/28/2024 | Memorandum Order granting HR-IT's motion for summary judgment, denying Pickens' motion for summary judgment, and dismissing Pickens' claims. | 2853-2862 |
| 118 | 03/28/2024 | Order granting HR-IT's motion for summary judgment, denying Pickens' motion for summary judgment, and dismissing Pickens' claims. | 2863 |
| 120 | 04/24/2024 | Pickens' Notice of Appeal | 2865-2866 |
| 125 | 05/08/2024 | HR-IT's Notice of Cross Appeal | 2912-2914 |