NOS. 24-5407, 24-5459

---

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

---

**LYNWOOD PICKENS**,

*Plaintiff – Appellant/Cross-Appellee,*

v.

**HAMILTON-RYKER IT SOLUTIONS, LLC**

*Defendant – Appellee/Cross-Appellant.*

---

On Appeal from the United States District Court
for the Middle District of Tennessee
Nashville Division

---

## BRIEF OF APPELLEE/CROSS-APPELLANT
## HAMILTON-RYKER IT SOLUTIONS, LLC

---

**Ashlee Cassman Grant**
Texas Bar No. 24082791
Federal ID No. 1607786
**Jennifer R. DeVlugt**
Texas Bar No. 24094624
Federal ID No. 3323698
**BAKER & HOSTETLER LLP**
811 Main Street, Suite 1100
Houston, Texas  77002
Telephone:  (713) 751-1600
Facsimile:  (713) 751-1717
agrant@bakerlaw.com
jdevlugt@bakerlaw.com

**ATTORNEYS FOR DEFENDANT – APPELLEE/CROSS-APPELLANT**

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: __24-5407 24-5459__          Case Name: __Pickens v. Hamilton-Ryker IT Sol., LLC__

Name of counsel: __Ashlee Grant__

Pursuant to 6th Cir. R. 26.1, __Hamilton-Ryker IT Solutions, LLC__
*Name of Party*

makes the following disclosure:

1.  Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

NO

2.  Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

NO

CERTIFICATE OF SERVICE

I certify that on _____08/26/2024_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Ashlee Grant

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT ................................................x

STATEMENT OF JURISDICTION.........................................................................1

STATEMENT OF ISSUES ....................................................................................2

STATEMENT OF THE CASE.................................................................................3

   I.      FACTUAL BACKGROUND ........................................................................3

      A.    HR-IT'S OPERATIONS AND PAYROLL PRACTICES. ...................................3

      B.    PICKENS WAS A HIGHLY COMPENSATED PIPING INSPECTOR WHO RECEIVED A GUARANTEED WEEKLY SALARY OF $800. ...........................5

  II.     PROCEDURAL HISTORY ..........................................................................7

      A.    PICKENS FILED HIS COMPLAINT AND BRAD MERRITT FILED A NOTICE OF CONSENT BEFORE HR-IT IS SERVED WITH THE LAWSUIT. .......................7

      B.    THE COURT CONDITIONALLY CERTIFIED THE LAWSUIT AS A COLLECTIVE ACTION AND THIRTEEN ADDITIONAL INDIVIDUALS FILED NOTICES OF CONSENT TO JOIN PICKENS'S LAWSUIT....................................................7

      C.    THE PARTIES EXCHANGE DISCOVERY OVER PICKENS AND ALL OF THE OPT-IN PLAINTIFFS. ...................................................................................9

      D.    THE PARTIES FILE CROSS MOTIONS FOR SUMMARY JUDGMENT. ...........11

      E.    THE DISTRICT COURT GRANTED HR-IT'S SUMMARY JUDGMENT WITH RESPECT TO PICKENS, BUT NOT THE OPT-IN PLAINTIFFS.......................13

      F.    THE OPT-IN PLAINTIFFS SIMULTANEOUSLY FILE A NOTICE OF APPEAL AND A NEW COMPLAINT REASSERTING THEIR CLAIMS IN THE SOUTHERN DISTRICT OF TEXAS................................................................................14

SUMMARY OF THE ARGUMENT ....................................................................16

ARGUMENT ........................................................................................................20

   I.      THE DISTRICT COURT CORRECTLY DETERMINED THAT PICKENS WAS A HIGHLY COMPENSATED EMPLOYEE PAID ON A SALARY BASIS...................................................................................20

      A.    THE DISTRICT COURT CORRECTLY FOUND PICKENS AND THE OPT-IN PLAINTIFFS WERE PAID A GUARANTEED WEEKLY SALARY THAT SATISFIED § 602(A)'S SALARY BASIS TEST...........................................21

B.  HEWITT CONFIRMS §602(A) IS SATISFIED EVEN WHEN AN EMPLOYEE RECEIVES HOURLY COMPENSATION IN ADDITION TO A GUARANTEED SALARY.................................................................................23

C.  THE DOL REGULATIONS CONFIRM THE REASONABLE RELATIONSHIP TEST DOES NOT APPLY HERE BECAUSE HR-IT'S PAYMENT SCHEME SATISFIES § 602(A). ...............................................................26

D.  THE DISTRICT COURT'S DECISION CONFORMS WITH POST-HEWITT COURTS THAT HAVE APPLIED §602(A) TO HYBRID COMPENSATION SCHEMES LIKE HR-IT...............................................................30

II.  HR-IT SHOULD NOT BE COLLATERALLY ESTOPPED FROM CONTINUING TO DEFEND ITS PAY PRACTICE. .............................32

III.  THE SALARY BASIS TEST IS INVALID TO THE EXTENT IT PRECLUDES EXEMPT STATUS FOR EMPLOYEES WHO UNDISPUTEDLY PERFORMED WHITE-COLLAR DUTIES.............35

A.  THIS COURT MAY NO LONGER AFFORD THE DOL DEFERENCE IN LIGHT OF THE SUPREME COURT'S NEW STANDARD OF REVIEW IN LOPER BRIGHT. .................................................................................36

B.  THE "SALARY BASIS" REQUIREMENTS EXCEED THE DOL'S AUTHORITY TO DEFINE AND DELIMIT THE WHITE-COLLAR EXEMPTIONS. ................37

C.  AT MINIMUM, THE REASONABLE RELATIONSHIP REQUIREMENT IN § 604(B) MUST BE INVALIDATED. ............................................45

IV.  THE DISTRICT COURT ERRED IN FINDING THE OPT-IN PLAINTIFFS WERE NOT PARTY PLAINTIFFS..................................47

A.  STANDARD OF REVIEW.........................................................47

B.  CLARK DOES NOT CHANGE THE CONCLUSION THAT THE OPT-IN PLAINTIFFS BECAME PARTY PLAINTIFFS WHEN THEY FILED THEIR CONSENTS. ............................................................................48

C.  THE DISTRICT COURT'S DETERMINATION THAT PICKENS IS THE ONLY PLAINTIFF PREJUDICES HR-IT BY CREATING ONE-WAY INTERVENTION FOR THE OPT-IN PLAINTIFFS. ................................................51

D.  CLARK DOES NOT REQUIRE THE COLLECTIVE TO BE "DECERTIFIED" OR THE OPT-IN PLAINTIFFS DISMISSED.......................................53

E.  THE DISTRICT COURT ERRED IN REFUSING TO MAKE A "FINAL DETERMINATION" THAT THE OPT-IN PLAINTIFFS WERE SIMILARLY SITUATED TO PICKENS. .........................................................55

F.    THE OPT-IN PLAINTIFFS MAY STILL BE BOUND BY THE DISTRICT COURT'S JUDGMENT UNDER PERMISSIVE JOINDER. ...............................57

CONCLUSION ........................................................................................................60

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Addison v. Holly Hill Fruit Prod.*,
 322 U.S. 607 (1944)....................................................................40, 41

*Auer v. Robbins*,
 519 U.S. 452 (1997).....................................................................43, 44

*Becherer v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.*,
 193 F.3d 415 (6th Cir. 1999) (Moore, J., concurring)........................52

*Bisig v. Time Warner Cable, Inc.*,
 940 F.3d 205 (6th Cir. 2019) ..............................................................48

*Blake v. Broadway Servs., Inc.*,
 No. CV SAG-18-0086, 2020 WL 1675954 (D. Md. Apr. 6, 2020) ...................25

*Buckner v. Armour & Co.*,
 53 F. Supp. 1022 (N.D. Tex. 1942) ....................................................42

*Canaday v. Anthem Companies, Inc.*,
 9 F.4th 392 (6th Cir. 2021) ...............................................18, 49, 50

Charles A. Wright et al., *Federal Practice & Procedure*, 1653, at 415
 (3d ed. 2001) .......................................................................................57

*Christopher v. SmithKline Beecham Corp.*,
 567 U.S. 142 (2012)...........................................................................27

*Clark v. A&L Homecare & Training Ctr., LLC*,
 68 F.4th 1003 (6th Cir. 2023) ......................................................*passim*

*Dejesus v. Humana Ins. Co.*,
 No. 3:15-CV-862-GNS, 2016 WL 3630258 (W.D. Ky. June 29,
 2016) ...................................................................................................57

*Devoe v. Atlanta Paper Co.*,
 40 F. Supp. 284 (N.D. Ga. 1941).......................................................42

*Douglas v. Argo-Tech Corp.*,
113 F.3d 67 (6th Cir. 1997) ................................................................25

*Elkins v. Richardson-Merrell, Inc.*,
8 F.3d 1068 (6th Cir. 1993) ...............................................................32

*Encino Motorcars, LLC v. Navarro*,
138 S. Ct. 1134 (2018)........................................................................21

*Genesis HealthCare Corp. v. Symczyk*,
569 U.S. 66 (2013)..............................................................................18

*Gentry v. Hamilton-Ryker IT Sols.*,
102 F.4th 712 (5th Cir. 2024) ............................................................33

*Gentry v. Hamilton-Ryker IT Sols., LLC*,
No. 3:19-CV-00320, 2022 WL 658768 (S.D. Mar. 4, 2022) .....................*passim*

*Gooch v. Life Inv. Ins. Co. of Am.*,
672 F.3d 402 (6th Cir. 2012) .............................................................51

*Hebert v. FMC Technologies, Inc.*,
2023 WL 4105427 (5th Cir. June 21, 2023)......................................30

*Helix Energy Solutions Group, Inc. v. Hewitt*,
598 U.S. 39, 143 S. Ct. 677 (2023)...............................................*passim*

*Hewitt v. Helix Energy Sols. Grp., Inc*.,
15 F.4th 289 (5th Cir. 2021), aff'd, 598 U.S. 39, 143 S. Ct. 677,
214 L. Ed. 2d 409 (2023)(Jones, J. dissenting)
...............................................................................38, 39, 42, 43

*Higgins v. Bayada Home Health Care Inc*.,
62 F.4th 755 (3d Cir. 2023) .........................................................30, 31

*Holt v. City of Battle Creek*,
925 F.3d 905 (6th Cir. 2019) .............................................................21

*In re Hubbard*,
23 B.R. 671 (Bankr. S.D. Ohio 1982) ...............................................33

*Hughes v. Gulf Interstate Field Servs., Inc.*,
878 F.3d 183 (6th Cir. 2017) .......................................................22, 25

*Jama v. Immigr. & Customs Enf't*,
543 U.S. 335 (2005) ............................................................41

*Kisor v. Wilkie*,
139 S. Ct. 2400 (2019) ........................................................26

*Knepper v. Rite Aid Corp.*,
675 F.3d 249 (3d Cir. 2012) ..........................................52, 53

*Lindberg v. UHS of Lakeside, LLC*,
No. 2010CV02014, 2010 WL 11678238 (W.D. Tenn. Aug. 19,
2010) ..................................................................................58

*Loper Bright Enters. v. Raimondo*,
—— U.S. ——, 144 S. Ct. 2244, —— L.Ed.2d —— (2024) ........................36, 37

*Lowery v. Greater Chattanooga Pub. Tele. Corp.*,
No. 1:07-CV-238, 2008 WL 269542 (E.D. Tenn. Jan. 25, 2008) .....................58

*McElroy v. Fresh Mark, Inc.*,
No. 5:22-CV-287, 2023 WL 4904065 (N.D. Ohio Aug. 1, 2023) ...................54

*Nevada v. United States Dep't of Lab.*,
275 F. Supp. 3d 795 (E.D. Tex. 2017) ...............................38, 40, 44, 47

*Parklane Hosiery Co. v. Shore*,
439 U.S. 322 (1979) ..............................................................17

*Prickett v. DeKalb Cnty.*,
349 F.3d 1294 (11th Cir. 2003) .........................................18, 50, 58

*Pub. Emps. Ret. Sys. of Ohio v. Betts*,
492 U.S. 158 (1989) ..........................................................37, 43

*Taniguchi v. Kan Pac. Saipan, Ltd.*,
566 U.S. 560, 132 S.Ct. 1997, 182 L.Ed.2d 903 (2012) ...................37

*Texas v. United States Dep't of Lab.*,
No. 4:24-CV-499-SDJ, 2024 WL 3240618 (E.D. Tex. June 28,
2024) ..................................................................................38

*Tooker v. BluJay Sols., Inc.*,
No. 1:22-CV-455, 2024 WL 1564735 (W.D. Mich. Apr. 11, 2024) .................54

*United States v. Winsper*,
   No. 3:08-CV-00631, 2013 WL 5673617 (W.D. Ky. Oct. 17, 2013)..................48

*Vanegas v. Signet Builders, Inc.*,
   No. 23-2964, 2024 WL 3841024 (7th Cir. Aug. 16, 2024)...............................52

*Walls v. Host Int'l, Inc.*,
   No. 1:15-CV-00564, 2015 WL 4644638 (N.D. Ohio Aug. 4, 2015) ...........58, 59

*West Virginia v. EPA*,
   142 S. Ct. 2587 (2022).................................................................................37, 44

*White v. Baptist Mem'l Health Care Corp.*,
   699 F.3d 869 (6th Cir. 2012) .......................................................................53, 54

*Wilson v. Schlumberger Tech. Corp.*,
   80 F.4th 1170 at 1176 .......................................................................................31

*Wirtz v. Mississippi Publishers Corp.*,
   364 F.2d 603 (5th Cir. 1966) ......................................................................43, 44

## Statutes

5 U.S.C. § 706 ......................................................................................................36

28 U.S.C. § 1291 ....................................................................................................1

28 U.S.C. § 1331 ....................................................................................................1

29 U.S.C. §203 .....................................................................................................39

29 U.S.C. § 213 .............................................................................................*passim*

29 U.S.C. § 216 .............................................................................................*passim*

Administrative Procedure Act...............................................................................36

Fair Labor Standards Act .............................................................................*passim*

Portal-to-Portal Act ..............................................................................................52

## Other Authorities

29 C.F.R. § 541.601 ...................................................................................20, 22, 46

29 C.F.R. § 541.602 ...............................................................................*passim*

29 C.F.R. § 541.604 ...............................................................................*passim*

29 C.F.R. § 778.105 .................................................................................28, 29

69 Fed. Reg. 22177, *et. seq.* .............................................................42, 44, 45

84 Fed. Reg. 51320, *et seq.* .............................................20, 27, 42, 46, 47

Fed. R. App. P. 20 .............................................................................57, 58, 59, 60

Fed. R. App. P. 23 .................................................................................50, 52, 54

Fed. R. App. P. 28 ..........................................................................................1

Rules of the Supreme Court of the United States, Rule 31.1 ..................................33

**STATEMENT REGARDING ORAL ARGUMENT**

Pursuant to FRAP 34(a)(1) and 6 Cir. R. 34, Defendant – Appellee/Cross-Appellant Hamilton-Ryker IT Solutions, LLC ("HR-IT") respectfully submits that oral argument would assist the Court in resolving Plaintiffs' appeal and HR-IT's cross appeal. This appeal presents important questions concerning (1) whether the "reasonable relationship" requirement under 29 C.F.R. § 541.604(b) applies to "hybrid" compensation arrangements involving a guaranteed weekly salary plus additional compensation paid on an hourly basis in light of the Supreme Court's recent decision in *Helix Energy Sol. Grp., Inc. v. Hewitt*, 598 U.S. 39 (2023); (2) the validity of the "salary basis" test under the Department of Labor's ("DOL") regulations defining and delimiting certain exemptions from overtime pay under the Fair Labor Standards Act ("FLSA"); and (3) whether this Court's recent decision in *Clark v. A&L Homecare & Tr. Ctr.*, 68 F.4th 1003 (6th Cir. 2023) changes the plaintiff party status of fourteen individuals who affirmatively opted in and agreed to be bound by the district court's decision.

## STATEMENT OF JURISDICTION

Pursuant to FRAP 28(a)(4), HR-IT states that the district court had subject-matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, because the claims asserted by Pickens and the Opt-in Plaintiffs were brought pursuant to the FLSA. *Complaint*, R.1, PageID #1; *Notices of Consent*, R. 7-1, 38-1, 39-1, 40-1, 41-1, 42-1, 46-1, Page ID # 23, 154-160, 163, 166, 169, 172, 175, 183. This Court has jurisdiction over HR-IT's cross appeal pursuant to 28 U.S.C. § 1291 because it is an appeal taken from a final order of a district court of the United States, namely the district court's March 28, 2024 Memorandum and Final Order finding that the fourteen individuals who filed Notices of Consent in this lawsuit (the "Opt-In Plaintiffs") were not plaintiffs to this lawsuit and only dismissing with prejudice Pickens's claims. *Memorandum*, R. 117, PageID #2855, n.2; *Order*, R. 118, PageID #2863. On April 24, 2024, Pickens, "together with all Opt-[I]n Plaintiffs" timely filed their Notice of Appeal. *Notice of Appeal*, R. 120, PageID #2865. HR-IT then timely filed its Notice of Cross Appeal on May 8, 2024, appealing the district court's summary judgment order "to the extent it is deemed to have determined that the Opt-In [Plaintiffs] are not plaintiffs in this lawsuit." *Notice of Cross Appeal*, R. 125, PageID #2912.

1

## STATEMENT OF ISSUES

1.      Whether under the Supreme Court's ruling in *Helix Energy Solutions Group, Inc. v. Hewitt*, 598 U.S. 39, 143 S. Ct. 677 (2023) (hereinafter "*Hewitt*"), the district court correctly determined that HR-IT's pay scheme met the salary basis requirement set forth in § 602(a) of the Department of Labor's ("DOL") regulations for the highly compensated employee ("HCE"), executive, administrative, and professional exemptions (collectively, the "White-Collar Exemptions") under the Fair Labor Standards Act ("FLSA").

2.      Whether the district court correctly determined that because the compensation HR-IT paid to Pickens and the Opt-In Plaintiffs satisfied §602(a)'s salary basis test, HR-IT did not have to also satisfy the "reasonable relationship" test under § 604(b).

3.      Whether Pickens is precluded from asserting offensive collateral estoppel precludes HR-IT from asserting its pay practices satisfy the salary basis test because he failed to raise this argument at any point with the district court.

4.      Did the DOL exceed its authority under the FLSA to "define[] and delimit[]" the White-Collar Exemptions by establishing the salary basis test because it excludes from exempt status employees who undisputedly perform executive, administrative, or professional duties?

2

5.    Did the district court err in finding that even though the Opt-In Plaintiffs filed notices of consent affirmatively opting into the lawsuit, they were not plaintiffs because it never made a final determination as to whether the Opt-In Plaintiffs were similarly situated to Picken.

## STATEMENT OF THE CASE

This case involves highly compensated employees' claims for unpaid overtime wages pursuant to the FLSA. Plaintiff Lynwood Pickens and the fourteen Opt-In Plaintiffs who filed consents to join this lawsuit and be bound by the district court's decision, were all highly skilled quality supervisors, managers, and inspectors who were paid pursuant to a hybrid compensation scheme wherein they were paid a guaranteed weekly salary plus additional compensation calculated on an hourly basis. It is undisputed that Pickens and the Opt-In Plaintiffs satisfied the job duties and minimum salary requirements to qualify for the FLSA's White-Collar and HCE exemptions. However, the issue before this Court is whether the district court correctly determined that HR-IT's hybrid compensation scheme satisfies the DOL's salary basis test requirement set forth in §602(a).

## I.    FACTUAL BACKGROUND

### A.    HR-IT's Operations and Payroll Practices.

HR-IT is an industry leading provider of professional staffing and recruiting services that facilitates the entire contingent workforce procurement and management process for its clients as well as compliance and payroll services. *Patel*

3

*Decl.*, R. 97-2, PageID #1645. In 2014, HR-IT contracted with Freeport LNG Expansion, L.P. ("Freeport") to provide certain staffing services related to the construction of Freeport's natural gas liquefaction and LNG loading facility near Freeport, Texas (the "Freeport Project"), including procuring highly skilled engineers, quality supervisors, managers, and inspectors. *Id.,* PageID #1646. All the HR-IT employees assigned to the Freeport Project were highly skilled experts retained to provide specialized technical services and expertise to the Freeport Project. *Id.* Given these employees' status as industry experts with years of background and experience, HR-IT compensated all its employees assigned to the Freeport Project well over $100,000 per year and classified nearly all these employees as exempt from the FLSA's overtime provisions pursuant to the HCE exemption. *Id.* HR-IT required all employees, including the exempt Freeport Project employees, to accurately report their hours worked on weekly basis using HR-IT's timekeeping software. *Id.*

Effective August 1, 2017, HR-IT implemented its Rate of Pay Policy, which provided all highly compensated, exempt employees a predetermined "Guaranteed Weekly Salary" plus additional compensation calculated on an hourly basis. *Id.,* PageID #1647; *Orientation Guide*, R. 97-4, PageID #1666. Each employee's Guaranteed Weekly Salary was equal to eight hours' pay at their hourly rate. *Orientation Guide*, R. 97-4, PageID #1666. Employees were paid their Guaranteed

4

Weekly Salary for every workweek they performed any work, regardless of the total number of hours worked, even if they worked less than eight hours. *Id.*; *Patel Decl.*, R. 97-2, PageID #1647. HR-IT also paid these employees additional hourly compensation for all hours worked in excess of eight hours in each workweek. *Orientation Guide*, R. 97-4, PageID #1666.

HR-IT's Rate of Pay Policy was implemented in reliance upon advice of counsel. *Patel Deposition*, R. 97-81, PageID ##1991-97. The Rate of Pay Policy was included in HR-IT's Orientation Guide, which was distributed to all Freeport Project employees on July 31, 2017, and in the offer letters of all employees hired thereafter. *Patel Decl.*, R. 97-2, PageID ##1646-47; *Pickens Offer Letter*, R. 97-19, PageID #1701. HR-IT undertook every effort to ensure its exempt employees received their full Guaranteed Weekly Salary for every workweek they performed any work. *Patel Decl.*, R. 97-2, PageID #1647. In the event of a payroll mistake resulting in an exempt employee not receiving his/her Guaranteed Weekly Salary, HR-IT would reimburse the employee for any improper deductions. *Id.*

B.  PICKENS WAS A HIGHLY COMPENSATED PIPING INSPECTOR WHO RECEIVED A GUARANTEED WEEKLY SALARY OF $800.

Plaintiff Lynwood Pickens ("Pickens") was employed with HR-IT as a Piping Inspector assigned to the Freeport Project from February 26, 2018 until March 31, 2019. *Id.*; *Pickens Offer Letter*, R. 97-19, PageID #1701. As a Piping Inspector, Pickens monitored inspections at the Freeport Project, including testing and

mechanical walk throughs, as well as all oversight of these inspections. *Pickens ROG. No. 9*, R. 97-63, PageID #1790; *Job Description*, R. 97-6, PageID #1671. As with all HR-IT employees assigned to the Freeport Project, Pickens' primary duties did not consist of performing manual or blue-collar labor. *Pickens Resp. to HR-IT's SOF*, R. 106, PageID ##2710-11. Throughout his employment, Pickens did not work a set schedule but, instead, his total hours varied each workweek from as little as 28 hours to as high as 83 hours each workweek. *Pickens Timesheets*, R. 100-8, PageID ##2190-2255.

HR-IT classified Pickens as an exempt employee. *Patel Decl.*, R. 97-2, PageID #1647. As set forth in his Offer Letter, HR-IT compensated Pickens a Guaranteed Weekly Salary of $800, plus additional compensation at a rate of $100/hr for whenever he worked more than eight hours. *Pickens Offer Letter*, R. 97-19, PageID #1701. Pickens was paid his Guaranteed Weekly Salary every workweek during which he performed any work for HR-IT. *Pickens Paystubs*, R. 100-7, PageID ##2123-88. In 2018, Pickens earned $207,876.39 in total compensation from HR-IT, and in 2019 Pickens earned $109,752.67, despite only working three months that year. *Pickens W-2s*, R. 97-22, PageID ##1710-11.

6

## II.    PROCEDURAL HISTORY

### A.    PICKENS FILED HIS COMPLAINT AND BRAD MERRITT FILED A NOTICE OF CONSENT BEFORE HR-IT IS SERVED WITH THE LAWSUIT.

Pickens filed this lawsuit on February 18, 2020, seeking alleged unpaid overtime under the FLSA "on behalf of himself and other similarly situated workers who were paid by [HR-IT's] 'straight time for overtime system.'" *Complaint*, R. 1, PageID #2. Three days later, before Pickens' Complaint was served on HR-IT,[1] Brad Merritt filed a Notice of Consent joining Pickens's lawsuit.[2] *Notice of Consent*, R. 7, PageID ##20-23. On March 23, 2020, HR-IT filed its Answer, denying that it paid Pickens the same hourly rate for all hours worked and, instead, contending that it paid Pickens and any potential collective action members a guaranteed weekly salary plus additional hourly compensation and properly classified him as exempt from the FLSA's overtime provisions. *Answer*, R. 19, PageID ##46-67.

### B.    THE COURT CONDITIONALLY CERTIFIED THE LAWSUIT AS A COLLECTIVE ACTION AND THIRTEEN ADDITIONAL INDIVIDUALS FILED NOTICES OF CONSENT TO JOIN PICKENS'S LAWSUIT.

On April 20, 2020, the parties agreed to conditionally certify this matter as a collective action under 29 U.S.C. § 216(b) for a class consisting of:

> All individuals employed by Hamilton-Ryker IT Solutions, LLC at any time from three years prior to the date the Court signs this Stipulation to the present who were classified as "exempt" and were not paid at the

---

[1] *Proof of Service*, R. 10, PageID #30.
[2] Merritt's Consent was dated February 11, 2020, one week *before* Pickens filed his Complaint. *Consent*, R. 7-1, PageID #23.

rate of one and one-half times their hourly rate for all hours worked in excess of forty in any given workweek.

*Joint Stipulation*, R. 27, PageID #107. The Parties' Joint Stipulation also expressly excluded all individuals who would be issued notice in *Gentry v. Hamilton-Ryker IT Solutions, LLC*, pending before the Southern District of Texas, from the putative class. *Id.*, PageID #108. On April 22, 2020, the Court signed the parties' Joint Stipulation, approving the parties' agreement that this lawsuit would be conditionally certified as a collective action under the FLSA. *Signed Stipulation*, R. 27, PageID ##112-14.

On April 28, 2020, the Court signed the parties' additional Joint Stipulation, approving the parties' agreed-upon Notice of Rights and Consent forms to be sent to the Potential Class Members. *Second Signed Stipulation*, R. 30, PageID ##125-27. The Court further ordered that potential class members had sixty days from the date of the notice "to file their Consent opting into this lawsuit as plaintiffs." *Id.*, PageID #127. In addition to Pickens and Merritt, thirteen individuals[3] filed Notices of Consent to join as plaintiffs, after receiving the court-approved Notice of Rights and Consent forms. *Notices of Consent*, R. 38, 39, 40, 41, 42, 43, 46, PageID ##152-60, 161-63, 164-66, 167-69, 170-72, 173-75, 181-83. The Opt-In Plaintiffs' consent

---

[3] Billy Cunningham, Waylon Easley, Simon Gibson, Timothy Jackson, Harshita Kodali, Shane Nyman, Daniel Stahl, Robert Moss, Tommy Swanks Jr., Michael Knight, Troy Wilson, Daniel Sanchez, and Nick Tabler.

forms each included one of the following express agreements to be bound by the
district court's judgment:

> 4.   I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

*Consents*, R. 7-1, 38-1, PageID ##23, 156.

> 2.   I understand that this lawsuit is brought under the Fair Labor Standards Act, and I consent to be bound by the Court's decision.

*Consents*, R. 38-1, 39, 40, 41, 42, 43, 43, 46, PageID ##154-55, 157-60, 163, 166,
169, 172, 175, 183. The Opt-In Plaintiffs also expressly consented to having Pickens
and his counsel represent them in the proceedings before the district court. *Consents*,
R. 7-1, 38-1, 39, 40, 41, 42, 43, 43, 46, PageID ##23, 154-60, 163, 166, 169, 172,
175, 183.

C.    THE PARTIES EXCHANGE DISCOVERY OVER PICKENS AND ALL OF THE
       OPT-IN PLAINTIFFS.

After the close of the notice period, the parties, including each of the Opt-In
Plaintiffs, engaged in discovery into their claims for unpaid overtime. Pickens and
the Opt-In Plaintiffs each responded to HR-IT's written discovery requests.[4] HR-IT
produced the offer letters, Orientation Guide acknowledgments, payroll records,
timesheets, and job descriptions for Pickens and the Opt-In Plaintiffs. *HR-IT's
Discovery Responses*, R. 100-6, PageID ##2109-21; *Afhami Declaration*, R. 100-3,

---

[4] *Responses to Discovery Requests*, R. 97-63, 97-64, 97-65, 97-66, 97-67, 97-68, 97-69, 97-70, 97-71, 97-72, 97-73, 97-74, 97-75, 97-76, 97-77, PageID ##1781-1974.

PageID #2072; *Summary of Plaintiffs' Records*, R. 100-4, PageID ##2076-2105.

Plaintiffs' counsel also deposed HR-IT's corporate representatives regarding the pay

practice applicable to Pickens and the Opt-In Plaintiffs. *Patel Deposition*, R. 100-2,

PageID ##2043-70. The parties' discovery confirmed that like Pickens, the Opt-In

Plaintiffs:

- provided technical expertise and inspection oversight at the Freeport Project, as opposed to manual or blue-collar labor;[5]

- were classified as exempt and compensated Guaranteed Weekly Salaries ranging from $800 to $1,428 per week for every workweek during which they performed any work;[6]

- received additional hourly compensation ranging from $100 to $178.50 per hour for all hours worked in excess of 8 hours in a workweek;[7]

- earned greater than $100,000 each year while employed with HR-IT;[8] and

- did not have a set schedule and, instead, their total hours worked varied each workweek.[9]

Opt-In Plaintiff Harshita Kodali's timesheets also revealed she never worked more

than 40 hours in any workweek. *Kodali Admission No. 2*, R. 97-69, PageID #1875.

---

[5] *Pickens Resp. to HR-IT's SOF*, R. 106, PageID ##2713, 2715, 2719, 2721, 2722, 2725, 2728, 2729, 2732, 2733, 2737, 2738, 2740.

[6] *Patel Decl.*, R. 97-2, PageID ##1647-52; *Opt-In Offer Letters*, R. 97-23, 97-30, 97-32, 97-39, 97-44, 97-49, 97-54, PageID ##1712, 1725, 1727, 1739, 1747,1756, 1765; *Patel Supp. Decl.*, R. 97-78, PageID #1976.

[7] *Patel Decl.*, RE 97-2, PageID ##1647-1652; *Opt-In Offer Letters*, R. 97-23, 97-30, 97-32, 97-39, 97-44, 97-49, 97-54, PageID ##1712, 1725, 1727, 1739, 1747,1756, 1765; *Patel Supp. Decl.*, R. 97-78, PageID #1976.

[8] *Pickens Resp. to HR-IT's SOF*, R. 106, PageID ##2714-15, 2717, 2719, 2721, 2723, 2726, 2728, 2730-31, 2732-33, 2735, 2737, 2739, 2741.

[9] *Summary of Plaintiffs' Records*, R. 100-4, PageID ##2076-2105; *Merritt Timesheets*, R. 100-11, PageID ##2400-2545.

D.    THE PARTIES FILE CROSS MOTIONS FOR SUMMARY JUDGMENT.

On March 30, 2021, after the close of discovery, HR-IT filed its Motion for Summary Judgment, seeking the dismissal of Pickens and the Opt-In Plaintiffs' claims because the undisputed evidence demonstrated that they were properly classified as exempt pursuant to the HCE exemption because they were paid on a salary basis. *See HR-IT 1st MSJ*, R. 53-1, PageID ##206-31. While HR-IT's motion was pending, the district court ordered the case stayed pending the Supreme Court's decision in *Helix Energy Sol. Grp., Inc. v. Hewitt,* 598 U.S. 39 (2023). *Order*, R. 89, PageID #1551. After the Supreme Court issued its ruling in *Hewitt*, the district court lifted the stay, denied HR-IT's pending motion without prejudice, and ordered HR-IT to refile its motion. *Order*, R. 92, PageID #1559. The district court also granted Pickens leave to file a motion for summary judgment in accordance with the same briefing schedule ordered for HR-IT's renewed motion. *Order*, R. 94, PageID #1565.

On April 28, 2023, HR-IT and Pickens filed cross Motions for Summary Judgment seeking summary judgment with respect to Pickens' and the Opt-In Plaintiffs' claims for unpaid overtime. *HR-IT's Renewed MSJ*, R. 95-97, PageID ##1566-2007; *Pickens's MSJ*, R. 98-100, PageID ##2008-2608. The parties' summary judgment briefing confirmed that, while the parties disputed the characterization and legal import of the pay practice at issue, there was no dispute that the relevant pay practice was the same as to Pickens and the Opt-In Plaintiffs.

11

*HR-IT Renewed MSJ*, R. 95-97, PageID ##1566-2007; *Pickens's MSJ*, R. 98-100, PageID ##2008-2608. The parties' briefing also confirmed the only element of HR-IT's exemption defense at issue for Pickens and the Opt-In Plaintiffs was whether they were paid on a salary basis. *Pickens's MSJ Response*, R. 105, PageID ##2677-2703; *HR-IT's Reply*, R. 111, PageID ##2756-64. More specifically, the parties' motions each focused on whether HR-IT's pay practice satisfied §602(a)'s salary basis test or was subject to §604(b)'s reasonable relationship test. *See HR-IT Renewed MSJ*, R. 95-97, PageID ##1566-2007; *Pickens's MSJ*, R. 98-100, PageID ##2008-2608. HR-IT further argued that even if the district court determined §604(b)'s reasonable relationship test applied, such a requirement must be invalidated because the DOL's authority did not extend to salary basis requirements that result in the exclusion from exempt status of employees—like Pickens and the Opt-In Plaintiffs—who undisputedly perform exempt duties. *HR-IT Renewed MSJ MIS*, R. 96, PageID ##1590-95.

Additionally, HR-IT moved for summary judgment with respect to willfulness, arguing that Pickens's and the Opt-In Plaintiffs' claims were subject to the FLSA's two-year statute of limitations.[10] *HR-IT Renewed MSJ*, R. 96, PageID #1597. HR-IT further moved for summary judgment with respect to its good faith

---

[10] The application of the FLSA's two-year statute of limitations would render Opt-In Plaintiff Robert Moss's claim for unpaid overtime untimely. *HR-IT MSJ*, R. 96, PageID #1597.

defense, arguing that even if Pickens and the Opt-In Plaintiffs were found to be non-exempt, they were not entitled to liquidated damages. *Id.* at PageID ##1598-99. Finally, HR-IT moved for summary judgment with respect to Opt-In Plaintiff Harshita Kodali because it was undisputed that she never worked more than 40 hours in any given workweek. *Id.* at PageID #1596.

E.   THE DISTRICT COURT GRANTED HR-IT'S SUMMARY JUDGMENT WITH RESPECT TO PICKENS, BUT NOT THE OPT-IN PLAINTIFFS.

On March 28, 2024, the district court issued its Memorandum, Order, and Entry of Judgment (collectively, the "Judgment") granting HR-IT's MSJ, denying Pickens's MSJ, and dismissing Pickens's claims with prejudice. *Memorandum*, R. 117, PageID ##2853-62; *Order*, R. 118, PageID #2863; *Entry of Judgment*, R. 119, PageID #2864. The district court found that because Pickens was paid his Guaranteed Weekly Salary without regard to the number of hours or days worked each week, "[t]his plainly meets the salary basis test of Section 602(a). And *Hewitt* states that when the requirements of Section 602(a) are met, as they are here, the pay scheme 'does not also have to meet §604(b) to make a worker exempt.'" *Memorandum*, R. 117, PageID #2860. Because it held HR-IT's pay practice satisfied §602(a)'s salary basis test, the district court dismissed with prejudice Pickens's claim that HR-IT "improperly classified Pickens and other similarly situated employees as exempt from the overtime pay requirements of the Fair Labor Standards Act." *Id.* at PageID ##2853, 2862.

13

With respect to the Opt-In Plaintiffs, the district court agreed that, like Pickens, the Opt-Ins Plaintiffs "were similarly compensated with slight variations in the weekly salary and hourly rate." *Id.* at PageID #2855. However, the district court in a footnote noted this Court's recent decision in *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003, 1009 (6th Cir. 2023), that "other employees" become parties to an FLSA lawsuit "only after they opt in and the district court determines – not conditionally, but conclusively – that each of them is in fact 'similarly situated' to the original plaintiffs." *Id.* at PageID #2855, n.2. Because it had not "made any final determination as to the [O]pt-[I]n [P]laintiffs," the district court determined "the only plaintiff is Lynwood Pickens." *Id.* Accordingly, the district court's Order only expressly dismissed Pickens' claims with prejudice and was silent with respect to the Opt-In Plaintiffs. *Order*, R. 118, PageID #2863.

F.    THE OPT-IN PLAINTIFFS SIMULTANEOUSLY FILE A NOTICE OF APPEAL AND A NEW COMPLAINT REASSERTING THEIR CLAIMS IN THE SOUTHERN DISTRICT OF TEXAS.

On April 24, 2024, Pickens, "together with all Opt-[I]n Plaintiffs" filed their Notice of Appeal appealing the district court's "entry of final judgment…order dismissing Plaintiffs' claims, …and from all previous rulings, opinions, and orders adverse to them entered in this case." *Notice of Appeal*, R. 120, PageID #2865. Separately, the Opt-In Plaintiffs filed a complaint in the U.S. District Court for the Southern District of Texas reasserting their exact same claims for unpaid overtime

14

that were before the district court. *Merritt Complaint*, R. 122-1, PageID ##2888-2900. Although the Opt-In Plaintiffs admit in the *Merritt* Complaint that none of them worked for HR-IT later than July 2020—well outside the maximum 3-year limitations period—they claimed that their Notices of Consent filed in this lawsuit tolled the statute of limitations. *Id.* at PageID ##2889-92. Yet, the Opt-In Plaintiffs also asserted they were not bound by district court's decision here because they were never party plaintiffs. *Resp. to Motion for Clarification*, R. 126, PageID #2918.

As a result of the Opt-In Plaintiff's attempts to simultaneously pursue their claims both before this Court and the district court in Texas, HR-IT filed a Motion for Clarification or Amendment, asking that the district court clarify or amend its Order and order that the Opt-In Plaintiffs (1) are bound by its Judgment dismiss their claims against HR-IT with prejudice; or (2) were never parties to this lawsuit and, therefore, the limitations periods for their FLSA claims against HR-IT were never tolled. *Motion for Clarification*, R. 121, 122, PageID ##2867-2900. HR-IT then timely filed its Notice of Cross Appeal, appealing the district court's Judgment "to the extent it is deemed to have determined that the Opt-In [Plaintiffs] are not plaintiffs in this lawsuit." *Notice of Cross Appeal*, R. 125, PageID #2912. Five days later, the district court denied HR-IT's Motion for Clarification, finding that because both parties filed notices of appeal, it was without jurisdiction to consider the motion. *Order*, R. 128, PageID #2931.

15

## SUMMARY OF THE ARGUMENT

There is no dispute that Pickens and the Opt-In Plaintiffs each met the DOL's salary level and duties requirements for the FLSA's Whie-Collar and HCE exemptions from overtime pay under the FLSA. The only dispute with respect to the underlying merits of Pickens and the Opt-In Plaintiffs claims was whether they were compensated on a "salary basis." The Supreme Court's recent decision in *Hewitt* confirmed that there are two "non-overlapping paths to satisfy the salary-basis requirement" -- §602(a) salary basis or the reasonable relationship test set forth in §604(b). *Hewitt*, 598 U.S. at 46. Here, the district court correctly concluded that because Pickens and the Opt-In Plaintiffs were guaranteed—and actually received—guaranteed a weekly salaries ranging from $800 to $1,428 in every workweek they performed *any* work, regardless of the number of days or hours they worked, HR-IT "satisfie[d] the definition of 'salary basis in Section 602(a)." *Memorandum*, R. 117, PageID #2858. The district court's decision complies with *Hewitt*, the DOL Regulations, and post-*Hewitt* decisions.

Pickens's argues, however, that since they received additional pay on top of their guaranteed weekly salaries, the district court erred in finding that HR-IT had to meet the DOL's "reasonable relationship" test in 29 C.F.R. § 541.604(b). The Supreme Court's recent Hewitt decision unambiguously says otherwise: "a pay scheme meeting § 602(a) and the HCE rule's other requirements does not also have

to meet § 604(b) to make a worker exempt." *Hewitt,* 598 U.S. at 50, n.3. The Supreme Court in *Hewitt* also unambiguously confirmed that § 602(a) "makes clear that a worker can be paid on a salary basis even if he additionally gets non-salary compensation…" *Hewitt*, 598 U.S. at 54, n.5. Thus, the district court should affirm the district court's decision that HR-IT compensated Pickens and the Opt-In Plaintiffs on a salary basis.

If the Court finds that Plaintiffs' pay did not meet the DOL's salary basis test, then such test should be invalidated because it exceeds the DOL's authority under the FLSA to "define[] and delimit[]" when workers are employed in a "bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). The text of the FLSA focuses on job duties and contains no salary requirement for the White-Collar Exemptions. *Id.* Thus, the DOL's authority does not extend to salary basis requirements that result in the exclusion from exempt status of employees—like Pickens and the Opt-In Plaintiffs—who undisputedly perform executive, administrative, or professional duties.

In his Opening Brief, Pickens asserts for the first time that doctrine of offensive collateral estoppel bars HR-IT from asserting its pay practice satisfies the salary basis test. (Opening Br. at 10-16). Courts are reluctant to allow the use of offensive collateral estoppel because it does not serve the judicial efficiency purposes of collateral estoppel and encourages multiplicity of suits. *Parklane*

*Hosiery Co. v. Shore*, 439 U.S. 322 (1979) ("Offensive use of collateral estoppel" provides the opposite incentive of collateral estoppel by incentivizing multiplicity of suits). This concern is further compounded by the fact that Pickens raised the issue of collateral estoppel for the <u>first time</u> on appeal. Because Pickens waived the issue of collateral estoppel by raising it for the first time on appeal and failed to establish that the necessary elements to assert collateral estoppel, this Court should refuse to apply the doctrine here to prelude HR-IT from continuing to contend that its pay practice satisfies the FLSA's salary basis test.

Finally, it is well established that once employees affirmatively opt into an FLSA collective action, they "become 'party plaintiff[s]' … enjoying the same status in relation to the claims of the lawsuit as do the named plaintiffs" and "[a] final judgment in the FLSA collective action context … binds … those parties who have opted in." *Canaday v. Anthem Companies, Inc.*, 9 F.4th 392, 402–03 (6th Cir. 2021) (quoting 29 U.S.C. § 216(b); *Prickett v. DeKalb Cnty.*, 349 F.3d 1294, 1297 (11th Cir. 2003)); *see also Genesis HealthCare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013) (explaining that in FLSA cases, employees "become parties to a collective action … by filing written consent with the court"). Here, it is undisputed that each of the Opt-In Plaintiffs filed consent forms affirmatively opting into Pickens's lawsuit and expressly agreeing to be bound by the district court's judgment. *Notices of Consent*, R. 38, 39, 40, 41, 42, 43, 46, PageID ##152-60, 161-63, 164-66, 167-69, 170-72,

173-75, 181-83. Over the next several years, both parties proceeded with this litigation with the undisputed assumption that the Opt-In Plaintiffs were party plaintiffs similarly situated to Pickens – as evidenced by the parties' conducting discovery into the Opt-In Plaintiffs' claims,[11] HR-IT's decision not to seek decertification of Pickens' collective action class, and both parties' filing of Motions for Summary Judgment as to the Opt-In Plaintiffs' claims. *HR-IT's Renewed MSJ*, R. 95-97, PageID ##1566-2007; *Pickens's MSJ*, R. 98-100, PageID ##2008-2608. Indeed, the district court expressly acknowledged that the Opt-In Plaintiffs were similarly situated to Pickens. *Memorandum*, R. 117, PageID #2855, n. 2. Nevertheless, the district court, relying on this Court's recent decision in *Clark*, found that because it never made a final determination as to whether the Opt-In Plaintiffs were similarly situated to Pickens, Pickens was the only plaintiff in this lawsuit. *Id.* The district court's determination that the Opt-In Plaintiffs were not plaintiffs to this lawsuit, despite each affirmatively filing consents, is a perversion of the *Clark* decision and a clear error that requires reversal as a matter of law.

---

[11] *See Responses to Discovery Requests,* R. 97-63, 97-64, 97-65, 97-66, 97-67, 97-68, 97-69, 97-70, 97-71, 97-72, 97-73, 97-74, 97-75, 97-76, 97-77, PageID ##1781-1974; *Afhami Declaration,* R. 100-3, PageID #2072; *Summary of Plaintiffs' Records,* R. 100-4, PageID ##2076-2105.

# ARGUMENT

## I.    THE DISTRICT COURT CORRECTLY DETERMINED THAT PICKENS WAS A HIGHLY COMPENSATED EMPLOYEE PAID ON A SALARY BASIS.

The FLSA exempts from its overtime pay requirements "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). The DOL has also created a separate exemption for HCEs who earn at least $107,432 in total annual compensation, because their high level of pay "eliminate[s] the need for a detailed analysis of the employee's job duties." *Hewitt*, 598 U.S. at 45; *see also* 29 C.F.R. § 541.601. At all relevant times with respect to this litigation, to qualify for the HCE exemption, the employee must have:

(1)    received "total annual compensation of at least $107,432,"[12] which "must include at least $684[13] per week paid on a salary or fee basis;"

(2)    "customarily and regularly perform[ed] any one or more of the exempt duties or responsibilities of an executive, administrative or professional employee;" and

(3)    performed a "primary duty" that consisted of "performing office or non-manual work."

29 C.F.R. § 541.601(a), (b), (d). Although the employer has the burden of establishing that an exemption applies by a preponderance of the evidence, courts

---

[12] The annual compensation threshold for HCEs was $100,000 prior to 2020. DOL's 2019 Rule, 84 Fed. Reg. at 51231. Effective July 1, 2024, this amount was increased to $132,964. DOL's 2024 Rule, 84 Fed. Reg. at 32851.

[13] The minimum "salary level" was $455 per week prior to 2020. DOL's 2019 Rule, 84 Fed. Reg. at 51231. This minimum salary level was increased to $844 per week, effective July 1, 2024. DOL's 2024 Rule, 84 Fed. Reg. at 32851.

20

are required to interpret the FLSA's exemptions, including the HCE exemption, by "apply[ing] a 'fair reading'" instead of a "narrow" one. *Holt v. City of Battle Creek*, 925 F.3d 905, 909 (6th Cir. 2019) (quoting *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018)).

Pickens and the Opt-In Plaintiffs undisputedly met the salary level and duties requirements for the HCE exemption. *See generally Pickens Resp. to HR-IT's SOF*, R. 106, PageID ##2704-2741; *Pickens's MSJ Response*, R. 105, PageID ##2677-2603; *HR-IT's MSJ Reply*, R. 111, PageID # 2757. Thus, the only issue in dispute before the district court was whether HR-IT compensated Pickens and the Opt-In Plaintiffs on a salary basis. *Memorandum*, R.117, PageID #2858.

A.    THE DISTRICT COURT CORRECTLY FOUND PICKENS AND THE OPT-IN PLAINTIFFS WERE PAID A GUARANTEED WEEKLY SALARY THAT SATISFIED § 602(A)'S SALARY BASIS TEST.

As the Supreme Court recently explained in *Hewitt*, there are two regulations that "give content to the salary-basis test" – §§ 541.602(a) and 541.604(b). *Hewitt*, 598 U.S. at 46. The "main salary-basis provision" is in § 602(a) and provides:

> An employee will be considered to be paid on a "salary basis" within the meaning of this part if the employee **regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting <u>all or part of</u> the employee's compensation**, which amount is not subject to reduction because of variations in the quality or quantity of the work performed.

29 C.F.R. § 541.602(a) (emphasis added).

Here, the undisputed evidence established that Pickens and the Opt-In

21

Plaintiffs were guaranteed—and actually received—guaranteed a weekly salaries ranging from $800 to $1,428. *Patel Decl.*, R. 97-2, PageID ##1647-52; *Pickens Paystubs*, R. 100-7, PageID ##2123-88. The undisputed evidence further established that Pickens and the Opt-In Plaintiffs received these guaranteed weekly salaries in every workweek they performed *any* work, regardless of the number of days or hours they worked. *Patel Decl.*, R. 97-2, PageID ##1647-52; *Pickens Paystubs*, R. 100-7, PageID ##2123-88. Accordingly, the district court correctly determined that HR-IT pay practice "satisfie[d] the definition of 'salary basis in Section 602(a)." *Memorandum*, R. 117, PageID #2858.

Pickens argues that, because HR-IT paid him additional hourly pay if he worked over eight hours in a week, HR-IT also had to meet the "reasonable relationship" test under 29 C.F.R. § 541.604(b). *Hewitt* unambiguously states otherwise: "a pay scheme meeting § 602(a) and the HCE rule's other requirements **does not also have to meet § 604(b)** to make a worker exempt." *Hewitt,* 598 U.S. at 50, n.3 The Sixth Circuit has similarly found that "the situations in which [courts] ignore § 541.604(b) are situations in which the textual requirements of 29 C.F.R. §§ 541.601, 541.602(a) are already clearly met," as is the case here. *Hughes v. Gulf Interstate Field Servs., Inc.*, 878 F.3d 183, 189–90 (6th Cir. 2017) (courts "ignore" § 604(b) when employees are "undisputedly guaranteed weekly base salaries above the qualifying level"). Here, since Plaintiffs' weekly guaranteed salaries met §

22

602(a), the salary basis inquiry ended there and *Hewitt* mandates that § 604(b) does not apply.

B.   *HEWITT* CONFIRMS §602(A) IS SATISFIED EVEN WHEN AN EMPLOYEE RECEIVES HOURLY COMPENSATION IN ADDITION TO A GUARANTEED SALARY.

Pickens' primary argument that the district court erred in finding §602(a)'s salary basis test was satisfied is that because he and the Opt-In Plaintiffs were compensated additional hourly pay on top of their weekly guaranteed salaries, HR-IT was required to satisfy §604(b)'s reasonable relationship test. (Opening Br. at 18-26). But, *Hewitt* and §602(a) expressly foreclose this argument: "§ 602(a)'s 'all or part' reference … makes clear that a worker can be paid on a salary basis **even if he additionally gets non-salary compensation**…" *Hewitt*, 598 U.S. at 54, n.5 (emphasis added). (citing 29 C.F.R. § 541.602(a) (salary basis means "employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation.") (emphasis added)).

Pickens ignores *Hewitt's* unambiguous affirmation that hybrid compensation schemes, like HR-IT's, may satisfy §602(a) by cherry-picking a phrase used just once in Hewitt—"weekly-rate-only"—completely out of context to argue that §602(a)'s salary basis test "is 'limited to weekly-rate employees'(i.e., those paid a "weekly-rate-only"). (Opening Br. at 23). But, when placed back into its context, it

is clear the Supreme Court's use of the phrase "weekly-rate-only" does not refer to whether an employee receives extra compensation in addition to their base salary; rather, it refers to what constitutes such a base salary in the first place:

> First, even without support from § 604(b), **the plain text of § 602(a) excludes daily-rate workers like Hewitt**…. And Helix of course acknowledges that it must comply with § 602(a) to satisfy the HCE rule's salary-basis requirement. Second, even on Helix's view of the HCE rule, § 604(b) in fact confirms the **plain-text, weekly-rate-only reading of § 602(a)**.

*Hewitt*, 598 U.S. at 57 (internal citations omitted, emphasis added). Instead, the Supreme Court emphasized that the purpose of the "salary basis" test is to "ensur[e] that the employee will get **at least part** of his compensation through a preset weekly (or less frequent) salary, not subject to reduction because of exactly how many days he worked." *Id*. at 46 (emphasis added). Not only does Pickens' position misread *Hewitt* completely out of context, it ignores the plain language of §602(a) that confirms only "part"—not all—of an employee's compensation need be paid on a guaranteed weekly basis to satisfy its salary basis test.

Likewise, Plaintiffs' argument that he did not receive a true weekly salary because his total take home compensation each week could only be ascertained by determining the number of hours worked that week also does not comport with *Hewitt* and §602(a)'s unequivocal confirmation that a weekly salary need only constitute "part of" the employee's total weekly pay. 29 C.F.R. § 541.602(a); *Hewitt*, 598 U.S. at 46. The relevant question in determining whether an employee received

24

part or all of their compensation on a salary basis is whether the employee's "weekly salary was a matter of right or a matter of grace." *Hughes v. Gulf Interstate Field Servs., Inc*., 878 F.3d 183, 191 (6th Cir. 2017). Pickens's guaranteed weekly salary did not fluctuate each work. That his total compensation varied each week due to the additional compensation he received on top of his weekly guarantee is irrelevant.

Finally, the fact that HR-IT initially determined the amount of Plaintiffs' guaranteed weekly salary amount by multiplying their additional hourly rate times eight does not make such payment any less of a weekly guaranteed salary. *See, e.g., Douglas v. Argo-Tech Corp.*, 113 F.3d 67, 71 (6th Cir. 1997) (explaining that "hourly employees may be salaried if they are guaranteed a predetermined number of paid hours"); *Blake v. Broadway Servs., Inc.*, No. CV SAG-18-0086, 2020 WL 1675954, at *7-8 (D. Md. Apr. 6, 2020) (explaining that "[t]he fact that an hourly rate is calculated and paid for each Plaintiff does not equate to work being performed in a non-exempt status" where plaintiffs always "received, at minimum, their weekly base salary"). Pickens and the Opt-In Plaintiffs guaranteed weekly salaries were paid to them each week they performed any work for HR-IT, whether they worked 1 minute or 100 hours. Thus, this predetermined, guaranteed amount paid to Plaintiffs on a weekly basis, constituting "part of" their compensation, fits precisely within the plain language of §602(a).

25

C.    THE DOL REGULATIONS CONFIRM THE REASONABLE RELATIONSHIP
        TEST DOES NOT APPLY HERE BECAUSE HR-IT'S PAYMENT SCHEME
        SATISFIES § 602(A).

Confirming that an employee's weekly guaranteed salary need not constitute
all of the employee's total compensation, the DOL regulations provide that "[a]n
employer may provide an exempt employee with additional compensation without
losing the exemption or violating the salary basis requirement, if the employment
arrangement also includes a guarantee of at least the minimum weekly-required
amount paid on a salary basis." 29 C.F.R. § 541.604(a). "Such additional
compensation may be paid on any basis," including a "straight-time hourly amount."
*Id.* As such, the plain text of § 602(a) and § 604(a) confirm that Pickens' additional
hourly pay did not "violat[e] the salary basis requirement." *See Kisor v. Wilkie*, 139
S. Ct. 2400, 2415 (2019) (when a regulation is unambiguous, "[t]he regulation then
just means what it means—and the court must give it effect, as the court would any
law").

Relying on the Fifth Circuit's decision in *Gentry*, Pickens incorrectly claims
that §604(a) permits additional pay "only for hours 'beyond the normal workweek.'"
(Opening Br. at 21). But, this position is not supported by the actual text of §604(a)
because it ignores the first sentence of §604(a), which starts by stating: "An
employer may provide an exempt employee with additional compensation without
losing the exemption or violating the salary basis requirement, if the employment

arrangement also includes a guarantee of at least the minimum weekly-required amount paid on a salary basis." 29 C.F.R. §541.604(a). Pickens' reading of § 604(a) also ignores the fact that §604(a)'s reference to additional hourly compensation beyond a normal workweek was used as an example that in no way limited the first sentence of §604(a):

> Thus, **for example**, an exempt employee guaranteed at least $684 each week paid on a salary basis may also receive additional compensation of a one percent commission on sales….**Similarly**, the exemption is not lost if an exempt employee who is guaranteed at least $684 each week paid on a salary basis also receives additional compensation based on hours worked for work beyond the normal workweek.

29 C.F.R. § 541.604(a) (emphasis added). Pickens (and *Gentry's*) interpretation completely reads out the use of "for example," and "similarly" from §604(a), which expressly do not limit when additional compensation is permissible. *Christopher v. SmithKline Beecham Corp.,* 567 U.S. 142, 162 (2012) (interpreting an FLSA regulation and finding that "the examples enumerated in the text are illustrative, not exhaustive").

Indeed, the DOL itself has emphasized the breadth of § 604(a): "nothing adopted in this final rule alters the Department's longstanding position that employers may pay their exempt EAP employees **additional compensation of any form** beyond the minimum amount needed to satisfy the salary basis and salary level tests. *See* § 541.604(a)." DOL's 2019 Rule, 84 Fed. Reg. at 51249 (emphasis added). Similarly, the DOL's Wage and Hour Division ("WHD") described the examples in

27

§ 604(a) as permissive, not proscriptive, stating that an employer "may provide an exempt employee with additional compensation," which "<u>may</u> be paid for 'hours worked for work beyond the normal work week.'" WHD Opinion Letter FLSA2020-2, 2020 WL 122924 at *3 (Jan. 7, 2020) (emphasis added). As such, the District Court's narrow reading of § 604(a) as limited to additional compensation paid "for work beyond the normal workweek" is unsupported.

Even if this Court were to agree with *Pickens*, § 604(a) only applied to pay for work beyond the "normal workweek" (which is not the case), there is nothing in § 604(a) (or the DOL's other regulations) the DOL defines "workweek" under the FLSA as "a fixed and regularly recurring period of 168 hours - seven consecutive 24-hour periods." 29 C.F.R. § 778.105. In other words, "workweek" simply refers to the common meaning of the term "week": *i.e.*, "[a]ny consecutive seven-day period." *Week,* BLACK'S LAW DICTIONARY (11th ed. 2019). Therefore, "normal workweek" is just another way to refer to the "employment arrangement" discussed in the first sentence of § 541.604(a): *i.e.*, the time period for which the parties intended the employee's weekly guaranteed salary to cover. Pickens' interpretation would also be impractical in situations such as his where his hours varied greatly from week to week. *Pickens Timesheets*, R. 100-8, PageID ##2190-2255.

Moreover, as *Hewitt* confirmed, the plain text of § 541.604(b) confirms it does not apply here, where the employee's base salary is guaranteed and paid weekly,

rather than daily or hourly: "The reasonable relationship requirement **applies only if** the employee's pay is computed on an hourly, daily or shift basis." 29 C.F.R. § 541.604(b) (emphasis added). Also, § 604(b) refers to an employee's "normal scheduled workweek." *Id.* "Normal" means "[a]ccording to a regular pattern."[14] "Schedule[d]" means "to appoint, assign, or designate for a fixed time."[15] And "workweek" means "a fixed and regularly recurring period of 168 hours—seven consecutive 24-hour periods." 29 C.F.R. § 778.105. Thus, § 604(b) applies to employees who work a fixed, regular amount each week and whose total pay is computed on an hourly, daily, or shift basis, such that their "usual" earnings can be determined and their salary be set to "roughly equivalent" of the same. It does <u>not</u> apply where, as here, Pickens hours fluctuated from 28 to 83 hours each workweek. *Pickens Timesheets*, R. 100-8, PageID ##2190-2255. Neither Pickens nor the DOL provide any explanation for how HR-IT could have ensured Pickens' and the Opt-In Plaintiffs' weekly salaries were "roughly equivalent to the employee's usual earnings" when their hours fluctuated so significantly that they had no "normal scheduled workweek." This further demonstrates the absurdity (and indeed the impracticability) of applying §604(b) here.

---

[14] *Normal*, Black's Law Dictionary (11th ed. 2019).
[15] *Schedule*, Merriam-Webster, *available at* https://www.merriam-webster.com/dictionary/schedule.

29

D. *THE DISTRICT COURT'S DECISION CONFORMS WITH POST-HEWITT COURTS THAT HAVE APPLIED §602(A) TO HYBRID COMPENSATION SCHEMES LIKE HR-IT.*

Since *Hewitt*, multiple other Circuits have rejected Pickens' exact argument that §602(a)'s salary basis test cannot be satisfied where an employee received compensation in addition to a guaranteed salary. In *Hebert v. FMC Technologies, Inc.*, 2023 WL 4105427 (5th Cir. June 21, 2023), the plaintiffs were paid a biweekly salary that did not change based on the days or hours worked plus an additional "'field service premium' …for days spent working at an offshore site." *Id*. at **1, n.5. The Fifth Circuit found that because plaintiff "received a bi-weekly salary without regard to the number of hours or days he worked," he "plainly satisfie[d] the definition of 'salary basis' in § 541.602(a)." *Id*. at *2. The Fifth Circuit also flatly rejected plaintiff's claim that because he as paid an additional day-rate bonus, he was not paid in accordance with §602(a)'s salary basis test: "The regulations foreclose that assertion. Hebert does not lose his status as an employee paid on a salary basis just because he is also paid a bonus on top of the salary that the record has established was guaranteed to him." *Id.* (citing 29 C.F.R. 541.604(a)).

In *Higgins v. Bayada Home Health Care Inc*., 62 F.4th 755 (3d Cir. 2023), the Third Circuit held that the plaintiff—who received a fixed salary plus additional compensation in the form of a bonus for exceeding productivity minimums—was exempt under the FLSA and that the additional compensation did not convert the

30

salaried plaintiff to non-exempt status. In reaching this holding, the court emphasized that "[t]he regulation requires only that the employee receive a predetermined amount of money each pay period that is part of the employee's compensation." *Id*. at 761.

And, in *Wilson v. Schlumberger Tech. Corp*., the Tenth Circuit analyzed whether § 604(b) applies when an employee receives additional compensation calculated on an hourly, daily, or shift basis, or if it only applies when his base compensation is on an hourly, daily, or shift basis. 80 F.4th 1170 at 1176. Ultimately, the court found:

> Based on the text, explanatory illustrations in the regulation, and persuasive caselaw, we conclude § 541.604(a) covers employees who received a fixed base salary above the FLSA minimum plus additional compensation that is paid on any basis, including time. Subsection (b) applies only to employees whose base compensation is computed on an hourly, daily, or shift basis.

*Id.* The Tenth Circuit further explained that § 604(b) does not involve employees paid additional compensation, but "describes an employee whose base pay is computed on a per-shift basis." *Id.* Thus, the Court determined that the reasonable relationship test was inapplicable. *Id.* Accordingly, the district court's finding that §602(a)'s salary basis test was applicable to HR-IT's hybrid compensation structure is consistent with nearly all other Circuit Court decisions on this issue.

31

## II.  HR-IT SHOULD NOT BE COLLATERALLY ESTOPPED FROM CONTINUING TO DEFEND ITS PAY PRACTICE.

Pickens' failure to raise collateral estoppel at any point with the district court below is fatal to his request to apply it now on appeal. This Court "does not normally address issues raised for the first time on appeal." *Elkins v. Richardson-Merrell, Inc.*, 8 F.3d 1068, 1072 (6th Cir. 1993) (declining to address issues raised for the first time on appeal). In fact, consideration of an argument for the first time on appeal generally is only permitted in "exceptional cases or particular circumstances or when the rule would produce a plain miscarriage of justice." *Id.* (internal quotation mark and citation omitted). Pickens provided no explanation as to how this case meets any exceptional circumstances for the Court to consider this argument raised for the first time on appeal—because there are none.

Pickens had countless opportunities to assert that *Gentry* collaterally estopped HR-IT from continuing to assert its pay practice satisfied the salary basis test but did not do so. By the time the parties each filed their Motions for Summary Judgment on April 28, 2023, the district court in *Gentry* had already issued its decision that HR-IT failed to satisfy §604(b)'s salary basis test. *See Gentry v. Hamilton-Ryker IT Sols., LLC*, No. 3:19-CV-00320, 2022 WL 658768 (S.D. Mar. 4, 2022). Yet, at no point in either his Motion for Summary Judgment or his Response to HR-IT's Renewed Motion for Summary Judgment did Pickens assert the application of collateral estoppel or otherwise assert that *Gentry* was binding or had a preclusive

32

effect on the issues before the district court. *See generally Pickens's MSJ*, R. 98-100, PageID ##2008-2608; *Pickens's MSJ Response*, R. 105, PageID ##2677-2703; *Pickens Reply*, R. 112, PageID #2772. Pickens also failed to supplement his summary judgment briefings to assert collateral estoppel after the Fifth Circuit issued its initial decision in *Gentry* affirming the district court's order. Instead, Pickens merely cited to *Gentry* as persuasive authority.[16] *Notice of Supplemental Authority*, R. 113, PageID #2773-74.

Pickens attempts to rectify his failure to raise this issue below by asserting that it was proper for him to wait to raise the collateral estoppel until appeal because the *Gentry* decision, which Pickens contends collaterally estops HR-IT continuing to defend its pay practices, was on appeal when the case was being decided below. (Opening Br. at 13). Pickens' argument is disingenuous at best given that the same concerns regarding preclusion when the prior case is on appeal were still present at the time he filed his Opening Brief.[17] Given the other Circuit Court precedent directly contravening the Fifth Circuit's decision in *Gentry*, it is reasonable to assume that Pickens' failure to assert offensive collateral estoppel below was not out

---

[16] Indeed, *Gentry* was not binding on the district court's analysis and interpretation of the salary basis test. *See In re Hubbard*, 23 B.R. 671, 673 (Bankr. S.D. Ohio 1982) ("It is generally accepted that while a District Court is bound by a decision of a Court of Appeals for its own Circuit, it is not bound by a decision of a Court of Appeals in another Circuit.").

[17] At the time Pickens filed his Opening Brief asserting for the first time to apply offensive collateral estoppel in this case, Hamilton-Ryker's deadline to seek further review of the Fifth Circuit's decision in Gentry had not elapsed. *See Gentry v. Hamilton-Ryker IT Sols.*, 102 F.4th 712 (5th Cir. 2024); Rules of the Supreme Court of the United States, Rule 31.1.

of a thoughtful desire to ensure finality of the *Gentry*, but, instead was a means to protect his arguments on appeal before this Court in the event *Gentry* was reversed on appeal.

Even if Pickens had not waived the ability to assert collateral estoppel by waiting until the lower Court disagreed with Gentry to seek to force the application of the Gentry decision on this court, the principals of fairness preclude the application of collateral estoppel here. *Cobbins v. Tennessee Dept. of Transp.*, 566 F.3d 582, 589 (6th Cir. 2009) (finding that preclusion did not apply because the elements could not be met); *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 331 (1979) (discussing fairness principles). One key factor when determining whether fairness precludes the application of collateral estoppel is whether the current plaintiff could have been joined in the prior action. *Jackson v. Renfrow*, No. 1:13-CV-00116-TBR, 2014 WL 1514320, *2 (W.D. Ky. Apr. 16, 2014). Pickens could have consolidated his claims with Gentry, but instead, he purposefully carved out the Gentry potential opt-ins out of the defined collective class and chose to litigate their claims separate from Gentry rather than finding a way for the two cases to jointly proceed. *Joint Stipulation*, R. 28, Page ID #112-113. It can only be reasonable to assume that Pickens's decision to pursue two separate lawsuits simultaneously was in order to ensure to the best possibility of obtaining a favorable result in at least

34

one forum. And, as a result of Pickens's deliberate decision to pursue his claims separately from Gentry, HR-IT was forced to litigate the two lawsuits instead of one.

It was only after Pickens was unsuccessful in his claims that he seeks reap the reward of the case that Appellants wanted nothing to do with previously. It would be woefully unreasonable and unfair to allow a party, such as Pickens, to calculatedly litigate a matter in a separate forum from a matter the party believes to be so similar to the case that it would have preclusive effect over the claims to seek to utilize collateral estoppel on appeal because they lost on the merits below. Accordingly, the Court should find the application of fairness precludes application of offensive collateral estoppel. This manipulation of the procedural rules should not be rewarded. Accordingly, this Court should find that Pickens waived the application of offensive collateral estoppel

## III.  THE SALARY BASIS TEST IS INVALID TO THE EXTENT IT PRECLUDES EXEMPT STATUS FOR EMPLOYEES WHO UNDISPUTEDLY PERFORMED WHITE-COLLAR DUTIES.

If the Court finds that §604(b)'s reasonable relationship test applied to HR-IT's pay practice and, as a result, Pickens and the Opt-In Plaintiffs did not qualify as exempt, despite undisputedly performing exempt duties, then HR-IT contends that it is still entitled to summary judgment on the grounds that the salary basis test must be invalidated as exceeding the DOL's authority to "define[] and delimit[]" when

35

workers are employed in a "bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1).

    A.    <u>THIS COURT MAY NO LONGER AFFORD THE DOL DEFERENCE IN LIGHT OF THE SUPREME COURT'S NEW STANDARD OF REVIEW IN *LOPER BRIGHT*.</u>

The Administrative Procedure Act (APA) directs courts to hold unlawful and set aside agency actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). In conducting review of an agency's action under the APA, the "court shall decide all relevant questions of law" and "interpret ... statutory provisions." *Id*. § 706. "The APA thus codifies for agency cases the unremarkable, yet elemental proposition reflected by judicial practice dating back to *Marbury*: that courts decide legal questions by applying their own judgment." *Loper Bright Enters. v. Raimondo*, ⸺ U.S. ⸺, 144 S. Ct. 2244, 2261, ⸺ L.Ed.2d ⸺ (2024). In doing so, the Supreme Court in *Loper Bright* instructed that courts "may not defer to an agency interpretation of the law simply because a statute is ambiguous," but instead must return to the APA's basic textual commitment to "independently interpret the statute and effectuate the will of Congress." *Id*. at 2261, 2263. When a statute delegates an agency discretionary authority to give meaning to a particular statutory term or provision, "the court must independently interpret the statute and effectuate the will of Congress subject to constitutional limits." *Id.* at 2263. In order to fulfill this role, a court must "fix the

36

boundaries of [the] delegated authority, …and ensur[e] the agency has engaged in ' 'reasoned decisionmaking'' within those boundaries[.]" *Id.* (citations omitted).

B.    THE "SALARY BASIS" REQUIREMENTS EXCEED THE DOL'S AUTHORITY TO DEFINE AND DELIMIT THE WHITE-COLLAR EXEMPTIONS.

The FLSA exempts from overtime requirements "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). Congress chose not to define any of the operative terms—*i.e.*, the terms "bona fide," "executive," "administrative," "professional," and "capacity." Instead, it delegated to the DOL the authority to "define[ ] and delimit[ ]" those terms. *Id.* But, the DOL's authority to define and delimit these duties-based exemptions does not extend to results directly at odds with the FLSA's statutory text. *See generally West Virginia v. EPA*, 142 S. Ct. 2587, 2609 (2022) ("Agencies have only those powers given to them by Congress, and enabling legislation is generally not an open book to which the agency [may] add pages and change the plot line.") (alteration in original) (quotations omitted); *Pub. Emps. Ret. Sys. of Ohio v. Betts*, 492 U.S. 158, 171 (1989) ("[N]o deference is due to agency interpretations at odds with the plain language of the statute itself.").

Courts construe undefined terms in accordance with their "ordinary meaning" at the time the statute was enacted. *Taniguchi v. Kan Pac. Saipan, Ltd.,* 566 U.S. 560, 566, 132 S.Ct. 1997, 182 L.Ed.2d 903 (2012). When the FLSA was enacted,

the plain meaning of the terms "executive,"[18] "administrative,"[19] and "professional"[20] all "relate[d] to a person's performance, conduct, or function." *Nevada v. United States Dep't of Lab.*, 275 F. Supp. 3d 795, 804 (E.D. Tex. 2017) (citing The Oxford English Dictionary (1st Ed. 1933)) (invalidating a prior DOL salary-level test). The term "bona fide" was defined as "[i]n or with good faith; without fraud or deceit; real or really; actual or actually; genuine or genuinely; as, he acted bona fide; a bona fide transaction." *Hewitt v. Helix Energy Sols. Grp., Inc*., 15 F.4th 289, 314 (5th Cir. 2021), aff'd, 598 U.S. 39, 143 S. Ct. 677, 214 L. Ed. 2d 409 (2023)(Jones, J. dissenting) (citing Webster's new International Dictionary ((W. T. Harris & F. Sturges Allen eds., 1930); *accord Nevada*, 275 F. Supp. 3d at 804–05 (relying on comparable dictionary definitions from 1933). And the term "capacity" was defined as "[o]utward condition or circumstances; relation; character; position; as in the capacity of a mason or carpenter." *Texas v. United States Dep't of Lab*., No. 4:24-CV-499-SDJ, 2024 WL 3240618, at *7 (E.D. Tex.

---

[18] *See* The Oxford Eng. Dictionary 395 (1933) (defining "executive" as one "[c]apable of performance; operative ... Active in execution, energetic.... Apt or skillful in execution.... Pertaining to execution; having the function of executing or carrying into practical effect").

[19] *See* The Oxford Eng. Dictionary 118 (1933) (defining "administrative" as "[p]ertaining to, dealing with, the conduct or management of affairs; executive.... Of the nature of stewardship, or delegated authority.... An administrative body; company of men entrusted with management").

[20] *See*  The Oxford Eng. Dictionary 1428 (1933) (defining "professional" as a person "[e]ngaged in one of the learned or skilled professions, or in a calling considered socially superior to a trade or handicraft.... That follows an occupation as his (or her) profession, life work, or means of livelihood.... That is trained and skilled in the theoretic or scientific parts of a trade or occupation.... that raises his trade to the dignity of a learned profession").

June 28, 2024) (quoting Webster's New Int'l Dictionary 396 (2d ed. 1934)). Thus, the plain meaning of §213 makes clear that whether someone works in an executive, administrative, or professional capacity must turn on that person's actual job functions and duties. *See Hewitt*, 15 F.4th at 315 (Jones, J. dissenting) ("Congress elected to exempt employees based on the capacity in which they are employed. It's their duties and not their dollars that really matter."). This interpretation is further bolstered by the statute's exemptions of individuals "*employed* in bona fide executive, administrative, or professional capacity" because the FLSA defines "employ" as "to suffer or permit to work." 29 U.S.C. §203(g).

Arguably, Congress's express omission of a particular term or phrase may be just as instructive when addressing issues of statutory interpretation as the express language of the statute. *See Reicksview Farms, L.L.C. v. Kiehne*, 541 F.Supp3d. 935, 939 (N.D. Iowa 2021) (recognizing that "[l]egistlative intent is expressed by omission as well as by inclusion of statutory terms."). Notably, the term "salary" is found nowhere in §213 nor in the entirety of the FLSA. Nor is there any reference to compensation or wages in §213(a)(1)'s express exemption of executive, administrative, or professional employees from the FLSA's overtime requirements. Thus, although the FLSA granted the DOL authority to "define[] and delimit[]" the EAP Exemptions, "[n]othing in Section 213(a)(1) allows the [DOL] to make salary rather than an employee's duties determinative of whether a 'bona fide executive,

39

administrative, or professional capacity' employee should be exempt from overtime pay." *Nevada*, 275 F. Supp. 3d. at 805, 807 (quotations omitted). But, that is precisely the result that would issue here if the Court finds that § 604(b) applies: Pickens and the Opt-In Plaintiffs—who undisputedly performed job duties required under the White-Collar Exemptions and earned extraordinarily high levels of pay— would be found non-exempt based solely on the types of compensation they received.

That Congress did not intend the HCE or White-Collar Exemptions to turn on how an employee is paid is bolstered by the fact that it <u>did</u> include compensation requirements for other exemptions. For example, the FLSA requires that baseball players be paid a certain "weekly salary" in order to be exempt. 29 U.S.C. § 213(a)(19). The FLSA also requires that in order to be exempt, certain computer workers be paid a certain hourly rate; *id.* § 213(a)(17); that local delivery drivers be "compensated … on the basis of trip rates, or other delivery payment plan," *id.* § 213(b)(11); and that certain nonprofit educational workers be paid "on a cash basis, at an annual rate of not less than $10,000," *id.* § 213(b)(24). In other words, Congress "dealt with exemptions in detail and with particularity," and "not left within the broad dispensing power of the [DOL]." *Addison v. Holly Hill Fruit Prod.*, 322 U.S. 607, 617 (1944). Thus, since Congress omitted any "salary basis" requirement—and certainly, any "reasonable relationship" test—from the White Collar Exemptions,

40

the DOL's authority does not permit it to impose such requirements to exclude from exempt status individuals who perform executive, administrative, or professional job duties. *See id.* at 614 (rejecting DOL's regulation limiting FLSA exemption based on size as inconsistent with the statute, explaining that "[w]here Congress wanted to make exemption depend on size, as it did in two or three instances not here relevant, it did so by appropriate language."); *Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 341, (2005) ("We do not lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply, and our reluctance is even greater when Congress has shown elsewhere in the same statute that it knows how to make such a requirement manifest.").

In *Hewitt*, Justice Kavanaugh succinctly explained the fundamental issue with the DOL's salary basis regulations—to the extent they exclude from exempt status employees who perform exempt job duties—as follows:

> The Act focuses on whether the employee performs White-Collar duties, not how much an employee is paid or how an employee is paid. So it is questionable whether the Department's regulations— which look not only at an employee's duties but also at how much an employee is paid and how an employee is paid—will survive if and when the regulations are challenged as inconsistent with the Act. It is especially dubious for the regulations to focus on how an employee is paid (for example, by salary, wage, commission, or bonus) to determine whether the employee is a bona fide executive. An executive employee's duties (and perhaps his total compensation) may be relevant to assessing whether the employee is a bona fide executive. But **I am hard-pressed to understand why it would matter for assessing executive status whether an employee is paid by salary, wage, commission, bonus, or some**

41

**combination thereof.**

*Hewitt*, 143 S. Ct. at 695 (Kavanaugh, J., dissenting) (emphasis added); *see also Devoe v. Atlanta Paper Co.*, 40 F. Supp. 284, 286 (N.D. Ga. 1941) (opining that the DOL's salary requirement, "which has no relation to the character of the work performed," cannot "bring within the scope of the Act a class of employees not intended."); *Buckner v. Armour & Co.*, 53 F. Supp. 1022, 1024 (N.D. Tex. 1942) (rejecting DOL's salary basis requirement as "an attempted law making function, while the power delegated to [the DOL] was only to define those [EAP] terms").

Moreover, the "historical purpose" for the salary requirement was to "simplif[y] enforcement by screening out the obviously nonexempt employees" who receive "low levels of compensation where EAP employees are unlikely to be found." DOL's 2019 Rule, 84 Fed. Reg. 51238, 41. This was based on 1947 hearings indicating that EAP employees were—at that time—"almost universally paid on a salary or fee basis." DOL, Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed. Reg. 22177 (April 23, 2004) (the DOL's "2004 Rule"). Clearly that historical purpose is not served—and is, in fact, turned on its head—if the "salary basis" test results in excluding from exempt status employees who undisputedly perform exempt executive, administrative, or professional job duties and received high levels of pay, like here. *See Hewitt*, 15 F.4th at 316 n.24 (Jones, J., dissenting) (discussing how

"[j]ustifications for the salary basis component of the test have historically focused on its factual correlation to executive, administrative, and professional employees" and questioning "[w]hether this correlation is true today"); *see also* Brief for Tex. Oil & Gas Ass'n et al., *Amici Curiae* on Petition for Writ of Certiorari in *Hewitt*, at 5, 23 (US. Feb. 9, 2022), 2022 WL 445887 (discussing the "flood of targeted plaintiff lawsuits" that threaten to "upend[]" the U.S. oil and gas industry based on "interpretations of the word 'salary'"); Brief for Indep. Petrol. Ass'n of America et al., *Amici Curiae* in *Hewitt*, at 18–19 (U.S. July 13, 2022), 2022 WL 2824419 (discussing how the "salary basis" requirements would "force[] an entire industry (and potentially other industries as well) to adopt less efficient compensation plans and practices" for employees who clearly meet the "plain meaning of 29 U.S.C. § 213").

Importantly, it is of no consequence that the DOL has maintained "salary basis" regulations for many years, since "[e]ven contemporaneous and longstanding agency interpretations must fall to the extent they conflict with statutory language." *Betts*, 492 U.S. at 171. Moreover, neither this Court's *Wirtz* decision nor the Supreme Court's *Auer* decision binds this Court with regard to HR-IT's challenge to the DOL's "salary basis" requirement. In *Wirtz*, the Fifth Circuit merely considered a challenge that the DOL's salary <u>level</u> of (then) $100 per week was "vague" and "arbitrary and capricious." *Wirtz v. Mississippi Publishers Corp.*, 364

F.2d 603, 608 (5th Cir. 1966). The Fifth Circuit rejected this argument because the "regulations are clear" in that they require a "minimum salary" of at least $100 weekly. *Id.* The Fifth Circuit did not opine on the general validity of the salary <u>basis</u> provisions—much less the reasonable relationship test, which was not even contained in the regulations at the time.[21] *See Nevada*, 275 F. Supp. 3d at 806 (explaining that *Wirtz* "stands for the proposition that the Department has the authority to implement a salary-level test" but "offers no guidance to the Court on the lawfulness" of later DOL rules).

Similarly, in *Auer*, the Supreme Court upheld an interpretation of the salary basis test while recognizing that the respondents "do not raise any general challenge to the Secretary's reliance on the salary-basis test." *Auer v. Robbins*, 519 U.S. 452, 457 (1997). Thus, *Auer* does not hold that the salary basis test is valid, in particular to the extent it results in the loss of exempt status for employees who undisputedly perform executive, administrative, or professional duties.

"Agencies have only those powers given to them by Congress." *West Virginia*, 142 S. Ct. at 2609. Here, the plain and unambiguous text of the FLSA makes clear that Congress only afforded DOL the right to define and delimit the White-Collar Exemptions based upon the job duties the employee performs – not the type or amount of pay the employee receives. Thus, the DOL exceeded its rule-making

---

[21] The reasonable relationship test was added in 2004. DOL's 2004 Rule, 69 Fed. Reg. at 22183.

authority by adopting salary basis requirements that result in the exclusion from exempt status of employees—like Plaintiffs—who undisputedly perform executive, administrative, or professional duties.

C.    AT MINIMUM, THE REASONABLE RELATIONSHIP REQUIREMENT IN § 604(B) MUST BE INVALIDATED.

Even if the Court finds that the DOL did not exceed its authority in establishing the "salary basis" regulations, the reasonable relationship test in § 604(b) clearly has no connection to determining who is employed in a "bona fide executive, administrative, or professional capacity." In adding the reasonable relationship requirement to the regulations in 2004, the DOL merely explained that it was incorporating its own "long-standing interpretation of the existing salary basis regulation." DOL's 2004 Rule, 69 Fed. Reg. at 22183–84. In response to comments "question[ing] whether it was appropriate for the [DOL] to require a reasonable relationship," the DOL's only purported justification for implementing the reasonable relationship test was to "ensure[] that the salary guarantee for such employees is a meaningful guarantee rather than a mere illusion." *Id*. The DOL provided <u>no</u> explanation for how such test had any bearing on whether an employee was employed in a "bona fide executive, administrative, or professional capacity" under 29 U.S.C. § 213(a). That is because there is no connection between the two.

Rather, providing a weekly salary at the level the DOL has determined will "screen[] out obviously nonexempt employees" (currently $684) should be all that

45

is required to serve the purpose of the salary basis test. DOL's 2019 Rule, 84 Fed. Reg. at 51238. The fact that an employee receives significant additional compensation on top of such "screening" minimum salary threshold provides no indication that the employee is not employed in a bona fide executive, administrative, or professional capacity. If anything, as the DOL's regulations themselves note, such higher levels of compensation indicate that the employee is <u>more</u> likely to be employed in a bona fide executive, administrative, or professional capacity. *See* 29 C.F.R. § 541.601(c) ("A high level of compensation is a strong indicator of an employee's exempt status, thus eliminating the need for a detailed analysis of the employee's job duties.").

Indeed, the reasonable relationship test—at least as applied by the Fifth Circuit in *Gentry*—is at odds with the DOL's <u>own</u> explanation that the salary regulations cannot "violat[e] the statutory requirement to base EAP status on the 'capacity' in which the employee is employed." DOL's 2019 Rule, 84 Fed. Reg. at 51243. As the DOL recently explained:

> An approach that emphasizes salary alone, irrespective of employee duties, would stand in significant tension with the Act. Section 13(a)(1) directs the Department to define and delimit employees based on the "capacity" in which they are employed. Salary is a helpful indicator of the capacity in which an employee is employed, especially among lower-paid employees. But it is not "capacity" in and of itself. …
>
> [E]xcept at the relatively low levels of compensation where EAP employees are unlikely to be found, the salary level is not a

substitute for an analysis of an employee's duties. It is, at most, an indicator of those duties. For most white collar, salaried employees, the exemption should turn on an analysis of their actual functions, not their salaries, as Congress instructed. The salary level test's primary and modest purpose is to identify potentially exempt employees by screening out obviously nonexempt employees.

*Id.* at 51237–38. In other words, at best, the DOL's salary requirement is permissible to set a "floor to screen[] out the obviously nonexempt employees"—not to disqualify otherwise exempt employees "based on salary alone." *Nevada*, 275 F. Supp. 3d at 806 (alteration in original) (quotations omitted). The reasonable relationship test, on the other hand, has no foundation in setting such a floor to screen out employees who are not employed in a bona fide executive, administrative, or professional capacity. Instead, it results in excluding from exempt status employees who undisputedly perform executive, administrative, or professional job duties and receive a weekly salary over the DOL's screening threshold. Thus, at the very least, § 604(b)'s reasonable relationship test exceeds the DOL's authority to define and delimit the executive, administrative, and professional exemptions and must be invalidated.

## IV.   THE DISTRICT COURT ERRED IN FINDING THE OPT-IN PLAINTIFFS WERE NOT PARTY PLAINTIFFS.

### A.   STANDARD OF REVIEW.

HR-IT cross appeals the district court's determination that because there was no final determination that the Opt-In Plaintiffs were similarly situated to Pickens, they were not party plaintiffs to this lawsuit. *Notice of Cross Appeal*, R. 125, PageID

47

#2912. This Court reviews for an abuse of discretion a district court's decision to send notice of an FLSA lawsuit to other similarly situated employees (or not). *Clark*, 68 F.4th at 1008. In doing so, the Court reviews questions of law *de novo*. *Id.* A legal conclusion is reviewed *de novo* and is contrary to law if it "fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219 (6th Cir. 2019) (quoting *United States v. Winsper*, No. 3:08-CV-00631, 2013 WL 5673617, at *1 (W.D. Ky. Oct. 17, 2013)).

B.    *CLARK* DOES NOT CHANGE THE CONCLUSION THAT THE OPT-IN PLAINTIFFS BECAME PARTY PLAINTIFFS WHEN THEY FILED THEIR CONSENTS.

Expressly at issue in *Clark* was "the showing of similarity that is necessary for a district court to facilitate notice of an FLSA suit to employees who were not originally parties to the suit." *Clark*, 68 F.4th at 1007; *see also id*. ("The issue in this case concerns the manner in which other employees come to learn about the existence of an FLSA suit itself."). In addressing this pointed issue, this Court rejected the familiar two-step certification procedure in FLSA collective actions, and instead found lead plaintiffs were required to demonstrate a "strong likelihood" that other employees they seek to represent are "similarly situated" to the original plaintiffs before facilitating notice of the lawsuit to other employees. *Id.* at 1011. However, this Court began its analysis in *Clark* by reiterating that an opt-in becomes a party plaintiff in a FLSA action when filing his or her consent form:

48

> Employees can sue for alleged violations of those mandates on 'behalf of . . . themselves and other employees similarly situated.' But '[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.' Thus—assuming they are 'similarly situated'—other employees become parties to an FLSA suit only if they affirmatively choose to do so.

*Id.* at 1007 (quoting 29 U.S.C. § 216(b)) (citations cleaned up). Accordingly, *Clark* sets forth a new framework for when court-approved notice of an FLSA action may be distributed. It does <u>not</u> establish a new standard on when an opt-in becomes a party plaintiff in a FLSA action.

The district court's determination that "the only plaintiff is Lynwood Pickens" is based upon the statement in *Clark* that "'other employees' become parties to an FLSA suit (as opposed to mere recipients of notice) only after they opt in and the district court determines—not conditionally, but conclusively—that each of them is in fact 'similarly situated' to the original plaintiffs[.]" *Memorandum*, R. 117, PageID #2855, n. 2 (quoting *Clark*, 68 F.4th at 1009). But in its hyper-focused interpretation of this single sentence from *Clark*, the district court overlooked the two authorities the Sixth Circuit cited for this position – 29 U.S.C. § 216(b) and *Canaday* – both of which conclusively establish that an employee becomes a party plaintiff once he or she opts into the FLSA action.

The language of *Clark* upon which the district court relied cites directly to the *Canaday* decision wherein this Court explained that in FLSA collective actions,

49

"[o]nce they opt in, these plaintiffs become 'party plaintiff[s],' … enjoying 'the same status in relation to the claims of the lawsuit as do the named plaintiffs'" and that "[a] final judgment in the FLSA collective action context . . . binds only those parties who have opted in." *Canaday*, 9 F.4th at 403 (emphasis added) (citations omitted). In support of this position, the *Canaday* Court relied upon the Eleventh Circuit's statutory interpretation of § 216(b) in *Prickett v. DeKalb Cty.*, 349 F.3d 1294 (11th Cir. 2003). *Id.* In *Prickett*, the Eleventh Circuit explained:

> We are bound by the intent of Congress, as expressed in the language of the statute. The statue says, "[n]o employee shall be a party plaintiff to any such *action* unless he gives his consent in writing to become such a party . . . " That plain language indicates that plaintiffs do not opt-in or consent to join an action as to specific claims, but as to the action as a whole. The statute does not indicate that opt-in plaintiffs have a lesser status than named plaintiffs insofar as additional claims are concerned. To the contrary, by referring to them as "party plaintiff[s]" Congress indicated that opt-in plaintiffs should have the same status in relation to the claims of the lawsuit as do the named plaintiffs.

*Prickett*, 349 F.3d at 1297 (emphasis added). That this Court in *Clark* did not intend to reverse or otherwise conflict with its finding in *Canaday* that once employees file consents to join a lawsuit, they become "party plaintiffs," was further confirmed when this Court explained that while "under Rule 23, the district court certifies the action itself as a class action," "in an FLSA action, under § 216(b), the district court simply adds parties to the suit." *Clark*, 68 F.4th at 1009. Thus, *Clark* does not change the fact that the Opt-In Plaintiffs became party plaintiffs when they filed their notices of consent. Accordingly, the district court erred when it held that the Opt-In Plaintiffs

50

were not party plaintiffs bound to its Order dismissing the case on the merits.

     C.    THE DISTRICT COURT'S DETERMINATION THAT PICKENS IS THE ONLY PLAINTIFF PREJUDICES HR-IT BY CREATING ONE-WAY INTERVENTION FOR THE OPT-IN PLAINTIFFS.

The district court's misapplication of *Clark* to the instant action has left the Opt-In Plaintiffs' claims in a state of purgatory. Aside from its footnote stating Pickens was the only plaintiff, the district court took no further action with respect to the Opt-In Plaintiffs. The district court did not decertify the collective action, nor dismiss the Opt-In Plaintiffs' claims with or without prejudice. *See Order*, R. 118, PageID #2863. Nor did any of the Opt-In Plaintiffs take matters into their own hands and withdraw from the case. Instead, they joined Pickens in his appeal of the district court's Judgment dismissing his claims with prejudice while simultaneously pursuing their claims in a new lawsuit filed in a new court with more favorable precedent. *Notice of Appeal*, R. 120, PageID #2865; *Merritt Complaint*, R. 122-1, PageID ##2888-2900. Allowing the Opt-In Plaintiffs to avoid the application of the district court's adverse Judgment to their claims, even though they affirmatively consented to be subject to the district court's decision, is akin to impermissible one-way intervention. This further warrants the reversal of the district court's decision.

"The rule against one-way intervention prevents potential plaintiffs from awaiting merits rulings in a class action before deciding whether to intervene in that class action." *Gooch v. Life Inv. Ins. Co. of Am.*, 672 F.3d 402, 432 (6th Cir. 2012);

*see also Becherer v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 193 F.3d 415, 429-30 (6th Cir. 1999) (Moore, J., concurring) (explaining how revisions to Rule 23 "were designed, in part, to end this one-way intervention" that permitted individuals to "take advantage of a victory by the plaintiff" while "only the named plaintiff was bound if the defendant prevailed"). While typically associated with Rule 23 class actions, one-way intervention is not permitted in FLSA actions either. Indeed, Congress's rationale behind requiring opt-ins to submit a written consent was aimed at prohibiting one-way intervention in FLSA litigation:

> Congress intended the requirement of written consent to bar plaintiffs from joining a collective action well after it had begun, particularly when the original statute of limitations had run and when those opting in would not be bound by an adverse decision. [Requiring a written consent from each opt-in] foreclosed the possibility of one-way intervention in FLSA actions.

*Knepper v. Rite Aid Corp.*, 675 F.3d 249, 256 (3d Cir. 2012); *see also Vanegas v. Signet Builders, Inc.*, No. 23-2964, 2024 WL 3841024, at *4 (7th Cir. Aug. 16, 2024) (agreeing that the "true purpose" of the Portal-to-Portal Act was to "eliminate the possibility of 'one-way intervention'" and explaining "the way Congress chose to cut out the possibility of plaintiffs jumping on board after a favorable judgment was to make them true parties the moment they join the case.").

Up until the district court's Judgment, the parties operated throughout this litigation with the underlying assumption that the Opt-In Plaintiffs were party plaintiffs bound to the district court's decision. The district court's *post-hoc* rationale

52

that the Opt-Ins Plaintiffs are not parties bound by its Judgment allows them to evade the district court's adverse ruling on the merits of their claims, despite their choice to join Pickens's lawsuit and expressly be bound by its judgment and decision. *See Consents,* R. 7-1, 38-1, 39-1, 40-1, 41-1, 42-1, 43-1, 46-1, Page ID ##23, 154-160, 163, 166, 169, 172, 175, 183. Thus, not holding the Opt-In Plaintiffs as party plaintiffs impermissibly creates one-way intervention that the written consent requirement under Section 216(b) was designed to eliminate in FLSA actions. *Knepper*, 675 F.3d at 256-257. Accordingly, the Court should reverse the district court's finding that Pickens is the only Plaintiff and hold that the Opt-In Plaintiffs are also bound by the district court's Judgment granting summary judgment to HR-IT and dismissing their claims with prejudice.

D.   *CLARK* DOES NOT REQUIRE THE COLLECTIVE TO BE "DECERTIFIED" OR THE OPT-IN PLAINTIFFS DISMISSED.

Even if this Court were to agree with the district court's interpretation and application of *Clark*, the dismissal of Pickens's claim should not result in a "decertification" of the Opt-In Plaintiffs' claims, as Pickens suggests. *See Opposition to Motion for Clarification*, R. 126, PageID # 2922-2923. Before the district court, the Opt-In Plaintiffs relied upon this Court's decision in *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 877-78 (6th Cir. 2012), to argue that because the district court found Pickens did not have a viable claim, Pickens cannot be "similarly situated" to the Opt-In Plaintiffs and, therefore, their claims

53

must be decertified. *Id.* However, pursuant to this Court's rational in *Clark* that the "term 'certification' has no place in FLSA actions," it is only logical that the term "decertification" also has no place in FLSA collective actions. *Clark*, 68 F.4th at 1009.

Moreover, the Court's refusal to make a "final determination" as to whether the Opt-in Plaintiffs were "similarly situated" to Pickens should not be tantamount to a dismissal of the Opt-In Plaintiffs' claims without prejudice. *See Tooker v. BluJay Sols., Inc.*, No. 1:22-CV-455, 2024 WL 1564735, at *2 (W.D. Mich. Apr. 11, 2024) (holding the district court retained jurisdiction over opt-in plaintiffs when it denied employees motion to certify without prejudice because "[i]n a collective action, the Court cannot blithely dismiss those who opt into a collective action after notice the Court authorized"). Instead, the Opt-In Plaintiffs' claims should only have been dismissed if the district court were to later determine they were not, in fact, similarly situated to Pickens. *See McElroy v. Fresh Mark, Inc.*, No. 5:22-CV-287, 2023 WL 4904065, at *6 (N.D. Ohio Aug. 1, 2023) (examining *Clark* and explaining that after notice is sent, the court can later make a factual "similarly situated" merits determination "at a time when the defendant is free to move to dismiss any opt-in plaintiff who turns out to be dissimilar"). This is consistent with *Clark*'s acknowledgment that a district court *adds* (not removes) *plaintiffs* to an FLSA collective action. *Clark*, 68 F.4th at 1009 ("In sum, under Rule 23, the district court

54

certifies the action itself as a class action; whereas in an FLSA action, under 216(b), the district court simply adds parties to the suit."). Because the district court never made any "formal determination" that the Opt-In Plaintiffs were not similarly situated to Pickens, their claims should not be considered dismissed.

E. THE DISTRICT COURT ERRED IN REFUSING TO MAKE A "FINAL DETERMINATION" THAT THE OPT-IN PLAINTIFFS WERE SIMILARLY SITUATED TO PICKENS.

Even if the district court were correct, that it must first make a "final determination" as to whether the Opt-In Plaintiffs were similarly situated to Pickens, it is unclear why it did not such make a "final determination" when the parties did not dispute that the Opt-In Plaintiffs were similarly situated to Pickens and the district court expressly confirmed this determination several times in its Judgment. *See Joint Stipulation*, R. 27, PageID #107; *Judgment*, R. 117, Page ID # 2853 ("This case concerns Plaintiff Lynwood Pickens' claim that Defendant [HR-IT] improperly classified Pickens *and other similarly situated employees* as exempt from overtime pay requirements of the [FLSA].") (emphasis added); *Id.*, Page ID # 2855 ("*The other opt-in plaintiffs were similarly compensated* with slight variations in the weekly salary an hourly rate.") (emphasis added).

As *Clark* explained, "[t]he very point of the 'similarly situated' inquiry is to determine whether the merits of other-employee claims would be similar to the merits of the original plaintiffs' claims—so that collective litigation would yield

55

'efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . activity.'" 68 F.4th at 1012. The district court recognized that like Pickens, the Opt-In Plaintiffs were assigned to the Freeport Project, classified as exempt from the FLSA, paid over $100,000 per year, paid a guaranteed weekly amount in accordance with HR-IT's Rate of Pay Policy plus additional hourly compensation, and "were paid this guaranteed amount on weeks in which they performed any work, even if they worked less than eight hours." *Judgment*, R. 117, Page ID ##2854-56, 2858. In concluding that Pickens was compensated on a salary basis, the district court found that "[l]ike the plaintiff in *Wilson*, Pickens *and other highly compensated HR-IT employees* were paid a weekly salary that did not vary based on hours worked, plus additional compensation at an hourly rate." *Id.*, Page ID #2862 (emphasis added). Thus, the district court recognized that the merits of Pickens' claims and those of the Opt-In Plaintiffs' claims turn on the same question: whether the pay practice to which they were all subject satisfied the HCE exemption's salary basis test. Yet, inexplicably the district court refused to make any "final determination" that the Opt-In Plaintiffs were similarly situated to Pickens.

The district court's decision to only grant summary judgment as to Pickens, when the undisputed evidence established the Opt-In Plaintiffs were similarly situated is the exact opposite result as the "efficient resolution in one proceeding" that the Sixth Circuit established in *Clark*. 68 F.4th at 1012. Therefore, the district

court erred in refusing to determine that the Opt-In Plaintiffs were parties to its Judgment and dismiss their claims with prejudice.

      F.    THE OPT-IN PLAINTIFFS MAY STILL BE BOUND BY THE DISTRICT COURT'S JUDGMENT UNDER PERMISSIVE JOINDER.

Setting aside *Clark* and its possible ramifications to the instant action, the Opt-In Plaintiffs may still be party plaintiffs bound by the district court's Judgment under the rules of permissive joinder. Under permissive joinder, "[p]ersons may join in one action as plaintiffs if: (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." FRCP 20(a)(1). Rule 20(a)'s permissive joinder standard "is intended to promote efficiency because all interested parties may be joined in a single proceeding, thereby encouraging a comprehensive resolution of the dispute," and additionally helps avoid "inconsistent outcomes." *Dejesus v. Humana Ins. Co.*, No. 3:15-CV-862-GNS, 2016 WL 3630258, at *6 (W.D. Ky. June 29, 2016); *see also* 7 Charles A. Wright et al., *Federal Practice & Procedure*, 1653, at 415 (3d ed. 2001) (explaining the transaction/occurrence requirement prescribed by Rule 20(a) is not a rigid test and is meant to be "read as broadly as possible whenever doing so is likely to promote judicial economy."). Permissive joinder's intended purpose of streamlining litigation and promoting judicial efficiency is consistent with the rationale this Court relied upon in *Clark* that collective actions

57

are intended to "avoid multiple lawsuits where numerous employees have allegedly been harmed by a claimed violation or violations of the FLSA by a particular employer." *See Prickett*, 349 F.3d at 1297. Indeed, district courts in this Circuit frequently permit individual employee's FLSA claims to proceed together in one lawsuit under the Rule 20 joinder standard under similar circumstances even without a final finding that these individuals are "similarly situated" under 29 U.S.C. 216(b). *See, e.g., Walls v. Host Int'l, Inc.*, No. 1:15-CV-00564, 2015 WL 4644638, at *3 (N.D. Ohio Aug. 4, 2015) (denying motion to sever FLSA claims based on alleged misjoinder since all plaintiffs' claims "flow from Defendants' policy to classify them a exempt from FLSA overtime requirements"); *Lindberg v. UHS of Lakeside, LLC*, No. 2010CV02014, 2010 WL 11678238, at *3 (W.D. Tenn. Aug. 19, 2010) (finding joinder of a proposed plaintiff appropriate where both plaintiffs "alleged systematic FLSA violations arising out of the . . . policy imposed by the defendants"); *Lowery v. Greater Chattanooga Pub. Tele. Corp.*, No. 1:07-CV-238, 2008 WL 269542, at *8 (E.D. Tenn. Jan. 25, 2008) (granting Rule 20 joinder where plaintiffs "each assert[ed] the same means used to avoid paying overtime: mis-classification [*sic*] as exempt or salaried employees").

The district court's Judgment confirms that joinder is appropriate here. It is undisputed that, like Pickens, the Opt-In Plaintiffs all: (1) worked for HR-IT on the same Freeport Project; (2) were classified as exempt pursuant to the HCE exemption;

(3) were paid a weekly guarantee plus hourly pay for hours worked over eight in a week; (4) challenged whether HR-IT's pay practice satisfied the DOL's salary basis test for the HCE exemption; and (5) did not dispute that they satisfied the other elements of the HCE exemption. *Judgment*, R. 117, PageID #2854-2855.Thus, the Opt-In Plaintiffs' claims all arise out of the same series of transactions or occurrences and there is a question of law common to Pickens and the Opt-In Plaintiffs.

Finding the Opt-Ins Plaintiffs are bound by the Judgment under Rule 20 joinder is particularly appropriate here because the parties engaged in significant discovery regarding each of the Opt-Ins Plaintiffs' claims, relying on that evidence at summary judgment. *See Walls*, 2015 WL 4644638, at *3 (joinder of FLSA claims proper where 'it is more efficient for these claims to proceed together than it would be to have four separate lawsuits' since '[a]lthough Plaintiffs will certainly need to present individual evidence, they will also be relying on the same evidence regarding Defendants' corporate policies"). It would be inefficient for the district court's Judgment not to apply despite the parties conducting discovery and presenting summary judgment briefing on each of these employees' FLSA claims. Moreover, the application of permissible joinder would only benefit the Opt-In Plaintiffs who would likely not have otherwise timely filed their claims for unpaid overtime but for their receipt of the Notice of Rights issued by the district court.

59

To the contrary, not applying the district court's judgment to the Opt-In Plaintiffs would result in the very "inconsistent outcomes" that Rule 20(a) is designed to avoid, as shown by the Opt-In Plaintiffs' attempt to avoid the application of the district court's decision to their claims by refiling their lawsuit in Texas. *Merritt Complaint*, R. 122-1, PageID ##2888-2900. Because the Opt-In Plaintiffs satisfied Rule 20(a)'s elements for permissive joinder, the district court erred in finding the Opt-In Plaintiffs were not party plaintiffs bound to its judgment.

## CONCLUSION

For the foregoing reasons, HR-IT request that the Court affirm the district court's granting of summary judgment because HR-IT's pay practice satisfied §602(a)'s salary basis test. HR-IT further requests that the Court reverse the district court's finding that the Opt-In Plaintiffs were not party plaintiffs and, as result, find the Opt-In Plaintiffs' claims should also be dismissed with prejudice. In the alternative, HR-IT contends the DOL's salary basis regulations should be invalidated as exceeding the DOL's authority to "define[] and delimit[]" the executive, administrative, and professional exemptions under the FLSA. Finally, if this Court denies HR-IT all of the relief requested herein, and determines that it did not compensate Pickens and the Opt-In Plaintiffs on a salary basis, HR-IT requests that this Court remand this matter to the district court to address HR-IT's motion for

60

summary judgment on the basis of its good faith defense and Pickens' failure to establish willfulness.

**Dated:**  August 26, 2024                    Respectfully Submitted,

By:   */s/ Ashlee Cassman Grant*

**Ashlee Cassman Grant**
Texas Bar No. 24082791
Federal ID No. 1607786
**Jennifer R. DeVlugt**
Texas Bar No. 24094624
Federal ID No. 3323698
**BAKER & HOSTETLER LLP**
811 Main Street, Suite 1100
Houston, Texas  77002
Telephone:  (713) 751-1600
Facsimile:  (713) 751-1717
agrant@bakerlaw.com
jdevlugt@bakerlaw.com

**ATTORNEYS FOR DEFENDANT –
APPELLEE/CROSS-APPELLANT
HAMILTON-RYKER IT SOLUTIONS,
LLC**

61

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this brief complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B)(i) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f), this brief contains 14,932 words, as determined by the word count function of Microsoft Word.

I further certify that this document complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type-style requirements of FED. R. APP. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman typeface.

*/s/ Ashlee Cassman Grant*
Ashlee Cassman Grant

Counsel for Defendant-Appellee/Cross-Appellant Hamilton-Ryker IT Solutions, LLC

Dated: August 26, 2024

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 26, 2024, a copy of the foregoing Brief of Appellee-Defendant/Cross-Appellant Hamilton-Ryker IT Solutions, LLC was filed electronically using the Court's CM/ECF system. I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the appellate CM/ECF system.

*/s/ Ashlee Cassman Grant*

Ashlee Cassman Grant

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

| RE No. | Date | Description | Page ID # |
|---|---|---|---|
| 1 | 02/18/2020 | Complaint | 1-12 |
| 2 | 02/19/2020 | Notice Regarding Consent of the Parties | 13-14 |
| 7 | 02/21/2020 | Notice of Filing One Consent to Join (Merritt) | 20-23 |
| 10 | 03/11/2020 | Summons in a Civil Action - Hamilton-Ryker IT Solutions, LLC | 29-30 |
| 19 | 03/23/2020 | Defendant's Original Answer to Collective Action Complaint | 46-67 |
| 27 | 04/20/2020 | Joint Stipulation Regarding Conditional Certification as a Collective Action and Proposed Schedule for Approval of Notice | 107-111 |
| 28 | 04/22/2020 | Signed Joint Stipulation Regarding Conditional Certification as a Collective Action and Proposed Schedule for Approval of Notice | 112-114 |
| 29 | 04/24/2020 | Joint Stipulation Agreeing to Proposed Notice of Rights to Be Sent to All Class Members | 115-124 |
| 30 | 04/28/2020 | Signed Joint Stipulation Agreeing to Proposed Notice of Rights to Be Sent to All Class Members | 125-127 |
| 38 | 05/29/2020 | Plaintiff's Notice of Filing Consent (Cunningham, Easley, Gibson, Jackson, Kodali, Nyman, and Stahl) | 152-160 |
| 39 | 06/03/2020 | Plaintiff's Notice of Filing Consent (Moss) | 161-162 |
| 39-1 | 06/03/2020 | Exhibit 1 – Consent to Join Wage Claim Lawsuit Against Hamilton-Ryker IT Solutions, LLC (Robert Louis Moss) | 163 |
| 40 | 06/10/2020 | Plaintiff's Notice of Filing Consent (Swanks) | 164-165 |
| 40-1 | 06/10/2020 | Exhibit 1 – Consent to Join Wage Claim Lawsuit Against Hamilton-Ryker IT Solutions, LLC (Tommy E. Swanks, Sr.) | 166 |
| 41 | 06/10/2020 | Plaintiff's Notice of Consent (Knight) | 167-168 |
| 41-1 | 06/10/2020 | Exhibit 1 – Consent to Join Wage Claim Lawsuit Against Hamilton-Ryker IT Solutions, LLC (Michael Knight) | 169 |

| RE No. | Date | Description | Page ID # |
|:---:|:---:|:---|:---:|
| 42 | 06/22/2020 | Plaintiff's Notice of Consent (Wilson) | 170-171 |
| 42-1 | 06/22/2020 | Exhibit 1 – Consent to Join Wage Claim Lawsuit Against Hamilton-Ryker IT Solutions, LLC (Troy O. Wilson) | 172 |
| 43 | 06/29/2020 | Plaintiff's Notice of Consent (Sanchez) | 173-174 |
| 43-1 | 06/29/2020 | Exhibit 1 – Consent to Join Wage Claim Lawsuit Against Hamilton-Ryker IT Solutions, LLC (Daniel L. Sanchez) | 175 |
| 46 | 07/17/2020 | Plaintiff's Notice of Consent (Tabler) | 181-182 |
| 46-1 | 07/17/2020 | Exhibit 1 – Consent to Join Wage Claim Lawsuit Against Hamilton-Ryker IT Solutions, LLC (Nick Tabler) | 183 |
| 53 | 03/30/2021 | Defendant Hamilton-Ryker IT Solutions, LLC's Motion for Summary Judgment | 203-205 |
| 53-1 | 03/30/2021 | Defendant Hamilton-Ryker IT Solutions, LLC's Memorandum in Support of Its Motion for Summary Judgment | 206-231 |
| 83 | 03/23/2022 | Pickens's Notice of Supplemental Authority (Doc. 53) | 1431-1433 |
| 84 | 03/29/2022 | Defendant Hamilton-Ryker IT Solutions, LLC's Response to Plaintiff's Notice of Supplemental Authority | 1434-1439 |
| 89 | 07/27/2022 | Signed Order Regarding Defendant's Motion to Stay This Case | 1551 |
| 92 | 04/04/2023 | Signed Order Regarding Joint Notice and Motion to Lift Stay | 1559 |
| 93 | 04/10/2023 | Plaintiffs' Motion for Leave to File a Motion for Summary Judgment | 1560-1563 |
| 94 | 04/11/23 | Signed Order Granting Plaintiffs' Motion for Leave to File a Motion for Summary Judgment | 1565 |
| 95 | 04/28/2023 | Defendant Hamilton-Ryker IT Solutions, LLC's Renewed Motion for Summary Judgment | 1566-1568 |
| 96 | 04/28/2023 | Defendant Hamilton-Ryker IT Solutions, LLC's Memorandum in Support of Its Renewed Motion for Summary Judgment | 1569-1600 |
| 97 | 04/28/2023 | Defendant Hamilton-Ryker IT Solutions, LLC's Statement of Undisputed Material Facts in Support of Its Renewed Motion for Summary Judgment | 1601-1639 |

65

| RE No. | Date | Description | Page ID # |
|---|---|---|---|
| 97-2 | 04/28/2023 | Exhibit A – Declaration of Keith Patel | 1644-1652 |
| 97-4 | 04/28/2023 | Exhibit A-2 – iSymphony Orientation Guide | 1657-1667 |
| 97-5 | 04/28/2023 | Exhibit A-3 – July 31, 2017 Email | 1668-1669 |
| 97-6 | 04/28/2023 | Exhibit A-4 – Piping Inspector Job Description (Feb. 26, 2018 State Date) | 1670-1671 |
| 97-7 | 04/28/2023 | Exhibit A-5 – Rotating Equipment Supervisor Job Description (Oct. 3, 2016 Start Date) | 1672-1673 |
| 97-8 | 04/28/2023 | Exhibit A-6 – Piping Inspector Job Description (Nov. 7, 2016 Start Date) | 1674-1675 |
| 97-9 | 04/28/2023 | Exhibit A-7 – Instrument Inspector Job Description (Feb. 25, 2019 Start Date) | 1676-1677 |
| 97-10 | 04/28/2023 | Exhibit A-8 – Deputy Commissioning Manager (May 1, 2019 Start Date) | 1678-1679 |
| 97-11 | 04/28/2023 | Exhibit A-9 – Quality Supervisor Job Description (Jan. 9, 2017 Start Date) | 1680-1681 |
| 97-12 | 04/28/2023 | Exhibit A-10 – Instrument Inspector Job Description (April 2, 2018 Start Date) | 1682-1683 |
| 97-13 | 04/28/2023 | Exhibit A-11 – Civil Structural Inspector Job Description (Feb. 2, 2015 Start Date) | 1684-1685 |
| 97-14 | 04/28/2023 | Exhibit A-12 – Insulation Inspector Job Description (Feb. 11, 2019 Start Date) | 1686-1687 |
| 97-15 | 04/28/2023 | Exhibit A-13 – Piping Inspector Job Description (June 27, 2016) | 1688-1691 |
| 97-16 | 04/28/2023 | Exhibit A-14 – Instrument Inspector Job Description (July 2, 2018 Start Date) | 1692-1693 |
| 97-17 | 04/28/2023 | Exhibit A-15 – Piping Inspector Job Description (Nov. 7, 2016 Start Date) | 1694-1695 |
| 97-18 | 04/28/2023 | Exhibit B – March 30, 2021 Declaration of Melanie Neumair | 1696-1700 |
| 97-19 | 04/28/2023 | Exhibit B-1 – Lynwood Pickens Offer Letter | 1701 |
| 97-22 | 04/28/2023 | Exhibit B-4 – Lynwood Pickens Form W-2s | 1710-1711 |
| 97-23 | 04/28/2023 | Exhibit B-5 – Brad Merritt's Offer Letter | 1712 |
| 97-26 | 04/28/2023 | Exhibit B-8 – Brad Merritt's Form W-2s | 1717-1719 |
| 97-29 | 04/28/2023 | Exhibit B-11 – Billy Cunningham's Form W-2s | 1722-1724 |
| 97-30 | 04/28/2023 | Exhibit B-12 – Waylon Easley's Offer Letter | 1725 |
| 97-31 | 04/28/2023 | Exhibit B-13 – Waylon Easley's Form W-2s | 1726 |

| RE No. | Date | Description | Page ID # |
|--------|------|-------------|-----------|
| 97-32 | 04/28/2023 | Exhibit B-14 – Simon Gibson's Offer Letter | 1727 |
| 97-33 | 04/28/2023 | Exhibit B-15 – Simon Gibson's Form W-2s | 1728-1730 |
| 97-37 | 04/28/2023 | Exhibit B-19 – Timothy Jackson's Form W-2s | 1734-1737 |
| 97-39 | 04/28/2023 | Exhibit B-21 – Harshita Kodali's Offer Letter | 1739 |
| 97-42 | 04/28/2023 | Exhibit B-24 – Shane Nyman's Form W-2s | 1742-1745 |
| 97-45 | 04/28/2023 | Exhibit B-27 – Daniel Stahl's Form W-2s | 1748-1749 |
| 97-48 | 04/28/2023 | Exhibit B-30 – Robert Moss's Form W-2s | 1752-1755 |
| 97-49 | 04/28/2023 | Exhibit B-31 – Tommy Swanks, Sr.'s Offer Letter | 1756 |
| 97-50 | 04/28/2023 | Exhibit B-32 – Tommy Swanks's Form W-2s | 1757-1758 |
| 97-53 | 04/28/2023 | Exhibit B-35 – Michael Knight's Form W-2s | 1761-1764 |
| 97-54 | 04/28/2023 | Exhibit B-36 – Troy Wilson's Offer Letter | 1765 |
| 97-55 | 04/28/2023 | Exhibit B-37 – Troy Wilson's Form W-2s | 1766-1767 |
| 97-58 | 04/28/2023 | Exhibit B-40 – Daniel Sanchez's Form W-2s | 1770-1772 |
| 97-59 | 04/28/2023 | Exhibit B-41 – Nick Tabler's Offer Letter | 1773 |
| 97-62 | 04/28/2023 | Exhibit B-44 – Nick Tabler's Form W-2s | 1776-1779 |
| 97-63 | 04/28/2023 | Exhibit C – Plaintiff LynnWood Pickens' Objections, Answers, and Responses to Defendant's Interrogatories, Requests for Production, and Requests for Admissions | 1780-1795 |
| 97-64 | 04/28/2023 | Exhibit D – Plaintiff Brad Merritt's Objections, Answers, and Responses to Defendant's Interrogatories, Requests for Production, and Requests for Admissions | 1796-1811 |
| 97-65 | 04/28/2023 | Exhibit E – Opt-In Plaintiff Billy Cunningham's Objections, Answers, and Responses to Defendant's Requests for Interrogatories, Requests for Production, and Requests for Admissions | 1812-1824 |
| 97-66 | 04/28/2023 | Exhibit F – Opt-In Plaintiff Waylon Easley's Objections, Answers, and Responses to Defendant's Requests for Interrogatories, Requests for Production, and Request for Admissions | 1825-1836 |
| 97-67 | 04/28/2023 | Exhibit G – Opt-In Plaintiff Simon J. Gibson's Objections, Answers, and | 1837-1849 |

| RE No. | Date | Description | Page ID # |
|--------|------|-------------|-----------|
| | | Responses to Defendant's Requests for Interrogatories, Requests for Production, and Requests for Admissions | |
| 97-68 | 04/28/2023 | Exhibit H – Opt-In Plaintiff Timothy Jackson's Objections, Answers, and Responses to Defendant's Requests for Interrogatories, Requests for Production, and Requests for Admissions | 1850-1863 |
| 97-69 | 04/28/2023 | Exhibit I – Opt-In Plaintiff Harshita Kodali's Objections, Answers, and Responses to Defendants' Requests for Interrogatories, Requests for Production, and Request for Admissions | 1864-1875 |
| 97-70 | 04/28/2023 | Exhibit J – Opt-In Plaintiff Shane Nyman's Objections, Answers, and Responses to Defendants' Requests for Interrogatories, Requests for Production, and Requests for Admissions | 1876-1888 |
| 97-71 | 04/28/2023 | Exhibit K – Opt-In Plaintiff Daniel Stahl's Objections, Answers, and Responses to Defendant's Requests for Interrogatories, Requests for Production, and Request for Admissions | 1889-1900 |
| 97-72 | 04/28/2023 | Exhibit L – Opt-In Plaintiff Robert Moss' Objections, Answers, and Responses to Defendant's Requests for Interrogatories, Requests for Production, and Requests for Admissions | 1901-1911 |
| 97-73 | 04/28/2023 | Exhibit M – Opt-In Plaintiff Tommy Swanks' Objections, Answers, and Responses to Defendant's Requests for Interrogatories, Requests for Production, and Request for Admissions | 1912-1924 |
| 97-74 | 04/28/2023 | Exhibit N – Opt-In Plaintiff Michael Knight's Objections, Answers, and Responses to Defendant's Requests for Interrogatories, Requests for Production, and Requests for Admissions | 1925-1937 |
| 97-75 | 04/28/2023 | Exhibit O – Opt-In Plaintiff Troy Wilson's Objections, Answers, and Responses to Defendant's Requests for Interrogatories, Requests for Production, and Request for | 1938-1949 |

| RE No. | Date | Description | Page ID # |
|---|---|---|---|
| | | Admissions | |
| 97-76 | 04/28/2023 | Exhibit P – Opt-In Plaintiff Daniel Sanchez' Objections, Answers, and Responses to Defendant's Requests for Interrogatories, Requests for Production, and Requests for Admissions | 1950-1962 |
| 97-77 | 04/28/2023 | Exhibit Q – Opt-In Plaintiff Nick Tabler's Objections, Answers, and Responses to Defendant's Requests for Interrogatories, Requests for Production, and Request for Admissions | 1963-1974 |
| 97-78 | 04/28/2023 | Exhibit R – April 27, 2023 Supplemental Declaration of Keith Patel Dated | 1975-1977 |
| 97-79 | 04/28/2023 | Exhibit R-1 – Brad Merritt's Pay Stubs | 1978-1980 |
| 98 | 04/28/2023 | Pickens's Motion for Summary Judgment | 2008-2009 |
| 99 | 04/28/2023 | Pickens' Memorandum in Support of His Motion for Summary Judgment | 2010-2034 |
| 100-2 | 04/28/2023 | Exhibit 1 – Keith Patel's Deposition | 2042-2070 |
| 100-3 | 04/28/2023 | Exhibit 2 – Declaration of Omid Afhami | 2071-2074 |
| 100-4 | 04/28/2023 | Exhibit 2-A – Summary of Plaintiffs' Records | 2075-2105 |
| 100-6 | 04/28/2023 | Exhibit 4 – Defendant's Objections and Answers to Plaintiff's First Set of Interrogatories | 2108-2121 |
| 100-7 | 04/28/2023 | Exhibit 5 – Paystubs - Bremond | 2122-2188 |
| 100-8 | 04/28/2023 | Exhibit 6 – Timesheet Reports – Lynnwood Pickens | 2189-2255 |
| 100-10 | 04/28/2023 | Exhibit 8 – Additional Paystubs | 2258-2398 |
| 100-11 | 04/28/2023 | Exhibit 9 – Additional Timesheet Reports | 2399-2545 |
| 103 | 05/26/2023 | Defendant Hamilton-Ryker IT Solutions, LLC's Response in Opposition to Plaintiff's Motion for Summary Judgment | 2614-2644 |
| 104 | 05/26/2023 | Defendant Hamilton-Ryker IT Solutions, LLC's Response to Plaintiff's Statement of Undisputed Material Facts in Support of Plaintiff's Motion for Summary Judgment | 2645-2660 |
| 104-1 | 05/26/2023 | Exhibit 1 – Declaration of Keith Patel | 2661-2676 |
| 105 | 05/26/2023 | Pickens's Response to Hamilton-Ryker's Motion for Summary Judgment | 2677-2703 |

| RE No. | Date | Description | Page ID # |
|---|---|---|---|
| 106 | 05/26/2023 | Pickens's Response to Hamilton-Ryker's Statement of Undisputed Material Facts | 2704-2744 |
| 111 | 06/09/2023 | Defendant Hamilton-Ryker IT Solutions, LLC's Reply in Support of Its Renewed Motion for Summary Judgment | 2756-2764 |
| 112 | 06/09/2023 | Pickens's Reply in Support of Summary Judgment | 2765-2772 |
| 113 | 07/27/2023 | Pickens' Notice of Supplemental Authority Regarding Summary Judgment | 2773-2775 |
| 114 | 08/03/2023 | Defendant Hamilton-Ryker IT Solutions, LLC's Notice of Supplemental Authority and Response to Plaintiffs' Notice of Supplemental Authority | 2822-2828 |
| 115 | 10/26/23 | Defendant's Notice of Supplemental Authority in Support of Its Renewed Motion for Summary Judgment | 2834-2841 |
| 117 | 03/28/2024 | Memorandum regarding Plaintiff's Motion for Summary Judgment and Defendant's Motion for Summary Judgment | 2853-2862 |
| 118 | 03/28/2024 | Order Granting HR-IT's Motion for Summary Judgment, Denying Pickens' Motion for Summary Judgment, and Dismissing Pickens' Claims | 2863 |
| 119 | 03/28/2024 | Entry of Judgment Regarding Order Dismissing Case | 2864 |
| 120 | 04/24/2024 | Pickens' Notice of Appeal | 2865-2866 |
| 121 | 04/25/2024 | Defendant Hamilton-Ryker IT Solutions, LLC's Motion for Clarification or Amendment Regarding Court's March 28, 2024 Memorandum, Order and Entry of Judgment | 2867-2869 |
| 122 | 04/25/2024 | Defendant Hamilton-Ryker IT Solutions, LLC's Memorandum in Support of Its Motion for Clarification or Amendment Regarding Court's March 28, 2024 Memorandum, Order, and Entry of Judgment | 2870-2900 |

| RE No. | Date | Description | Page ID # |
|---|---|---|---|
| 125 | 05/08/2024 | Defendant Hamilton-Ryker IT Solutions, LLC's Notice of Cross Appeal | 2912-2914 |
| 128 | 05/13/2024 | Order Denying Motion for Clarification or Amendment Regarding Court's March 28, 2024, Memorandum, Order, and Entry of Judgment | 2931 |