**Nos. 24-5407, 24-5459**

---

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

---

LYNWOOD PICKENS,

Plaintiff-Appellant/Cross-Appellee,

v.

HAMILTON-RYKER IT SOLUTIONS, LLC,

Defendant-Appellee/Cross-Appellant,

---

Appeal from the United States District Court
for the Middle District of Tennessee
Nashville Division

---

## BRIEF OF APPELLANT/CROSS-APPELLEE (THIRD BRIEF)

---

**Richard J. (Rex) Burch**
Texas State Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Tel: (713) 877-8788
rburch@brucknerburch.com

**David M. Mathews**
Texas State Bar No. 24058211
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 352-1100
dmathews@mybackwages.com

**Melody L. Fowler-Green**
**YEZBAK LAW OFFICES PLLC**
2021 Richard Jones Rd, Ste 310-A
Nashville, Tennessee 37215
Tel: (615) 250-2000
mel@yezbaklaw.com

**ATTORNEYS FOR PLAINTIFF-APPELLANT**

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................. i

TABLE OF AUTHORITIES ............................................................ ii

ARGUMENT ............................................................................... 1

A. Introduction of the "salary basis" issue. ................................ 1

B. Collateral estoppel precludes HR-IT from arguing it can pass the salary basis test. ................................................................ 3

    1. Pickens didn't waive (or forfeit) collateral estoppel. .................... 3

    2. HR-IT can't argue its pay plan passes the salary basis test........................ 8

C. The District Court erred finding HR-IT paid Pickens on a salary basis. ........... 10

D. The salary basis test is valid, including the reasonable relationship test. .......... 18

E. The DOL's regulations are still entitled to *Auer* deference. ............... 24

F. The District Court didn't err by finding the Opt-in Plaintiffs weren't bound by its judgment. .................................................... 25

    1. HR-IT is wrong about *Clark*. ......................................... 26

    2. HR-IT can't blame anyone for not asking the Court for a final determination whether the Opt-in Plaintiffs were similarly situated. ..... 31

CONCLUSION .......................................................................... 34

CERTIFICATE OF COMPLIANCE WITH FED. R. APP. 32(A) ........... 35

CERTIFICATE OF SERVICE ...................................................... 35

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS.............. 36

# <u>TABLE OF AUTHORITIES</u>

Cases

*Alstate Const. Co. v. Durkin*,
    345 U.S. 13 (1953) ............................................................................... 19

*Alvarez v. NES Global LLC,*
    No. 4:20-CV-01933, 2024 WL 4309989 (S.D. Tex. Sept. 26, 2024) .............21, 22, 24

*Arizona v. California*,
    530 U.S. 392 (2000) ............................................................................... 6

*Armstrong v. Martin Marietta Corp.*,
    138 F.3d 1374 (11th Cir. 1998) ............................................................ 29

*Audi v. Barr,*
    839 F. App'x 953 (6th Cir. 2020) ......................................................... 25

*Auer v. Robbins,*
    519 U.S. 452 (1997) ............................................................................... 19

*Berner v. PharMerica Logistics Servs., LLC,*
    No. 3:23-CV-142-CRS, 2023 WL 8242468 (W.D. Ky. Nov. 28, 2023) ................... 27

*Boseman v. Flint Police Dep't,*
    No. 2:23-CV-13139, 2024 WL 1142360 (E.D. Mich. Mar. 15, 2024) ................... 5, 6

*Brittmon v. Upreach, LLC,*
    285 F.Supp.3d 1033 (S.D. Ohio 2018) ................................................. 26

*Brock v. Claridge Hotel & Casino*,
    846 F.2d 180 (3rd Cir. 1988) ............................................................ 11, 24

*Canaday v. Anthem Companies, Inc.*,
    9 F.4th 392 (6th Cir. 2021) ................................................................ 25, 26

Cayton v. Metropolitan Government Of Nashville & Davidson County,
    No. 3:20-CV-00859, 2022 WL 183437 (M.D. Tenn. Jan. 19, 2022) ........................ 17

*Clark v. A&L Homecare & Training Ctr., LLC,*
    68 F.4th 1003 (6th Cir. 2023) ......................................................... passim

*Craig v. Far W. Eng'g Co.*,
    265 F.2d 251 (9th Cir. 1959) ............................................................. 19

*Crook v. PJ Operations, LLC,*
    No. CV 5:21-321-KKC, 2024 WL 1048136 (E.D. Ky. Mar. 11, 2024) ................... 27

*Cunningham v. Roundy's Illinois, LLC,*
No. 1:21-CV-05368, 2022 WL 17740421 (N.D. Ill. Dec. 16, 2022) ........................ 29

*Foster v. Barilow,*
6 F.3d 405 (6th Cir. 1993) ...................................................... 4

*Gentry v. Hamilton-Ryker IT Sols., L.L.C.,*
No. 22-40219, 2023 WL 4704115 (5th Cir. July 24, 2023) ...................................... 6, 7

*Gentry v. Hamilton-Ryker IT Sols., L.L.C.,*
No. 22-40219, 95 F.4th 219 (5th Cir. 2024) ................................................. 7

*Gentry v. Hamilton-Ryker IT Sols., LLC,*
No. 3:19-CV-00320, 2022 WL 658768 (S.D. Mar. 4, 2022) ................................... 5, 6

*Gentry v. Hamilton-Ryker IT, Sols.,*
102 F.4th 712 (5th Cir. 2024) ...................................................................passim

*Greer v. United States,*
938 F.3d 766 (6th Cir. 2019)...................................................... 4

*Halle v. W. Penn Allegheny Health Sys. Inc.,*
842 F.3d 215 (3d Cir. 2016) ...................................................... 29

*Hart Steel Co. v. Railroad Supply Co.,*
244 U.S. 294 (1917)...................................................... 8

*Harvis v. Roadway Express, Inc.,*
973 F.2d 490 (6th Cir.1992) ...................................................... 8

*Hebert v. FMC Technologies, Inc.,*
2023 WL 4105427 (5th Cir. June 21, 2023) ......................................... 14, 15

*Helix Energy Sols. Grp., Inc. v. Hewitt,*
598 U.S. 39, 46(2023)...................................................................passim

*Hewitt v. Helix Energy Sols. Grp.,Inc.,*
15 F.4th 289, 294 (5th Cir. 2021) ....................................................... 11, 17

*Higgins v. Bayada Home Health Care, Inc.,*
No. 3:16-CV-02382, 2021 WL 4306125 (M.D. Pa. Sept. 22, 2021).......................... 16

*Hillman Power Co., LLC v. On-Site Equip. Maint., Inc.,*
582 F. Supp. 3d 511 (E.D. Mich. 2022) ...................................................... 8

*Hogan v. Cleveland Ave Rest., Inc.,*
No. 2:15-CV-2883, 2023 WL 5745439 (S.D. Ohio Sept. 6, 2023)............................ 28

*Hutt v. Greenix Pest Control, LLC,*
No. 2:20-CV-1108, 2023 WL 5670691 (S.D. Ohio July 12, 2023)............................ 28

*In re First Actuarial Corp. of Illinois,*
    182 B.R. 178 (Bankr. W.D. Mich. 1995) ................................................. 9, 10

*Isaacs v. Landmark Recovery of Louisville, LLC,*
    No. 3:23-CV-00210, 2023 WL 7101869 (M.D. Tenn. Oct. 27, 2023) ...................... 27

*Jackson v. Renfrow,*
    No. 1:13-CV-00116-TBR, 2014 WL 1514320 (W.D. Ky. Apr. 16, 2014) ................ 10

*Jenkins v. EVO Servs. Grp., LLC,*
    No. 2:23-CV-01874, 2023 WL 8185965 (S.D. Ohio Nov. 27, 2023) ...................... 27

*Jones v. Ferro Corp.,*
    No. 1:22-CV-00253-JDA, 2023 WL 4456815 (N.D. Ohio July 11, 2023) ............... 28

*Kaufman v. Gardner Pie Co.,*
    No. 5:22CV2126, 2024 WL 895152 (N.D. Ohio Mar. 1, 2024) ............................... 27

*Kisor v. Wilkie,*
    588 U.S. 558 (2019) ................................................................................................. 25

*Knepper v. Rite Aid Corp.,*
    675 F.3d 249 (3d Cir. 2012) .................................................................................... 28

*Lesher v. Lavrich,*
    784 F.2d 193 (6th Cir. 1986) ..................................................................................... 8

*Loper Bright Enters. v. Raimondo,*
    144 S. Ct. 2244 (2024) ...................................................................................... 20, 24

*May v. Oldfield,*
    698 F.Supp. 124 (E.D.Ky.1988) .............................................................................. 10

*Mayfield v. U.S. Dep't of Labor,*
    No. 23-50724, 2024 WL 4142760 (5th Cir. Sept. 11, 2024) ............................. 20, 21

*McClurg v. Dallas Jones Enterprises, Inc.,*
    No. 4:20-CV-201-RGJ, 2023 WL 8604177 (W.D. Ky. Dec. 12, 2023) .................... 27

*McElwee v. Bryan Cowdery, Inc.,*
    No. 2:21-CV-1265, 2023 WL 4423880 (S.D. Ohio July 10, 2023) .......................... 28

*Mickles v. Country Club Inc.,*
    887 F.3d 1270 (11th Cir. 2018) ......................................................................... 26, 27

*Miller v. SBK Delivery, LLC,*
    No. 2:21-CV-4744, 2024 WL 862195 (S.D. Ohio Feb. 29, 2024) ............................ 27

*Mitchell v. Kentucky Fin. Co.,*
    359 U.S. 290 (1959) ................................................................................................. 19

*Moore v. Shearer's Foods LLC,*
   No. 5:22-CV-01017, 2024 WL 1119309 (N.D. Ohio Mar. 14, 2024)........................ 27

*Murphy v. Kettering Adventist Healthcare,*
   No. 3:23-CV-69, 2023 WL 6536893 (S.D. Ohio Oct. 5, 2023).................................. 28

*O'Brien v. Ed Donnelly Enterprises, Inc.,*
   575 F.3d 567 (6th Cir. 2009)................................................................................ 30, 31

*Parklane Hosiery Co. v. Shore,*
   439 U.S. 322 (1979)................................................................................................... 10

*Patrick v. S. Cent. Bell Tel. Co.,*
   641 F.2d 1192 (6th Cir. 1980)................................................................................... 9, 10

*Pickens v. Hamilton-Ryker It Sols., Inc.,*
   No. 3:20-CV-00141, 2024 WL 1337185, at *1 n.2 (M.D.Tenn. Mar. 28, 2024).29, 30

*Prickett v. DeKalb Cty.,*
   349 F.3d 1294 (11th Cir. 2003)................................................................................. 26, 27

*Richardson v. NES Glob., LLC,*
   No. CV H-20-223, 2024 WL 3852258 (S.D. Tex. Aug. 16, 2024) ........................... 15

*Ross-Berger Companies, Inc. v. Equitable Life Assur. Soc. of the U.S.,*
   872 F.2d 1331 (7th Cir. 1989).................................................................................. 9, 10

*Scottsdale Ins. Co. v. Flowers,*
   513 F.3d 546 (6th Cir. 2008).................................................................................... 4

*Sheet Metal Workers' Health & Welfare Fund v. L. Off. of Michael A. DeMayo, LLP,*
   21 F.4th 350 (6th Cir. 2021)..................................................................................... 4

*Spilman v. Harley,*
   656 F.2d 224 (6th Cir. 1981).................................................................................... 9

*Steiner v. Mitchell,*
   350 U.S. 247 (1956).................................................................................................. 19

*Taylor v. Sturgell,*
   553 U.S. 880 (2008).................................................................................................. 8

*Terry v. Tyson Farms, Inc.,*
   604 F.3d 272 (6th Cir. 2010).................................................................................... 8

*Tooker v. BluJay Sols., Inc.,*
   No. 1:22-CV-455, 2024 WL 1564735 (W.D. Mich. Apr. 11, 2024)....................... 28, 33

*Uniloc USA, Inc. v. Motorola Mobility LLC,*
   52 F.4th 1340 (Fed. Cir. 2022).................................................................................. 6, 8

*United States v. 5 Unlabeled Boxes,*
   572 F.3d 169 (3rd Cir. 2009) ............................................................... 6

*United States v. Cruz-Flores,*
   799 F. App'x 245 (5th Cir. 2020) ...................................................... 24

*Walling v. Morris,*
   155 F.2d 832 (6th Cir. 1946) ............................................................. 18

*Walling v. Yeakley,*
   140 F.2d 830 (10th Cir. 1944) ........................................................... 19

*Westwood Chem. Co. v. Kulick,*
   656 F.2d 1224 (6th Cir. 1981) ............................................................. 8

*Wilson v. Schlumberger Tech. Corp.,*
   80 F.4th 1170 (10th Cir. 2023) ..................................................... 15, 16

*Higgins v. Bayada Home Health Care Inc.,*
   62 F.4th 755 (3d Cir. 2023) ............................................................... 17

*Wirtz v. Mississippi Publishers Corp.,*
   364 F.2d 603 (5th Cir. 1966) ............................................................. 19

Statutes

29 U.S.C. 213(a)(1) ........................................................................20, 21, 24

29 U.S.C. § 216(b) ..............................................................................25, 26

Rules

FED. R. CIV. P. 19 ................................................................................. 33

FED. R. CIV. P. 20(a) ........................................................................... 33

Fed. R. Civ. P. 20 ................................................................................ 33

Rule 20 ............................................................................................... 33

Rules of the Supreme Court of the United States, Rule 31.1 ......................... 7

Regulations

29 C.F.R. 541.602(a)(1) ......................................................................... 2

29 C.F.R. 541.604(b) .......................................................................14, 17, 18

29 C.F.R. § 541.602(a) ........................................................................ 1, 3

29 C.F.R. § 541.602(b)(3) ...................................................................... 12

29 C.F.R. § 541.604(b) ...................................................................passim

*Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees*, 69 Fed. Reg. 22122,22184 (Apr. 23, 2004) ........ 11, 15, 17, 22

Other Authorities

18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure*, § 4433 (2d ed. 2002) ........................................................................ 6

Opinion Letter FLSA,
2018-25, 2018 WL 5921453 ................................................................... 17, 18

14 Fed. Reg. 7730 (Dec. 28, 1949) ........................................................... 15

*Restatement (Second) of Judgments* § 13 ...................................................... 6

## ARGUMENT

**A.    Introduction of the "salary basis" issue.**

HR-IT says its pay plan passes the "salary basis" test under 29 C.F.R. § 541.602(a). Pickens, along with the Fifth Circuit and the Department of Labor, assert HR-IT's pay plan is governed by 29 C.F.R. § 541.604(b). *See, e.g., Gentry v. Hamilton-Ryker IT Sols., L.L.C.*, 102 F.4th 712, 723 (5th Cir. 2024).

HR-IT purports to distinguish its pay plan from those covered by 604(b) by showing part of Pickens pay was paid on a salary basis. But both § 602(a) and § 604(b) require that at least part of the employee's pay be "paid on a salary basis." 29 C.F.R. § 541.602(a) & § 541.604(b). And a trait common to two different groups does not distinguish them. If we were trying to distinguish between a tiger and a zebra, saying "it's the one with the stripes" won't help. Since "we cannot simply 'cart § 604(b) off the stage' but must read sections 602(a) … and 604(b) in harmony[,]" *Gentry*, 102 F.4th at 723, what tells us whether HR-IT's pay falls under § 602(a) or § 604(b)?

The Fifth Circuit and the Department of Labor told HR-IT (specifically) the answer: It is the "basis" on which Pickens was paid. *Id.* at 720. A "weekly salary" pays the employee for a week's worth of work. *Id.* ("a weekly rate compensates employees for all work performed that week"); Department of Labor's Brief (Doc. 32) at 12-14. What HR-IT calls "Pickens' weekly guarantee was not his 'full salary' for each week, under the standard meaning of that term. Instead, for hours worked after the first eight hours each week, he was paid with 'regard to the number of … hours worked.'"

1

Department of Labor's Brief (Doc. 32) at 13 (quoting 29 C.F.R. 541.602(a)(1)); *Gentry*, 102 F.4th at 721 (because the "unit or method for calculating pay was by the hour," HR-IT pays "on an hourly basis and not by the week as § 602(a) requires"). Because the Fifth Circuit gave HR-IT a "full and fair opportunity" to prove its pay plan passes the salary basis test, HR-IT should be precluded from re-litigating that issue here.

However, even if litigated anew, it is clear HR-IT flunks the salary basis test because its "8 hour salary" isn't payment on a "weekly, or less frequent basis." 29 C.F.R. § 541.602(a)(1). A similar problem existed in *Helix Energy Solutions Group, Inc. v. Hewitt*, 598 U.S. 39 (2023). There, the plaintiff was "guaranteed" to earn more than the minimum *amount* of salary required, but that amount did not reflect his pay for a week, it represented his pay for just one day. HR-IT's "8-hour salary" covers an even smaller fraction of the week (it is *less than* Pickens's average day).  Nonetheless, HR-IT insists 8 hours' worth of pay represents a weekly salary. It isn't. Therefore, "'§ 602(a) does not govern this appeal because HR-IT did not compensate [Pickens] on a 'weekly basis.'" *Gentry*, 102 F.4th at 722.

Hoping to dirty the looking glass, HR-IT frames the issue (disingenuously) as: "Whether the district court correctly determined that because the compensation HR-IT paid to Pickens … satisfied § 602(a)'s salary basis test, HR-IT did not have to also satisfy the 'reasonable relationship' test under § 604(b)." Everyone agrees those "two [regulations] offer non-overlapping paths to satisfy the salary-basis requirement, with § 604(b) taking over where § 602(a) leaves off[.]" *Helix*, 598 U.S. at 56. However, the

regulations "must be read to complement each other" because "§ 602(a) … works in tandem with § 604(b)[.]" *Id.* at 55, 57.

Again, HR-IT attempts to distinguish between these independent, "non-overlapping paths" by pointing to a characteristic that is common to both paths (a guarantee of at least the minimum salary level "paid on a salary basis"). *Helix*, 598 U.S. at 56; 29 C.F.R. § 541.602(a) & § 541.604(b). The question is whether HR-IT is entitled to a reading of § 602(a) that "cart[s] § 604(b) off the stage[.]" That is, can HR-IT obtain the benefit of § 604(b)'s lower "guarantee" requirement (a predetermined payment that covers *less* than a week's worth of work) without the burden (ensuring the guarantee is reasonably related to the employee's actual earnings). The answer is no.

HR-IT's only argument that it "satisfied § 602(a)'s salary basis test" is that Pickens was guaranteed to receive an amount exceeding the salary *level* in each week that the worked. As the Fifth Circuit explained, in *Helix* the "Supreme Court dismissed [HR-IT's] argument that § 602(a) requires only that employees receive a preset and non-reducible sum [equal to or exceeding the minimum required salary level] each weekly pay period." *Gentry*, 102 F.4th at 720 (citing *Helix*, 598 U.S. at 52–53).

## B.    Collateral estoppel precludes HR-IT from arguing it can pass the salary basis test.

### 1.    Pickens didn't waive (or forfeit) collateral estoppel.

HR-IT asks this Court to find "Pickens waived the application of offensive collateral estoppel." Second Br. at 35. It claims "Pickens provided no explanation as to

how this case meets any exceptional circumstances for the Court to consider this argument raised for the first time on appeal." *Id.* at 32. Wrong on both counts.

"Before a party may present an issue for [this Court's] review, [the Court] customarily require[s] the party to raise the issue in the district court." *Sheet Metal Workers' Health & Welfare Fund of N. Carolina v. L. Off. of Michael A. DeMayo, LLP,* 21 F.4th 350, 355 (6th Cir. 2021) (citing *Greer v. United States*, 938 F.3d 766, 770 (6th Cir. 2019)). The Court "adhere[s] to this practice so that both the parties and this Court have the benefit of the district court's assessment of the issue when the case is taken up on appeal." *Id.* (citing *Foster v. Barilow*, 6 F.3d 405, 409 (6th Cir. 1993)). This practice is also "out of respect for the district court, as it would surely seem unfair to that court for a party to ask us to assign error to the district court on an issue the party never presented to the district court in the first instance." *Id.* It "also conserves the judiciary's time and resources by not requiring lower courts—who have burdensome dockets already—to re-adjudicate matters that should have been raised earlier." *Id.* "And it 'ensures fairness to litigants by preventing surprise issues from appearing on appeal.'" *Id.* (quoting *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008)).

These concerns don't apply here. The District Court **could not have** considered whether the Fifth Circuit's judgment in *Gentry* precludes HR-IT from arguing its pay plan passes the salary basis test. That's because the Fifth Circuit's judgment wasn't entered until May 24, 2024 (about a month after this appeal was filed). *Gentry v. Hamilton-Ryker IT Sols., L.L.C.,* No. 22-40219, Doc. 119 (5th Cir. May 24, 2024). And it didn't

become final until that Court denied HR-IT's motion to file rehearing out of time and issued its mandate. *See Gentry v. Hamilton-Ryker IT Sols., L.L.C.,* No. 22-40219, Docs. 136 (5th Cir. June 14, 2024) & 137 (June 17, 2024). By that time, the District Court here already lost jurisdiction because "both parties [had] filed a notice of appeal[.]" Order Denying HR-IT's Motion to Reconsider, RE 128.

HR-IT says Pickens should have raised collateral estoppel earlier because "the district court in *Gentry* had already issued its decision that HR-IT failed to satisfy §604(b)'s salary basis test" "[b]y the time the parties each filed their Motions for Summary Judgment on April 28, 2023[.]" Second Br. at 32 (citing *Gentry v. Hamilton-Ryker IT Sols., LLC,* No. 3:19-CV-00320, 2022 WL 658768 (S.D. Mar. 4, 2022)). But Pickens did inform the District Court that the relevant issued had already been decided in *Gentry. See, e.g.,* Pickens's NOSA, RE 83, PageID #: 1431 (Notice of Supplemental Authority). In the "Bottom Line Up Front" section of his Motion for Summary Judgment, Pickens told the lower court that the *Gentry* court granted "summary judgment against Hamilton-Ryker [HR-IT] based on the identical pay plan[.]" PageID #: 2014, 2017. And the first sentence of his response to HR-IT's motion for summary judgment states: "Hamilton-Ryker's pay scheme has already been found to violate the law." Pickens's Response to HR-IT's MSJ, RE 105, PageID #: 2681 (citing *Gentry,* 2022 WL 658768, at *7). Therefore, while Pickens did not use the term "collateral estoppel," he undoubtedly put the lower court "on notice that the issue presented has been previously decided." *Boseman v. Flint Police Dep't,* No. 2:23-CV-13139, 2024 WL 1142360,

at *2 (E.D. Mich. Mar. 15, 2024) (quoting *Arizona v. California*, 530 U.S. 392, 412 (2000)). This is precisely the sort of "special circumstance" that calls for a court to "raise the issue on its own accord[,]" even if not directly raised by a party. *Id.*

Further, when the parties were briefing their motions (between April and June 2023), they were also briefing HR-IT's appeal in *Gentry*. *See Gentry v. Hamilton-Ryker IT Sols., L.L.C.,* No. 22-40219, Docs. 50 (5th Cir. April 12, 2023), 57 (June 12, 2023) & 66 (July 10, 2023). Even if the district court's decision in *Gentry* was sufficiently "final" for purposes of collateral estoppel, HR-IT would have undoubtedly raised the same "fairness" arguments it raises on appeal. *See, e.g.,* Second Br. at 34.[1]

Pickens nonetheless kept the District Court on notice of the developments in *Gentry*. On July 24, 2023, the Fifth Circuit issued its first decision affirming the district court's order. *Gentry v. Hamilton-Ryker IT Sols., L.L.C.,* No. 22-40219, 2023 WL 4704115, at *1 (5th Cir. July 24, 2023). Just 3 days later, Pickens notified the District Court and

---

[1] Courts are not unaware of the impact of applying collateral estoppel when a judgment is on appeal. *See Uniloc USA, Inc. v. Motorola Mobility LLC,* 52 F.4th 1340, 1348 (Fed. Cir. 2022) (citing *United States v. 5 Unlabeled Boxes*, 572 F.3d 169, 175 (3rd Cir. 2009) & 18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure*, § 4433 (2d ed. 2002)). "As recognized in *5 Unlabeled Boxes*, the rule that a decision is final for the purposes of preclusion while that decision is pending appeal creates '[s]ubstantial difficulties.'" *Id.* (quoting Wright & Miller § 4433, at 79). "The major problem is that a second judgment based upon the preclusive effects of the first judgment should not stand if the first judgment is reversed." *Id.* (quoting Wright & Miller § 4433, at 79); *see also Restatement (Second) of Judgments* § 13, cmt. f. "If preclusion is raised while the preclusive judgment is pending appeal, it is possible the final outcome will be the grotesque result of perpetuating a judgment that rests on nothing more than a subsequently reversed judgment." *Id.* at 1348-49 (cleaned up). *See* Pickens's First Brief at 13-15 for a more detailed discussion.

that HR-IT's attempts to "discount" *Gentry* were no longer valid. Pickens's NOSA, RE 113, Page ID #: 2773-2821.

In response, HR-IT told the District Court it "[would] be filing a Petition for Panel Rehearing … as well as a Petition for Rehearing En Banc[.]" HR-IT's Response to Pickens's NOSA, RE 114, Page ID #: 2824. HR-IT followed through that same day. *Gentry v. Hamilton-Ryker IT Sols., L.L.C.,* No. 22-40219, Docs. 50 & 51 (5th Cir. August 7, 2023). And the Fifth Circuit ultimately granted HR-IT's request and withdrew its first opinion. *Gentry v. Hamilton-Ryker IT Sols., L.L.C.,* No. 22-40219, 95 F.4th 219 (5th Cir. 2024).[2] Because of *Gentry*'s status on appeal, the lower court's opinion "does not address the *Gentry* opinion" at all. MSJ Memorandum Order, RE 117, PageID #2861. But HR-IT has now had a "full and fair opportunity" to litigate its appeal as of right. It lost. *Gentry*, 102 F.4th at 726. Now that *Gentry* is final, it cannot relitigate that issue here.

If the goal of collateral estoppel is to "protect parties from … potentially inconsistent decisions, as well to conserve judicial resources[,]" *Gentry* should be

---

[2] HR-IT says Pickens's position on the finality of *Gentry* is "disingenuous at best given that the same concerns regarding preclusion when the prior case is on appeal were still present at the time he filed his Opening Brief." Second Br. at 33. It says, "[a]t the time Pickens filed his Opening Brief …, Hamilton-Ryker's deadline to seek further review of the Fifth Circuit's decision in Gentry had not elapsed." *Id.* at 33 n.17 (citing *Gentry*, 102 F.4th 712; Rules of the Supreme Court of the United States, Rule 31.1). But pursuing an appeal as of right (as HR-IT was doing prior to the final *Gentry* decision) is materially different from *requesting* the extraordinary relief of rehearing en banc or a writ of certiorari. With its appeal as of right with respect to the issue at the heart of this case now concluded, HR-IT can't avoid the application of collateral estoppel by simply saying it's still possible *Gentry* isn't final. It's HR-IT who is being disingenuous.

applied. *Harvis v. Roadway Express, Inc.,* 973 F.2d 490, 495 (6th Cir.1992); *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). This Court should "conclude that forfeiture is not appropriate here." *Uniloc,* 52 F.4th at 1349; *see also Lesher v. Lavrich,* 784 F.2d 193, 195–96 (6th Cir. 1986); *Westwood Chem. Co. v. Kulick,* 656 F.2d 1224, 1228 (6th Cir. 1981) (citing *Hart Steel Co. v. Railroad Supply Co.,* 244 U.S. 294 (1917), where a "defendant's motion for affirmance to the Seventh Circuit based on res judicata was found to be timely and proper where same action had been pending in both the Sixth and Seventh Circuits and the Sixth Circuit was first to render a final judgment against plaintiff").

### 2.    HR-IT can't argue its pay plan passes the salary basis test.

HR-IT doesn't dispute that "[a]ll 4 criteria [for offensive collateral estoppel] are readily apparent in this case." First Br. at 11; *see* Second Br. at 34-35. Instead, it tries to avoid estoppel by saying (1) Fifth Circuit precedent isn't binding on this Court, Second Br. at 33 n.16; and (2) "the principals of fairness preclude the application of collateral estoppel here" because Pickens "wait[ed] until the lower Court disagreed with *Gentry* to seek to force the application of the *Gentry* decision on this court." *Id.* at 34 (italics added).

Of course, neither the lower court nor this Court are "bound by the law of other Circuits[.]" *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 278 (6th Cir. 2010); *Hillman Power Co., LLC v. On-Site Equip. Maint., Inc.,* 582 F. Supp. 3d 511, 515 (E.D. Mich. 2022). But the question here is whether **HR-IT** is bound because it fully litigated the issue of whether its pay plan satisfies the salary basis test (and lost). *Gentry*, 102 F.4th at 726.

Collateral estoppel should be applied where "all the requirements of collateral estoppel [been] met." *Spilman v. Harley,* 656 F.2d 224, 228 (6th Cir. 1981). There's no dispute they are all present here. Moreover, as discussed above, Pickens didn't "wait" until the District Court disagreed with *Gentry* to bring it to the District Court's attention. Now that *Gentry* is indisputably "final" and HR-IT was given a "full and fair opportunity" to litigate its appeal as of right, collateral estoppel is appropriately applied.

HR-IT says "fairness precludes the application of collateral estoppel" because "Pickens could have consolidated his claims with Gentry[.]" Second Br. at 34. According to HR-IT, "whether [Pickens] could have been joined in [*Gentry*]" is a "*key factor* when determining whether fairness precludes the application of collateral estoppel." *Id.* (emphasis added). But Pickens shouldn't be denied the offensive use of collateral estoppel merely because he could have joined *Gentry. See In re First Actuarial Corp. of Illinois,* 182 B.R. 178, 185 (Bankr. W.D. Mich. 1995); *Ross-Berger Companies, Inc. v. Equitable Life Assur. Soc. of the U.S.,* 872 F.2d 1331, 1337 (7th Cir. 1989) (There is no "'mandatory rule' precluding the use of offensive collateral estoppel where the plaintiff could easily have joined the earlier action.").

HR-IT conspicuously avoids the other factors relevant to whether "offensive estoppel would be unfair to a defendant." *Patrick v. S. Cent. Bell Tel. Co.,* 641 F.2d 1192, 1199 (6th Cir. 1980). That's because (1) the Southern District did not deny it access to any procedures available in this case; (2) HR-IT was not forced to litigate *Gentry* "in an inconvenient forum; (3) HR-IT had every "incentive to litigate in [*Gentry*];" (4) HR-IT

9

"had a full and fair opportunity to litigate the prior action;" and (5) there are no other "reasons for unfairness" in applying issue preclusion. *Jackson v. Renfrow,* No. 1:13-CV-00116-TBR, 2014 WL 1514320, at *3 (W.D. Ky. Apr. 16, 2014) (citing *May v. Oldfield,* 698 F.Supp. 124, 126 (E.D.Ky.1988) & *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 331-32 (1979)). HR-IT relies solely on its claim "Pickens could have consolidated his claims with Gentry[.]" Second Br. at 34. Even if true, that isn't enough. *In re First Actuarial,* 182 B.R. at 185; *Ross-Berger,* 872 F.2d at1337.

At bottom, all the elements for offensive collateral estoppel are present. The only "fairness" consideration HR-IT raises is that Pickens could have joined *Gentry.* The other 5 "fairness" factors favor application of collateral estoppel. The Court thus can— and should—find HR-IT is precluded from arguing its pay plan passes the salary basis test. *See Patrick,* 641 F.2d at 1199 (Courts have "broad discretion in determining when [offensive collateral estoppel] should be applied.").

## C.   The District Court erred finding HR-IT paid Pickens on a salary basis.

HR-IT says all it needed to do was guarantee some amount of money each week to Pickens—no matter how low as long as it was above $684—and it would pass the salary basis test. Second Br. at 22-23 ("Here, since Plaintiffs' weekly guaranteed salaries met § 602(a), the salary basis inquiry ended there and [*Helix*] mandates that § 604(b) does not apply."). HR-IT says "the Supreme Court emphasized that the purpose of the 'salary basis' test is to 'ensur[e] that the employee will get **at least part** of his compensation through a preset weekly (or less frequent) salary, not subject to reduction

10

because of exactly how many days he worked.'" *Id.* at 24 (quoting *Helix,* 598 U.S. at 46). HR-IT accuses Pickens—and the Fifth Circuit and the Department of Labor—of "misread[ing] [*Helix*] completely out of context [and] ignor[ing] the plain language of § 602(a). *Id.* But it's HR-IT, not Pickens, who is misreading *Helix* and the regulations.

As the Supreme Court puts it, "the whole point of the salary-basis requirement" is to ensure workers are only exempt if they receive a "true salary." *Helix,* 598 U.S. at 60. A "true salary [is] a steady stream of pay, which the employer cannot much vary and the employee may thus rely on week after week." *Id.* at 47 (citing *Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees,* 69 Fed. Reg. 22122, 22184 (Apr. 23, 2004)). According to HR-IT, there is nothing wrong if "employees … routinely receive weekly pay of $1,500 or more and yet be guaranteed only the minimum required $455 (thus effectively allowing the employer to dock the employee for partial day absences)." 69 Fed. Reg. at 22184. But there's no doubt "[s]uch a pay system would be inconsistent with the salary basis concept[.]" *Id.*; *Brock v. Claridge Hotel & Casino,* 846 F.2d 180, 185 (3rd Cir. 1988); *Hewitt v. Helix Energy Sols. Grp., Inc.,* 15 F.4th 289, 294 (5th Cir. 2021). If employers could guarantee workers a small amount and make most of their usual weekly salary dependent on the number of hours worked, the "salary guarantee would be nothing more than an illusion." *Id.*; *Brock,* 846 F.2d at 185; *Hewitt,* 15 F.4th at 294.

HR-IT's "salary guarantee" is an illusion. HR-IT says it paid Pickens a "Guaranteed Weekly Salary of $800, plus additional compensation at a rate of $100/hr

for whenever he worked more than eight hours." Second Br. at 6 (citing Pickens Offer Letter, RE 97-19, Page ID #: 1701). "Throughout his employment, Pickens … total hours varied each workweek from as little as 28 hours to as high as 83 hours each workweek." *Id.* (citing Pickens Timesheets, RE 100-8, Page ID #: 2190-2255). That means Pickens actual weekly earnings were at least $2,800, 3.5 times his "guarantee." In his highest week, Pickens earned $8,300, more than 10 times his "guarantee."

Because 8 hours represents pay for *less than* an average day, it offered him no protection from partial day deductions. For example, Pickens's workweeks often worked 5, 10-hour days, he would have earned his "weekly salary" before the end of his first day. If he left an hour early to attend a parent teacher conference and then had jury duty for the rest of the week, he would not even be entitled to a full day's pay, let alone his "full salary for [that] week." *Helix*, 598 U.S. at 46. This is despite § 602(a)'s requirement that Pickens be paid his "full salary for [the] week … without regard to the number of days or hours worked" and § 602(b)'s prohibition on reducing Pickens's pay for days missed due to jury duty. 29 C.F.R. § 541.602(b)(3). HR-IT's efforts to reframe its 8-hour guarantee as a "Guaranteed Weekly Salary" is a sham.

HR-IT argues (and the lower court agreed) its 8-hour "guarantee" constitutes a "weekly salary" and thus satisfies § 602(a), such that "the pay scheme 'does not also have to meet § 604(b) to make a worker exempt.'" MSJ Memorandum Order, RE 117, Page ID # 2860 (quoting *Helix*, 598 U.S. at 50, n.3); *see also* Second Br. at 23-29. But, as the Supreme Court explained, § 602(a) can't be read in a manner that would "subvert §

604(b)'s strict conditions on when [hourly] pay counts as a 'salary.'" *Helix*, 598 U.S. at 56. Instead, "§ 602(a) and … § 604(b) … must be read to complement each other." *Id.* at 67. "HR-IT's interpretation impermissibly … offers a runaround to [§ 604](b)'s reasonable relationship test." *Gentry*, 102 F.4th at 723. But HR-IT "cannot simply cart § 604(b) off the stage." *Id.* (cleaned up, citing *Helix*, 598 U.S. at 56).

Pickens "did not get a salary … because his weekly take-home pay could be as little as $[800] or as much as $[8,300[3]], depending on how many [hours] he worked." *Helix*, 598 U.S. at 54, n. 5. That's "not" a "salary." *Id.* "*Helix* and [the regulations] require courts to take a hard look at whether a purported 'salary' truly compensates employees for a week's worth of work or, instead, provides an artificial distinction between a salary and additional compensation." *Gentry*, 102 F.4th at 725. The Court doesn't have to look very hard to see that describes HR-IT's pay plan—an "artificial distinction."

HR-IT claims the Department of Labor's (DOL) regulations confirm its interpretation. Second Br. at 26-29. They don't. HR-IT says § 604(a) allows it to pay Pickens additional compensation on an hourly basis without losing the exemption. *Id.* at 26. HR-IT says Pickens (as well as the Department of Labor) is wrong to say "§ 604(a) permits additional pay only for hours 'beyond the normal workweek." *Id.* (cleaned up). It says that "position is not supported by the actual text of § 604(a)[,]" even implying the DOL agrees. *Id.* at 26-27. But HR-IT already knows from *Gentry* that

---

[3] Paystub, RE 100-7, Page ID # 2164.

it couldn't be more wrong. *Gentry*, 102 F.4th at 717 (noting the DOL submitted an amicus rejecting HR-IT's position).

In this case, the first paragraph of the Department of Labor's amicus brief states an "employer may pay additional hourly compensation for hours worked *beyond* the normal workweek, but may not pay hourly compensation for hours worked *within* the normal workweek." Dept. of Labor Amicus Br. at 2 (citing 29 C.F.R. 541.604(a)). "Alternatively, the employer may compute pay on an hourly (or daily or shift) basis for hours within the normal workweek and still satisfy the salary-basis requirement, but only if the employer provides a weekly guarantee resembling a full salary—one roughly equivalent to pay for the employee's normal workweek." *Id.* (citing 29 C.F.R. 541.604(b)). "Either route ensures exempt employees have a stable and predictable salary, which the Department has long required to indicate the requisite status for the exemption." *Id.* The DOL's position is clear, HR-IT can't pay Pickens hourly compensation for hours within the normal workweek unless it satisfies § 604(b)'s reasonable relationship test.

HR-IT doubles down saying "The District Court's Decision Conforms With Post-[*Helix*] Courts That Have Applied § 602(A) To Hybrid Compensation Schemes Like HR-IT." Second Br. at 30-31. But HR-IT stumbles right out of the gate by arguing the Fifth Circuit's decision in *Hebert v. FMC Technologies* supports the lower court's decision. *Id.* at 30 (citing *Hebert v. FMC Technologies, Inc.*, 2023 WL 4105427 (5th Cir. June 21, 2023)).

But the "unpublished Fifth Circuit opinion in *Hebert* … concerned additional pay that was a 'premium payment for … specific services' during abnormal times and in different locations than the usual employment conditions." *Richardson v. NES Glob., LLC,* No. CV H-20-223, 2024 WL 3852258, at *3 (S.D. Tex. Aug. 16, 2024) (citing *Hebert,* 2023 WL 4105427 at *2). Moreover, the Fifth Circuit expressly rejected HR-IT's interpretation of *Hebert* in *Gentry.* The Court of Appeals noted "*Hebert* is fully consistent with [*Gentry*] as the [*Hebert*] record indicated that Hebert's biweekly salary was a function of this annual salary and roughly equated the hours worked during his normal workweek." *Gentry,* 102 F.4th at 725 n.70. So *Hebert* is "consistent with [the] conclusion that a salary must provide a weekly rate." *Id.* "Hebert's premium payments constituted true, additional compensation under § 541.604(a) because they were in addition to this weekly rate." *Id.*

In contrast, HR-IT's 8-hour "salary" with hourly payments is an artificial division of Pickens' "pay into a 'salary' and additional compensation in order to avoid paying employees a true salary." *Gentry,* 102 F.4th at 719 n.22 (citing 14 Fed. Reg. 7730 (Dec. 28, 1949)). That isn't allowed. *Id.*; Dept. of Labor Br. at 8, n.3 (explaining how the regulations have long prohibited employers from using a "guaranteed minimum" plus hourly pay to "circumvent" the "requirement that the employer pay the full salary in any week in which any work was performed"). In fact, that's why the reasonable relationship test in § 604(b) exists. *Id.* (citing 69 Fed. Reg. 22122, 22184 (Apr. 23, 2004)).

*Wilson* doesn't help HR-IT either. *Cf.* Second Br. at 31 (citing *Wilson v. Schlumberger Tech. Corp.*, 80 F.4th 1170 (10th Cir. 2023)). The factual differences between this case and *Wilson* are problematic for HR-IT. Even the "Tenth Circuit acknowledged [HR-IT's pay plan] is factually dissimilar" to Schlumbergers's. *Gentry,* 102 F.4th at 725 (citing *Wilson*, 80 F.4th at 1179 n.4). "In [*Wilson*], the Tenth Circuit found that a measurement-while-drilling operator was paid on a salary basis when he was guaranteed a fixed, biweekly salary in addition to extra compensation for time spent on a drilling rig." *Id.* (citing *Wilson*, 80 F.4th at 1173). "The court held that the employee was paid on a salary basis because he received the 'same salary every week' which was 'not based upon his hours, days, or shifts of work.'" *Id.* (citing *Wilson*, 80 F.4th at 1177).

But the Tenth Circuit noted the "stark contrast in fact patterns" presented by HR-IT's pay plan because DR-IT's alleged salary "was computed on an hourly basis." *Wilson*, 80 F.4th at 1179 n.4. And both Courts of Appeal agree the two pay plans (HR-IT's and Schlumberger's) are so dissimilar that "logic" doesn't transfer. *Wilson*, 80 F.4th at 1179 n.4; *Gentry,* 102 F.4th at 725. Unfortunately, the lower court ignored those differences. *See* MSJ Memorandum Order, RE 117, Page ID # 2860-62.

HR-IT also cites *Higgins v. Bayada Home Health* (Second Br. at 30-31), but the plaintiffs in that case never "alleged …. that the reasonable relationship test has not been satisfied." *Higgins v. Bayada Home Health Care, Inc.*, No. 3:16-CV-02382, 2021 WL 4306125, at *10 (M.D. Pa. Sept. 22, 2021), aff'd, 62 F.4th 755 (3d Cir. 2023). Instead, the issue was "[w]hether PTO is part of an employee's salary for the purposes of the

FLSA[.]" *Higgins*, 62 F.4th at 757. But here, Pickens alleges—and the Fifth Circuit and Department of Labor have confirmed—HR-IT's pay plan must satisfy § 604(b)'s reasonable relationship test to take advantage of its claimed exemption.

And HR-IT can't pass the reasonable relationship test. To qualify as a *bona fide* "salary," the "guaranteed amount" must be "reasonably related" to compensation "actually earned." 29 C.F.R. § 541.604(b). That is, the "weekly salary guarantee" must be "roughly equivalent to the employee's usual earnings at the assigned hourly … rate for the employee's normal scheduled workweek." *Id.* A "1.5-to-1 ratio of actual earnings to guaranteed weekly salary is a 'reasonable relationship' under the regulations." DOL Opinion Letter FLSA 2018-25, 2018 WL 5921453, at *2 (citing 29 C.F.R. § 541.604(b)); Hewitt, 15 F.4th at 300 (Ho, J., concurring); *Cayton v. Metropolitan Government Of Nashville & Davidson County*, No. 3:20-CV-00859, 2022 WL 183437, at *3 (M.D. Tenn. Jan. 19, 2022); see also Dep't of Labor, Wage & Hour Div., *Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees*, 69 Fed. Reg. 22122, 22184 (Apr. 23, 2004). Administrations of all political persuasions have confirmed for decades that a "salary" amounting to a fraction of a normal week's pay isn't enough. See DOL Opinion Letter FLSA 2018-25, 2018 WL 5921453, at *2 (employees who usually work 53 hours a week aren't paid on a "salary basis" if their alleged "weekly guarantee" is only 30 hours of pay); DOL Opinion Letter FLSA 437 (May 7, 1993) (employees who typically work 42 hours a week aren't paid on a "salary basis" if the alleged "guarantee" is just 20 hours' worth of pay).

17

HR-IT fails § 604(b)'s reasonable relationship test in impressive fashion. Pickens "usual earnings"—based on the hours he worked—always dwarfed the alleged "weekly base salary." 29 C.F.R. § 541.604(b); Pickens's Statement of Fact, RE 100, Page ID # 2037 ¶ 10; Declaration of Omid Afhami, RE 100-3, Page ID # 2072 ¶ 9; Reasonable Relationship Table, RE 100-4, Page ID # 2075-2105; Reasonable Relationship Summary, RE 100-5, Page ID # 2106-07. "The regulations explain that a salary is 'roughly equivalent' to an employee's weekly earnings when the ratio of usual earnings to salary is 1.5 to 1." *Gentry,* 102 F.4th at 720. But ratios that are "nearly 1.8" to 1, "close to double", "materially exceed the permissible ratios[.]" DOL Opinion Letter FLSA2018-25, 2018 WL 5921453, at *2. Pickens's ratio was at least 3.5 to 1 in every one of the 65 weeks Pickens worked. Reasonable Relationship Table, RE 100-4, Page ID # 2087-89. Pickens's average ratio was **6.47 times** his 8-hour "salary." *Id.*

In short, this is an easy one: HR-IT fails the reasonable relationship test and, hence, the salary basis test.

**D.   The salary basis test is valid, including the reasonable relationship test.**

In a last-ditch effort to avoid responsibility for its actions, HR-IT says the salary basis is invalid because it exceeds the DOL's authority to define and delimit the FLSA's white-collar exemptions. *See* Second Br. at 35-47. Supreme Court and appellate precedent, not to mention Congress, say otherwise.

Nearly 80 years ago, this Court affirmed the Secretary's ability to "define and delimit" the exemptions by using the salary basis test as "well established." *Walling v.*

*Morris*, 155 F.2d 832, 836 (6th Cir. 1946), *vacated on other grounds,* 332 U.S. 442 (1947). Indeed, every Circuit to have addressed the issue has found the salary requirements valid. *See Wirtz v. Mississippi Publishers Corp.*, 364 F.2d 603, 608 (5th Cir. 1966); *Craig v. Far W. Eng'g Co.*, 265 F.2d 251, 259 (9th Cir. 1959); *Walling v. Yeakley*, 140 F.2d 830, 833 (10th Cir. 1944) ("salary is a pertinent criterion and we cannot say that it is irrational or unreasonable to include it in the definition and delimitation"). Further, the Supreme Court upheld a component of "the salary-basis test" concerning disciplinary deductions as "a permissible reading of the statute." *Auer v. Robbins*, 519 U.S. 452, 456-458 (1997).

If that weren't enough (and it is), Congress ratified the use of a salary basis test to define and delimit the exemptions. *See* Dept. of Labor Br. at 25-26. "When Congress amended the [FLSA] in 1949 it provided that pre-1949 rulings and interpretations by the Administrator should remain in effect unless inconsistent with the [1949 statutory amendments]." *Mitchell v. Kentucky Fin. Co.*, 359 U.S. 290, 292 (1959); *see* Fair Labor Standards Amendments of 1949, ch. 736, § 16(c), 63 Stat. 920 (ratifying "[a]ny order, regulation, or interpretation" then in effect under the FLSA). Congress accordingly "underst[ood]" and ratified the regulations imposing the salary-basis requirement. *Steiner v. Mitchell*, 350 U.S. 247, 255 & n.8 (1956); *see Alstate Const. Co. v. Durkin*, 345 U.S. 13, 16-17 (1953) (declining to "repudiate an administrative interpretation of the [FLSA] which Congress refused to repudiate" in 1949).

Most recently, a unanimous Fifth Circuit panel affirmed the use of a "salary" test is consistent with the DOL's authority to "define and delimit" the FLSA exemptions.

*See Mayfield v. U.S. Dep't of Labor*, No. 23-50724, 2024 WL 4142760, at *7 (5th Cir. Sept. 11, 2024). The Fifth Circuit recognized 29 U.S.C. § 213(a)(1) is "an uncontroverted, explicit delegation of authority," such that the relevant question for courts is whether the DOL's interpretation "is within the outer boundaries of that delegation." *Id.* at *4 (citing *Loper Bright Enters. v. Raimondo,* 144 S. Ct. 2244, 2268 (2024)). Like HR-IT does here, the plaintiffs in *Mayfield* argued "the statute only speaks of duties." *Id.*; *see also*, Second Br. at 39 (arguing only duties can be considered for exemption). The Fifth Circuit disagreed.

"Using salary level as a criterion for EAP status" has a "strong[] textual foundation." *Mayfield*, 2024 WL 4142760, at *4. The terms of § 13(a)(1), "connote a particular status or level for which salary may be a reasonable proxy." *Id.* It also noted the "broader structure" of the FLSA "sets out a series of salary protections for workers that common sense indicates are unnecessary for highly paid employees." *Id.* Moreover, Supreme Court precedent instructs that courts "must respect" the Department of Labor's broad "delegation, while ensure that the agency acts within it." *Loper Bright*, 144 S. Ct. at 2273. More specifically, "because there is an uncontroverted, explicit delegation of authority, the question is whether the Rule is within the outer boundaries of that delegation." *Mayfield,* 2024 WL 4142760, at *4. Even if "Congress acted intentionally by omitting a salary requirement[,] … that does not mean that the power it conferred excludes the option of imposing the requirement." *Id.* at *5.

20

The Court should "start with the text of the explicit delegation, which gives DOL the authority to 'define[ ] and delimit[ ]' the terms of the Exemption." *Id.* at *4 (quoting 29 U.S.C. § 213(a)(1)). "'Define' means to set forth or explain what a word (or expression) means. 'Delimit' means to mark or determine (a limit or boundary) of something." *Id.* (cites omitted). "By promulgating the [Salary Basis Regulations], DOL defines, in part, what it means to work in an executive, administrative, or professional capacity (namely, to [be paid a salary])." *Id.* "This tracks the simple fact that a definition can rely on multiple types of characteristics. For example, the definition of 'bachelor'— an 'unmarried man'—uses both gender and marital status." *Id.* (cites omitted). "The Minimum Salary Rule can also be construed as an exercise of the power to delimit the scope of the Exemption." *Id.* "By promulgating the Rule, DOL sets a limit on what is otherwise defined by the text of the Exemption. On either construal of what DOL is doing when it promulgates the Rule, its action is within the scope of its authority." *Id.*

While *Mayfield* addressed the salary level test, it applies equally to the salary basis test. "It is important here to clarify the relationship between the salary level test (that the plaintiff in *Mayfield* was concerned with) and the salary basis test (what the instant case is concerned with)." *Alvarez v. NES Global LLC,* No. 4:20-CV-01933, 2024 WL 4309989, at *4 (S.D. Tex. Sept. 26, 2024). "The Secretary of Labor has laid out three distinct criteria that must be satisfied for the EAP Exemption to apply." *Id.* at 9 (citing *Helix*, 598 U.S. at 45). "First is the 'salary basis' test, where that 'an employee can be a bona fide executive only if he receives a 'predetermined and fixed salary'—one that

does not vary with the precise amount of time he works.'" *Id.* (quoting *Helix*, 598 U.S. at 45). "The second element is the 'salary level' test which requires that an employee's 'preset salary' exceeds a specified amount." *Id.* "Third, the job duties test assesses the employee's job responsibilities." *Id.* "One must first satisfy the salary basis test to reach the salary level test—indeed, the question of the amount of a preset salary does not become relevant to the DOL's analysis until it is determined whether an employee is paid by a pre-set salary at all." *Id.* "In this way, the salary level test *encompasses* the salary basis test." *Id.*

Thus, *Mayfield* confirms that the DOL is well within its authority to promulgate the salary basis regulations. *See Alvarez*, 2024 WL 4309989, at *4-5; *see also*, Dept. of Labor Br. at 23-26. This includes the reasonable relationship test. HR-IT says at the very least the reasonable relationship test is invalid because "[t]he fact that an employee receives significant additional compensation on top of such 'screening' minimum salary threshold provides no indication that the employee is not employed in a bona fide executive, administrative, or professional capacity." Second Br. at 46. But it's not about how much the employee receives. It's about ensuring supposedly exempt employees receive a "true salary." *Helix*, 598 U.S. at 47.

The "conditions [of § 604(b), the reasonable relationship test] create a compensation system functioning much like a true salary—a steady stream of pay, which the employer cannot much vary and the employee may thus rely on week after week." *Helix,* 598 U.S. at 47 (citing 69 Fed. Reg. 22184). Without the reasonable

22

relationship test, an employer like HR-IT could concoct a payment plan where its employees' pay varies directly with the number of hours worked. *See* Pickens's Memorandum in Support of MSJ, RE 99, Page ID #: 2021-24. Such a plan reflects that HR-IT "wishes *neither* to pay employees a true salary *nor* to pay [Pickens] overtime." *Helix*, 598 U.S. at 60. "And the whole point of the salary-basis requirement is to take that third option off the table[.]" *Id.* The reasonable relationship test is how the salary basis test "take[s] that third option off the table." *Id.*

HR-IT apparently thinks that striking the reasonable relationship test would allow it to pass the salary basis test. It wouldn't. HR-IT fails under § 602(a) because its "guaranteed weekly salary" failed "to provide a weekly rate"—i.e.—it does not "compensate employees for all work performed that week." *Gentry*, 102 F.4th at 721. Section 604(b) reduces the amount that must be "guaranteed" in order to pass the salary basis test by permitting the employer to "guarantee" as little as 66% of the employee's "usual earnings" for the workweek. 29 C.F.R. § 541.604(b). That benefit comes with the burden of making sure the guaranteed amount is reasonable, striking § 604(b) would prohibit employers from taking advantage of § 604(b)'s lower weekly guarantee. As the Department of Labor explained in *Helix*, adopting HR-IT's "position would therefore change the rules for numerous employers, newly requiring that they pay overtime to [Highly Compensated Employees] who currently are exempt only because of Section 541.604(b)[.]" *See* Department of Labor Brief as Amicus Curiae at 30, *Helix*, 598 U.S.

39 (available here). It makes no sense to punish those employers, particularly when HR-IT disclaims any reliance on § 604(b) to show compliance with the FLSA.

The "salary-basis test, in largely the form it exists today, goes back to nearly the FLSA's beginnings." *Helix,* 598 U.S. at 60 (cites omitted). The reasonable relationship requirement has been around for decades, and is part and parcel of "defining and delimiting" the exemptions. 29 U.S.C. § 213(a)(1); 29 C.F.R. § 541.604(b); *Brock*, 846 F.2d at 185 (applying the Department's long-standing interpretation to a "salary plus hour[ly]" plan). This Court should decline HR-IT's request "to invalidate the salary basis requirement (or, at minimum, the reasonable relationship portion of the requirements) as exceeding the DOL's authority to 'define[ ] and delimit[ ]' the FLSA's White-Collar exemptions." *Alvarez*, 2024 WL 4309989, at *2.

## E.    The DOL's regulations are still entitled to *Auer* deference.

HR-IT says "This Court May No Longer Afford The Dol Deference In Light Of The Supreme Court's New Standard Of Review In *Loper Bright*." Second Br. at 36-37. That's not entirely accurate. Though the Supreme Court did eliminate *Chevron* deference (*see Loper Bright,* 144 S. Ct. at 2263), *Auer* deference remains. *See* DOL's Amicus Br. at 21; *United States v. Cruz-Flores,* 799 F. App'x 245, 246 (5th Cir. 2020) ("*Kisor* addressed the continuing viability of the deference afforded to an agency's interpretations of its own regulations pursuant to *Auer*[.]").

"Discussing what is commonly referred to as *Auer* deference, the Supreme Court … clarified in *Kisor v. Wilkie* that courts should provide deference to an agency's

interpretation of its regulation when the regulation is 'genuinely ambiguous,' … and—assuming the interpretation is reasonable—when "the character and context of the agency interpretation entitles it to controlling weight." *Audi v. Barr,* 839 F. App'x 953, 962 (6th Cir. 2020) (citing *Kisor v. Wilkie,* 588 U.S. 558, 574-79 (2019)). "The Supreme Court noted that *Auer* deference is based on the presumption that Congress would generally want the agency to play the primary role in resolving regulatory ambiguities, which stems from the belief that the agency is in the better position to reconstruct its original meaning." *Id.* (cleaned up). So if the regulations are ambiguous, the DOL's interpretation is entitled to deference.

## F.    The District Court didn't err by finding the Opt-in Plaintiffs weren't bound by its judgment.

HR-IT says "the District Court erred in finding the Opt-in Plaintiffs were not party plaintiffs." Second Br. at 47-60. It didn't. In *Clark*, this Court said "'other employees' become parties to an FLSA suit (as opposed to mere recipients of notice) only after they opt in **and the district court determines—not conditionally, but conclusively**—that each of them is in fact 'similarly situated' to the original plaintiffs." *Clark v. A&L Homecare & Training Ctr., LLC,* 68 F.4th 1003, 1009 (6th Cir. 2023) (citing 29 U.S.C. § 216(b); *Canaday v. Anthem Companies, Inc.*, 9 F.4th 392, 403 (6th Cir. 2021) (emphasis added). The District Court said it had not made that "conclusive" determination. MSJ Memorandum Order, RE 117, Page ID # 2855 n.2. Thus, the

District Court was right that "the only plaintiff is Lynwood Pickens" and its order only applied to Pickens. *Id.*

1.    **HR-IT is wrong about *Clark*.**

HR-IT begins by saying "*Clark* does not change the conclusion that the opt-in plaintiffs became party plaintiffs when they filed their consents." Second Br. at 48-51. HR-IT says "*Clark* sets forth a new framework for when court-approved notice of an FLSA action may be distributed. It does not establish a new standard on when an opt-in becomes a party plaintiff in a FLSA action." *Id.* at 49. HR-IT is wrong.

It accused the District Court of being "hyper-focused" on a "single sentence from *Clark*[.]" *Id.* But that sentence is critical. This Court emphasized how critical by saying "[t]he issue is not one of semantics." *Clark*, 68 F.4ᵗʰ at 1009. "[C]ourts have mistakenly assumed that 'conditional certification' actually changes the character of the case. For example, any number of courts have asserted that, after conditional certification, the case then 'proceeds' as a 'collective' or even a 'representative' action." *Id.* (citing *Brittmon v. Upreach, LLC*, 285 F.Supp.3d 1033, 1042 (S.D. Ohio 2018); *Mickles v. Country Club Inc.*, 887 F.3d 1270, 1276 (11th Cir. 2018)). *Clark* rejects that way of thinking. *Id.* ("Those assertions are mistaken"). That's because "'other employees' become parties to an FLSA suit (as opposed to mere recipients of notice) only after they opt in **and the district court determines—not conditionally, but conclusively**—that each of them is in fact 'similarly situated' to the original plaintiffs." *Id.* (citing 29 U.S.C. § 216(b); *Canaday*, 9 F.4th at 403) (emphasis added).

HR-IT says *Clark*'s citation to *Canaday*—and *Canaday*'s reliance on "the Eleventh Circuit's statutory interpretation of § 216(b) in *Prickett v. DeKalb Cty.*, 349 F.3d 1294 (11th Cir. 2003)"—means this Court didn't really mean opt-in plaintiffs don't become party plaintiffs until the court conclusively finds they are similarly situated. Second Br. at 50. But this Court clearly rejected the notion that filing a consent was sufficient on its own to make them parties, requiring that the district court "conclusively" determine "that each of them is in fact 'similarly situated' to the original plaintiffs." *Clark*, 68 F.4th at 1009. Whatever the Eleventh Circuit found in *Mickles*, this Court disagreed. *Compare id.* with *Mickles*, 887 F.3d at 1278 ("those who opt in become party plaintiffs upon the filing of a consent and that nothing further, including conditional certification, is required.") (citing *Prickett*, 349 F.3d at 1296).

The courts in this Circuit read *Clark* to mean exactly what it says: Opt-in plaintiffs only become full party plaintiffs after the court makes a final determination they are similarly situated. MSJ Memorandum Order, RE 117, Page ID # 2855 n.2; *see, e.g., Woods v. Millenium Search, LLC*, No. 2:23-cv-2455-SHL-cgc, Doc. 119 at PageID#: 120 (M.D. Tenn. April 29, 2024) ("District courts are starting to follow that new binding guidance").[4] HR-IT ignores the overwhelming authority and cites the one case it says

---

[4] *See also Moore v. Shearer's Foods LLC,* No. 5:22-CV-01017, 2024 WL 1119309, at *2 (N.D. Ohio Mar. 14, 2024); *Crook v. PJ Operations, LLC,* No. CV 5:21-321-KKC, 2024 WL 1048136, at *2 (E.D. Ky. Mar. 11, 2024); *Kaufman v. Gardner Pie Co.,* No. 5:22CV2126, 2024 WL 895152, at *2 (N.D. Ohio Mar. 1, 2024); *Miller v. SBK Delivery, LLC,* No. 2:21-CV-4744, 2024 WL 862195, at *1 (S.D. Ohio Feb. 29, 2024); *McClurg v.*

suggests otherwise. Second Br. at 54 (citing *Tooker v. BluJay Sols., Inc.*, No. 1:22-CV-455, 2024 WL 1564735, at *2 (W.D. Mich. Apr. 11, 2024)). But in *Tooker*, the "Court denied the plaintiffs' motion for certification and the defendants' motion for decertification[.]" *Tooker*, 2024 WL 1564735, at *1. Moreover, in "its ruling on both certification motions the Court clearly decided that all 21 plaintiffs belong here[.]" *Id.* at *2. Rather than dismissing the case, the *Tooker* Court expressly stated its intent to permit all 19 opt-in plaintiffs to proceed to trial along with the live named plaintiffs' claims. *Id.* That's simply not the ruling made by the District Court here.

For these reasons, the District Court did not err in finding the Opt-in Plaintiffs weren't bound by its judgment. It certainly didn't "create a one-way intervention for the Opt-in Plaintiffs." *Cf.* Second Br. at 51-53. "Congress created the [FLSA] opt-in scheme … as a bar against one-way intervention by plaintiffs who would not be bound by an adverse judgment." *Knepper v. Rite Aid Corp.,* 675 F.3d 249, 260 (3d Cir. 2012). In other

---

*Dallas Jones Enterprises, Inc.,* No. 4:20-CV-201-RGJ, 2023 WL 8604177, at *4 (W.D. Ky. Dec. 12, 2023); *Berner v. PharMerica Logistics Servs., LLC,* No. 3:23-CV-142-CRS, 2023 WL 8242468, at *2 (W.D. Ky. Nov. 28, 2023); *Jenkins v. EVO Servs. Grp., LLC,* No. 2:23-CV-01874, 2023 WL 8185965, at *2 (S.D. Ohio Nov. 27, 2023); *Isaacs v. Landmark Recovery of Louisville, LLC,* No. 3:23-CV-00210, 2023 WL 7101869, at *3 (M.D. Tenn. Oct. 27, 2023); *Murphy v. Kettering Adventist Healthcare,* No. 3:23-CV-69, 2023 WL 6536893, at *3 (S.D. Ohio Oct. 5, 2023), *reconsideration denied,* No. 3:23-CV-69, 2023 WL 7515517 (S.D. Ohio Nov. 14, 2023); *Hogan v. Cleveland Ave Rest., Inc.,* No. 2:15-CV-2883, 2023 WL 5745439, at *4 (S.D. Ohio Sept. 6, 2023); *Hutt v. Greenix Pest Control, LLC,* No. 2:20-CV-1108, 2023 WL 5670691, at *3 (S.D. Ohio July 12, 2023); *Jones v. Ferro Corp.,* No. 1:22-CV-00253-JDA, 2023 WL 4456815, at *3 (N.D. Ohio July 11, 2023); *McElwee v. Bryan Cowdery, Inc.,* No. 2:21-CV-1265, 2023 WL 4423880, at *11 (S.D. Ohio July 10, 2023).

words, if a court correctly applies the FLSA's opt-in provisions, there is no one-way intervention. The lower court here did just that, applying this Court's holding in *Clark* that opt-in plaintiffs aren't parties until and unless the court conclusively determines they are similarly situated to the named plaintiff. MSJ Memorandum Order, RE 117, Page ID # 2855 n.2 (citing *Clark*, 68 F.4th at 1009). HR-IT can't blame the District Court for its assumption "the Opt-In Plaintiffs were party plaintiffs bound to the district court's decision." Second Br. at 52.

Nor can it blame the Opt-In Plaintiffs, who the lower court dismissed on its own. *Pickens v. Hamilton-Ryker It Sols., Inc.,* No. 3:20-CV-00141, 2024 WL 1337185, at *1 n.2 (M.D. Tenn. Mar. 28, 2024). By finding they were not plaintiffs, and dismissing the *Pickens* matter, the Opt-In Plaintiffs "were [effectively] dismissed without prejudice[.]" *Halle v. W. Penn Allegheny Health Sys. Inc.,* 842 F.3d 215, 230 (3d Cir. 2016). "[T]hey did not suffer an adverse judgment on the merits[.]" *Id.* In fact, "[t]hey lost nothing but the ability to proceed in [Pickens's] case." *Id.* However, the lower court's order put Plaintiffs "on notice that they must take immediate steps … to preserve their respective claims going forward." *Cunningham v. Roundy's Illinois, LLC,* No. 1:21-CV-05368, 2022 WL 17740421, at *5 (N.D. Ill. Dec. 16, 2022) (citing *Armstrong v. Martin Marietta Corp.,* 138 F.3d 1374, 1380 (11th Cir. 1998)). Thus, they refiled their claims here—because this is where they all worked for HR-IT and most of them live.

As Pickens noted in his opening brief, the "workers who had filed consents in *Pickens* refiled their claims in Texas two weeks before Pickens appealed to this Court.

*Compare Merritt v. Hamilton-Ryker It Sols., Inc.*, No. 3:24-cv-00107, Doc. 1 (S.D. Tex. April 12, 2024) with Pickens' Notice of Appeal, RE 120, Page ID # 2865-66 (filed April 24, 2024). The *Merritt* lawsuit was also filed **before** the Fifth Circuit issued its final decision in *Gentry*. Thus, the *Merritt* Plaintiffs had no guarantee of a favorable decision in the Fifth Circuit. Indeed, the lower court weighed this uncertainty in declining to apply *Gentry* to Pickens's claim. *Pickens*, 2024 WL 1337185, at *4, n. 7.

While HR-IT blames the Opt-In Plaintiffs for "simultaneously" appealing and proceeding in the *Merrit* action, it wouldn't matter if the Opt-In Plaintiffs had appealed in *Pickens*. In fact, the Sixth Circuit addressed a case where dismissed opt-ins refiled a separate case while appealing a decertification. *See O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567, 573 (6th Cir. 2009), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016). *O'Brien* was a consolidated appeal "involv[ing] two related cases in which former employees of two McDonald's franchises allege that their employer refused to pay the employees the wages that they were due, in violation of the [FLSA]." *Id.* at 572. *O'Brien* (the original case) was brought as collective action. "The district court initially certified a class of plaintiffs under the FLSA." *Id.* at 573. The class consisted of "two lead plaintiffs and eight opt-in plaintiffs[.]" *Id.* "After discovery, the district court found that the opt-in plaintiffs were not similarly situated and decertified the class, dismissing the eight opt-in plaintiffs without prejudice." *Id.*

"All plaintiffs but one appealed the decertification order[.]" *Id.* But while they appealed that procedural order, they filed separate cases and prosecuted their claims.

30

As the Court of Appeals explained, after "[r]etaining the same counsel as used in the *O'Brien* action, six opt-in plaintiffs refiled individual suits, which were consolidated as *Dellarussiani v. Ed Donnelly Enterprises, Inc., and Ed Donnelly*." *Id.* For reasons not relevant here, the *Dellarussiani* plaintiffs later appealed the result in the new, consolidated case and that appeal was consolidated with *O'Brien*. This Court didn't flinch at the fact former opt-ins refiled their claims on the merits even while contesting the otherwise interlocutory ruling on their participation in the earlier case. The Court even "affirm[ed] the district court's entry of judgment in the *Dellarussiani* plaintiffs' favor on [two counts]." *Id.* at 579.

HR-IT cannot blame either the lower court or the Opt-In Plaintiffs for their actions in light of *Clark*.

## 2.     HR-IT can't blame anyone for not asking the Court for a final determination whether the Opt-in Plaintiffs were similarly situated.

HR-IT says "[u]p until the district court's Judgment, the parties operated throughout this litigation with the underlying assumption that the Opt-In Plaintiffs were party plaintiffs bound to the district court's decision." Second Br. at 52. If HR-IT made that assumption, it did so at its own peril. Ever since *Clark*, the law in this Circuit has been the Opt-in Plaintiffs would only become full party plaintiffs after the court made a final determination they are similarly situated. *Clark*, 68 F.4th at 1009. Regretting its decision not to solidify the Opt-in Plaintiffs as party plaintiffs, HR-IT complains (1) "*Clark* Does Not Require the Collective To Be "Decertified" Or The Opt-In Plaintiffs

Dismissed," Second Br. at 53-55; (2) "The District Court Erred In Refusing To Make A 'Final Determination' That The Opt-In Plaintiffs Were Similarly Situated To Pickens," *id.* at 55-57; and (3) "The Opt-in Plaintiffs May Still Be Bound By The District Court's Judgment Under Permissive Joinder," *id.* at 57-60. HR-IT misses the point.

Regarding No. (2), the District Court didn't err in "refusing" to make a 'final determination' the Opt-in Plaintiffs were similarly situated to Pickens. HR-IT never asked it to. If HR-IT wanted the Opt-in Plaintiffs to become party plaintiffs who were bound by the lower court's judgment, it needed to have the court "determine[]—not conditionally, but conclusively—that each of them is in fact 'similarly situated' to [Pickens]." *Clark*, 68 F.4th at 1009. HR-IT says the District Court should have made that "final" determination because "the parties did not dispute that the Opt-In Plaintiffs were similarly situated to Pickens." Second Br. at 55. But that's not entirely accurate. In the Parties' Joint Stipulation, HR-IT said it wasn't "admitting … Plaintiff and the Potential Class Members are, in fact, similarly situated under the FLSA and [it] reserves the right to file a motion for decertification of the conditionally certified class[.]" Joint Stipulation, RE 28, Page ID #: 113. HR-IT even reiterated it wasn't "waiving its right … to later move for decertification of the conditionally certified class[.]" *Id.* Despite those reservations, HR-IT now says the District Court erred because it didn't rely on the Joint Stipulation to find the Opt-in Plaintiffs were, definitively, similarly situated. Second Br. at 55-57. HR-IT never told the court it no longer disputes whether the Opt-

32

in Plaintiffs were similarly situated. It never asked the court to conclusively find either way. The lower court didn't err by not making a finding HR-IT didn't request.

Regarding No. (1), the lower court didn't "decertify" the collective or dismiss the Opt-in Plaintiffs. *See* MSJ Memorandum Order, RE 117, Page ID # 2855 n.2; *Cf.* Second Br. at 53-55. It doesn't matter if Pickens compares the effect of the lower court's order to a "decertification" or dismissal. *See* Second Br. at 53-55. Citing *Tooker*, 2024 WL 1564735, at *2, HR-IT says the District Court retains jurisdiction over the Opt-in Plaintiffs even after Pickens's dismissal. Second Br. at 54. But *Tooker* in the minority, with every other case holding the lower court court lost jurisdiction over the Opt-in Plaintiffs upon the judgment against Pickens. *See* n.6, above. Perhaps even more pointedly, the District Court in this case clearly elected not to retain such jurisdiction.

That leaves No. (3). The lower court didn't err by not making the Opt-in Plaintiffs party plaintiffs under Rule 20. HR-IT says the court did err "[b]ecause the Opt-In Plaintiffs satisfied Rule 20(a)'s elements for permissive joinder[.]" Second Br. at 60. But Rule 20, by its very nature and title, is "permissive." It says "Persons *may* join in one action as plaintiffs[.]" FED. R. CIV. P. 20(a) (emphasis added). This isn't like Rule 19 where someone is *required* to be joined as a party. *See* FED. R. CIV. P. 19. So how, pray tell, could the lower court have erred by not finding—sua sponte—the Opt-in Plaintiffs should be joined under the permissive joinder rule? It didn't. The Opt-in Plaintiffs didn't ask to be joined under Rule 20. HR-IT didn't ask the Court to bind

33

them to its judgment under Rule 20. The lower court never considered Rule 20 and certainly never made a ruling for or against it. There was no error.

For all these reasons, The District Court didn't err by finding the Opt-in Plaintiffs weren't bound by its judgment.

## <u>CONCLUSION</u>

For these reasons as well as those more fully discussed in Pickens's First brief, Pickens respectfully requests the Court adopt the determinations of the Fifth Circuit Court of Appeals and the Department of Labor, reverse the grant of summary judgment in HR-IT's favor, and render summary judgment in Pickens's favor.

Respectfully submitted,

JOSEPHSON DUNLAP LLP

By: /s/ *David M. Mathews*
      David M. Mathews
      TX Bar No. 24058211
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone: (713) 352-1100
Fax: (713) 352-3300
dmathews@mybackwages.com

Richard J. (Rex) Burch
TX Bar No. 24001807
Federal ID No. 21615
BRUCKNER BURCH PLLC
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone:       (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

34

Melody L. Fowler-Green
Yezbak Law Offices PLLC
2021 Richard Jones Road, Suite 310-A
Nashville, Tennessee 37215
mel@yezbaklaw.com

**ATTORNEYS FOR PLAINTIFF-
APPELLANT/CROSS-APPELLEE**

## CERTIFICATE OF COMPLIANCE WITH FED. R. APP. 32(A)

This First Brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because the brief contains 9,574 words. This Third Brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this brief is prepared in a proportionally spaced typeface using Microsoft Word in 14-point, Garamond font, a Roman typeface.

*/s/ David M. Mathews*
**David M. Mathews**

## CERTIFICATE OF SERVICE

I hereby certify that on September 30, 2024, I electronically filed the foregoing document using the ECF system which will send notification of such filing to all counsel of record.

*/s/ David M. Mathews*
**David M. Mathews**

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

| RE No. | Date | Description | Page ID # |
|---|---|---|---|
| 1 | 02/18/2020 | Complaint | 1-9 |
| 28 | 04/22/2020 | Joint Stipulation | 112-114 |
| 83 | 03/23/2022 | Pickens's NOSA | 1431-1433 |
| 97-19 | 04/28/2023 | Pickens Offer Letter, RE 97-19 | 1701 |
| 99 | 04/28/2023 | Pickens's Memorandum in Support of MSJ | 2010-2034 |
| 100 | 04/28/2023 | Pickens's Statements of Fact | 2035-2040 |
| 100-3 | 04/28/2023 | Declaration of Omid Afhami | 2071-2074 |
| 100-4 | 04/28/2023 | Reasonable Relationship Table | 2075-2105 |
| 100-5 | 04/28/2023 | Reasonable Relationship Summary | 2106-2107 |
| 100-7 | 04/28/2023 | Paystub | 2164 |
| 100-8 | 04/28/2023 | Pickens Timesheets | 2190-2255 |
| 105 | 05/26/2023 | Pickens's Response to HR-IT's MSJ | 2677-2703 |
| 113 | 07/27/2023 | Pickens's NOSA | 2773-2775 |
| 114 | 08/03/2023 | HR-IT's Response to Pickens's NOSA | 2822-2829 |
| 117 | 03/28/2024 | Memorandum Order granting HR-IT's motion for summary judgment, denying Pickens' motion for summary judgment, and dismissing Pickens' claims. | 2853-2862 |
| 120 | 04/24/2024 | Pickens' Notice of Appeal | 2865-2866 |
| 125 | 05/08/2024 | HR-IT's Notice of Cross Appeal | 2912-2914 |
| 128 | 05/13/2024 | Order Denying HR-IT's Motion to Reconsider | 2931 |